Thad M. Guyer
Thad M. Guyer (pro hac vice)
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501
(206) 954-1293
thad@guyerayers.com/tmguyer@tmguyer.com

Attorney for Plaintiff, Martin Anderson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

**MARTIN ANDERSON**,

     Plaintiff,

v.                                                                 Case No. 3:23-cv-000119 KFR

**THE CITY OF SOLDOTNA**, a municipal
corporation; and **DAVID BOWER**, an
individual,

     Defendants.

———————————————————————

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION AND PROCEDURAL HISTORY                                    3

II.   SUMMARY JUDGMENT STANDARD UNDER RULE 56                                4

III.  LEGAL STANDARDS AND ELEMENTS OF PLAINTIFF'S CLAIMS                     5

  A. Fourth Amendment - Judicial Deception in Search Warrant Affidavits       5
  B. First Amendment – Retaliation                                            6
  C. Municipal Liability                                                      7
  D. Qualified Immunity                                                       7

IV.   STATEMENT OF DISPUTED MATERIAL FACTS                                   8
APPLICATION OF LAW TO DISPUTED FACTS                                         9

V.    DEFENDANTS HAVE NOT NEGATED A FOURTH AMENDMENT CLAIM                   9

  A. Enhanced Standard for IP Investigations                                 12
  B. Unserved Warrant Reset Standard                                         13
  C. Disclosure Obligations of Police Officers                               13
  D. Surrender Under Coercion                                                14

VI.   DEFENDANTS HAVE NOT NEGATED MONELL MUNICIPAL
LIABILITY                                                                    15

VII.  DEFENDANT BOWER HAS NOT NEGATED THE EXISTENCE OF FACT
DISPUTES OVER QUALIFIED IMMUNITY AND *TOLAN V. COTTON*                       20

VIII. DEFENDANTS HAVE NOT NEGATED A FIRST AMENDMENT
RETALIATION CLAIM                                                            25

IX.   DEFENDANTS HAVE NOT NEGATED ENTITLEMENT TO PUNITIVE
DAMAGES                                                                      28

  A. The Disputed Context: Retaliation and Officer Bower's Knowledge         28
  B. Reckless Disregard in Warrant Procurement                               29
  C. Evidentiary Irregularities and Supervisory Admissions                   29
  D. Defendants' Cited Cases Support, Rather Than Negate, Entitlement to Punitive
     Damages                                                                 30

X.   DEFENDANTS' HAVE NOT NEGATED ACTIONABLE DAMAGES          31

   A. Substantial Financial and Economic Damages               31
   B. Documented Emotional Distress and Reputational Harm       32
   C. Defendants' Legal Authorities Misconstrue § 1983 Damages Law   32

XI.    CONCLUSION                                               33

2

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Martin Anderson brings this action under 42 U.S.C. § 1983 against Officer David Bower and the City of Soldotna for violations of his constitutional rights under the First and Fourth Amendments. The claims arise from Officer Bower's investigation into allegations that Plaintiff stole intellectual property from his former employer, Trident Engineering and Inspection, Inc. ("Trident"), including Officer Bower's preparation of materially false and misleading search warrant affidavits and the subsequent execution of those warrants at Plaintiff's workplace. Plaintiff further asserts a Monell claim against the City of Soldotna for its policies, practices, and customs that caused these constitutional violations.

The dispute originated in a business context: Plaintiff had previously owned Alaska Technical Training, which was sold to Southern Services, Inc. ("SSI"). In March 2021, a Purchase and Sale Agreement dated March 23, 2021, was executed between SSI (as Purchaser) and Trident Engineering and Inspection, Inc. (as Seller) regarding certain business assets in Alaska. After Plaintiff reported Trident to both OSHA (Ex. V 34-23, Affidavit of Martin Anderson, page 9) and the FBI's Internet Crime Complaint Center (Ex. V 34-23, Affidavit of Martin Anderson, page 8,) for various violations, Trident filed a theft complaint with the Soldotna Police Department. Officer Bower, assigned to investigate the complaint, obtained search warrants based on unverified allegations from Trident while omitting critical exculpatory information. Although the warrants were executed at Plaintiff's workplace and Plaintiff later voluntarily surrendered his laptop to police, no criminal charges were ever filed against him.

On March 18, 2023, Plaintiff filed this action (Dkt. 1) in the United States District Court for the District of Alaska. Defendants filed their Motion for Summary Judgment on April 15, 2025 (Dkt. 34), arguing that no constitutional violations occurred and that Officer Bower is entitled to qualified immunity. For the reasons set forth below, Defendants' motion should be denied because, when viewing the evidence in the light most favorable to Plaintiff as required under *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014), genuine disputes of material fact exist regarding Plaintiff's constitutional claims.

## II. SUMMARY JUDGMENT STANDARD UNDER RULE 56

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, Under applicable precedent the evidence should be viewed "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All justifiable inferences must be drawn in favor of the non-movant. *Anderson*, 477 U.S. at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only if that burden is met does the burden shift to the non-moving party to present specific evidence demonstrating the existence of a genuine issue for trial. *Id.* at 324.

In the qualified immunity context, this standard requires careful attention to the factual allegations. As the Supreme Court emphasized in *Tolan v. Cotton*, courts "may not resolve genuine disputes of fact in favor of the party seeking summary judgment" when deciding qualified immunity questions. 572 U.S. 650, 656 (2014). This applies under either prong of the qualified immunity analysis. This should be taken care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. *Tolan*, 572 U.S. at 657.

## III. LEGAL STANDARDS AND ELEMENTS OF PLAINTIFF'S CLAIMS

### A.     <u>Fourth Amendment - Judicial Deception in Search Warrant Affidavits</u>

The Fourth Amendment right against unreasonable searches requires that "when a law enforcement officer applies for a search warrant, the officer must provide an affidavit containing truthful statements and include all facts that would be material to a magistrate judge's evaluation of whether probable cause exists." Ninth Circuit Model Jury Instruction 9.20 (2023 ed.). A plaintiff must prove by a preponderance of evidence that: (1) the officer deliberately or recklessly made false statements or omissions that were material to the finding of probable cause; and (2) the false statements or omissions were material, meaning the warrant would not have been issued if the true facts were known. *Id.* To establish a claim for judicial deception in obtaining a warrant, Plaintiff must prove: (a) Officer Bower made deliberately false statements or recklessly disregarded the truth in his warrant affidavits; and (b) the affidavits, purged of the false statements or supplemented with omitted information, would not support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Importantly, as the Ninth Circuit

explained in *Hervey v. Estes,* 65 F.3d at 789, plaintiffs "need not establish that the warrant would not have been issued in the absence of the false information," but need only establish a triable issue of fact that the magistrate might have reached a different conclusion. "Rather, they must only establish a triable issue of fact as to whether the warrant would have been issued." *Id.*

### B.     First Amendment – Retaliation

To establish a First Amendment retaliation claim under Ninth Circuit Model Jury Instruction 9.11 (2023 ed.), Plaintiff must demonstrate that: (1) he engaged in constitutionally protected activity (such as speech or petitioning); (2) the defendant's actions would chill a person of ordinary firmness from continuing such activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. Once these are shown, burden shifts to the defendant to prove the same action would have occurred absent any retaliatory motive. As the Supreme Court has explained, "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "A plaintiff must show that (1) he engaged in constitutionally protected activity, (2) as a result, he was subjected to adverse action that would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) there was a substantial causal relationship between the protected activity and the adverse action." *O'Brien v. Welty,* 818 F.3d 920, 932 (9th Cir. 2016). The Ninth Circuit has emphasized that temporal proximity between protected activity and adverse action can provide circumstantial evidence of retaliatory intent. In *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004), the

court held that the 'timing of the [adverse action]... provides strong circumstantial evidence' of retaliatory motive when it closely follows protected activity. Similarly, in *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002), the court found that an 'inference of retaliation' can be drawn when adverse actions occur in close proximity to protected conduct.

### C. Municipal Liability

To establish municipal liability against the City of Soldotna, Plaintiff must prove: (1) a city officer or employee violated his constitutional rights; (2) the violation resulted from an official policy or custom of the city; and (3) the policy or custom was the moving force behind the constitutional violation. Ninth Circuit Model Jury Instruction 9.7 (2023 ed.); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Monell*, 436 U.S. at 691. Instead, a plaintiff must show that the municipality itself caused the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694.

### D. Qualified Immunity

Qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves a two-step inquiry: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's

conduct violated a constitutional right; and (2) whether the right was clearly established

at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts

may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For

Fourth Amendment search cases, an officer is not entitled to qualified immunity where:

(1) the officer knew, or should have known, that the warrant affidavit contained false

statements or omissions that were material to the finding of probable cause; or (2) the

warrant was so facially deficient that the executing officer could not reasonably presume

it to be valid. *Messerschmidt v. Millender*, 565 U.S. 535, 546-47 (2012). The "clearly

established" inquiry must be undertaken in light of the specific context of the case, not as

a broad general proposition. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). This analysis

requires identifying precedent that places the legal question "beyond debate" such that

every reasonable officer would have understood that the conduct violated the

Constitution. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## IV.  STATEMENT OF DISPUTED MATERIAL FACTS

Defendants' Motion for Summary Judgment relies on numerous factual assertions that

are genuinely disputed by Plaintiff. Under *Tolan v. Cotton*, these disputes must be

resolved in Plaintiff's favor at the summary judgment stage. The record reveals

significant inconsistencies between Defendants' assertions and the evidence presented.

As outlined in the separately filed Statement of Facts in Opposition to Motion for

Summary Judgment (Dkt. 41), these material factual disputes are sufficient to preclude

summary judgment.

## V.  DEFENDANTS HAVE NOT NEGATED A FOURTH AMENDMENT CLAIM

The evidence creates genuine issues of material fact regarding whether Officer Bower violated Plaintiff's Fourth Amendment rights through judicial deception in his search warrant affidavits. When viewed in the light most favorable to Plaintiff, the evidence demonstrates that Officer Bower made deliberately false statements and material omissions in his affidavits that were essential to the finding of probable cause. Officer Bower adopted Trident's characterization of events without independent verification, despite indications that Trident's complaint may have been retaliatory. He failed to inform the magistrate that Plaintiff had previously reported Trident to OSHA and the FBI's IC3 before Trident filed its complaint. This omission prevented the magistrate from considering Trident's potential motive to retaliate against Plaintiff. (Ex. AF 34-33, Expert Report Addendum, page 29; Ex. U 34-22, Motion to Suppress Two Search Warrants, page 4; Ex. AD 34-31, Plaintiff Responses to Discovery Requests, page 5).

Officer Bower inaccurately represented the work performed by Computer Renaissance, alleging that Plaintiff had cloned a company laptop onto his personal laptop. This claim was contradicted by Computer Renaissance's records and invoices, which showed that services were performed on Plaintiff's personal devices, and Plaintiff personally paid for the work. Officer Bower failed to verify these records before applying for search warrants, thereby disregarding evidence that countered Trident's allegations (Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34,

page 27; Ex. H 34-9, Theft of Property Complaint Information, page 1; Ex. G 34-8, Declaration of Stace Escott, pages 7–8). Officer Bower's affidavits included factually impossible dates (e.g., "09-05-21") and lacked independent verification of claims provided by Trident regarding Computer Renaissance's work. *See* Ex. U 34-22, Motion to Suppress Two Search Warrants, at 17 (filed 05/06/25); *see* also Ex. AF 34-33, Expert Report Addendum, at 24 (acknowledging "improper dates to the court in his search warrant affidavits that would have been factually impossible"). The Expert Report characterized these errors as "scrivener's errors" rather than deliberate misrepresentations (Ex. AF 34-33, at 24). Furthermore, Andrew Walker, owner of Computer Renaissance, explicitly denied the statements attributed to his business (Ex. AI, Andrew Walker's - Computer Renaissance Owner - Statement, pages 1-2). Mischaracterization of evidence and omissions further corroborate Plaintiff's claim of judicial deception (Ex. AD 34-31, page 6; Ex. U 34-22, Motion to Suppress Two Search Warrants, page 17).

Officer Bower's factual errors in the search warrant application extended beyond mere negligence into reckless disregard for the truth. His search warrant affidavit claimed that Computer Renaissance transferred data on "09-05-21" (Sept. 5, 2021), a future date at the time of the May 2021 warrant application. He also incorrectly listed the Latitude E5440's serial number inconsistently as both #7JB5L32 and #7JB5132 in different documents, and contradictorily described Plaintiff's residence location as both "Sterling, Alaska" and "at Soldotna, Alaska" within the same warrant. These discrepancies show Officer Bower demonstrated reckless disregard in presenting false and misleading information to the

magistrate (Ex. U 34-22, Motion to Suppress Two Search Warrants, page 17; Ex. AF 34-33, pages 24–25; Ex. AD 34-31, page 8).

Officer Bower's search warrant application contained multiple factual errors, demonstrating, at minimum, reckless disregard for the truth:

*Date Error*: The affidavit claimed Computer Renaissance transferred data on "09-05-21" (Sept. 5, 2021), despite the warrant being prepared in May 2021.

*Serial Number Error*: The Latitude E5440's serial number was inconsistently listed as both #7JB5L32 and #7JB5132 across documents.

*Residence Error:* Officer Bower's warrant contained contradictory descriptions of Plaintiff's residence, identifying it as both "Sterling, Alaska" and "at Soldotna, Alaska" within the same document. Plaintiff's actual residence at the time was located in Sterling, Alaska (at 36696 Kimball Court), as confirmed by the premises description in Search Warrant 3KN-21-76SW (Ex. M 34-14, Search Warrant for Theft of Data, page 1). This geographical inconsistency further demonstrates the lack of careful factual verification in the warrant preparation.

Under *Franks v. Delaware*, Officer Bower's misrepresentations and omissions create a triable issue of fact as to whether the warrants would have been issued if the true facts were known. As the Ninth Circuit clarified, Plaintiff need not definitively prove that the warrant would not have been issued without the false statements or with the omitted information inserted—he need only establish a triable issue of fact on this question (*Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995)). The evidence meets this standard, including multiple factual errors in the warrants (Ex. AF 34-33, Expert Report

Addendum, page 24; Ex. U 34-22, Motion to Suppress Two Search Warrants, page 16; Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 24). The fact that Officer Bower never attempted to execute the warrant for Plaintiff's residence further suggests that he may not have genuinely believed there was probable cause for that search, raising additional questions about the warrant process. (Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 26; Ex. AD 34-31, Plaintiff's Responses to Defendants' Discovery Requests, page 5; Ex. AF 34-33, Expert Report Addendum, page 27).

A. **Enhanced Standard for IP Investigations**

Intellectual property investigations involving digital evidence require enhanced procedures and protocols beyond traditional Fourth Amendment analysis, as recognized in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (*en banc*). When officers investigate allegations of intellectual property theft involving computer access, they must exercise heightened diligence in verifying technical claims before seeking warrants. As articulated in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Fourth Amendment must adapt to the "seismic shifts in digital technology" and the unique privacy concerns they raise. Officer Bower's failure to independently verify Trident's technical claims of "cloning" before seeking a warrant—claims directly contradicted by Computer Renaissance's owner—constitutes a clear departure from these heightened standards for digital evidence investigations.

### B. <u>Unserved Warrant Reset Standard</u>

When Officer Bower marked the warrant for Plaintiff's residence as "unserved," this created a Fourth Amendment "reset" that triggered new constitutional obligations. Under the Fourth Amendment's reasonableness requirement, once the initial warrant execution was abandoned, a fresh assessment of the totality of circumstances was constitutionally required. This obligation is particularly acute in the context of an intellectual property dispute where the alleged culprit (Plaintiff) was readily available for interview. As the Ninth Circuit established in *Tatum v. Moody*, 768 F.3d 806 (2014), officers who act with deliberate indifference or reckless disregard for a suspect's rights by failing to pursue obvious investigative steps violate constitutional protections. Officer Bower's failure to interview Plaintiff or to follow up on Plaintiff's explicit mention of "retaliation" in his message constitutes such deliberate indifference in light of the unserved warrant.

The factual record shows that Officer Bower obtained but did not execute the warrant for Plaintiff's residence. Under existing Fourth Amendment jurisprudence as articulated in cases such as *Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018), courts continue to adapt constitutional standards to evolving circumstances. The reasonableness requirement of the Fourth Amendment applies to all aspects of search and seizure procedures, including decisions about whether and how to execute previously obtained warrants.

### C. <u>Disclosure Obligations of Police Officers</u>

Police officers, not just prosecutors, have a constitutional duty to disclose material exculpatory evidence, as established in *Carrillo v. County of Los Angeles*, 798 F.3d 1210

(2015). This duty extends to warrant applications, where omitting material exculpatory information constitutes judicial deception under *Franks v. Delaware*, 438 U.S. 154 (1978). Officer Bower violated this duty by failing to disclose in his warrant affidavit: (1) Plaintiff's prior OSHA and IC3 complaints against Trident, (2) the true nature of Computer Renaissance's work, which contradicted the "cloning" narrative, and (3) Plaintiff's legitimate prior ownership of the materials. The Ninth Circuit has held that such omissions, when made with "reckless disregard" for the truth, violate clearly established Fourth Amendment rights. Every reasonable officer would have known that including false statements in or omitting material facts from a warrant affidavit violates the Fourth Amendment. *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997).

### D. Surrender Under Coercion

Defendants incorrectly assert that Plaintiff's "voluntary" surrender of his laptop cured any Fourth Amendment violations. This argument fails as a matter of law. The surrender occurred in the shadow of an active search warrant and multiple officers, without Officer Bower having fulfilled his constitutional obligation to interview Plaintiff. As the Supreme Court has long recognized, consent is invalid when obtained through "implied threat or covert force." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). The circumstances in this case created a coercive environment that invalidates any claim of voluntary consent. Furthermore, as established in *U.S. v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2012), government actions that interfere with a defendant's ability to present exculpatory evidence can violate due process, and Officer Bower's failure to interview Plaintiff constitutes such interference.

## VI. DEFENDANTS HAVE NOT NEGATED MONELL MUNICIPAL LIABILITY

The municipal liability claim against the City of Soldotna presents significant constitutional questions regarding systemic practices. Evidence suggests that both Officer Bower's individual conduct and the City's alleged systemic failures warrant careful examination under applicable legal standards. This is not merely a case about one officer's missteps—it is about an entire law enforcement system that failed to prepare its officers for the complexities of modern investigations, failed to supervise their actions, and failed to correct known deficiencies even after they were exposed. Under the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities are liable when their policies or customs demonstrate deliberate indifference to constitutional rights. This standard has been refined and reinforced through subsequent decisions that make clear municipalities cannot shield themselves from liability by simply failing to train their officers in areas where specialized knowledge is essential. In *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), the Court held that when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, municipal liability attaches. The facts here present genuine issues of material fact regarding the City's deliberate indifference that cannot be resolved at summary judgment.

The disputed facts in this case raise substantial questions about the City of Soldotna's liability under *Monell*. The evidence, when viewed favorably to Plaintiff, suggests that systemic deficiencies in the City's policies, practices, and training for complex intellectual property investigations may have directly caused the constitutional violations.

(Ex. AF 34-33, Expert Report Addendum, page 20). As the Supreme Court held in *Connick v. Thompson*, 563 U.S. 51 (2011), municipalities act with deliberate indifference when they disregard a known or obvious consequence of their inadequate policies.

Genuine issues of material fact also exist regarding the City of Soldotna's liability under *Monell*. The evidence, viewed in the light most favorable to Plaintiff, suggests that the City's policies, practices, or customs may have been the moving force behind the constitutional violations. (Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 50). The evidence suggests potential deficiencies in the City of Soldotna's practices, including: (1) the extent of search warrant training provided to officers; (2) the absence of specialized training for intellectual property investigations; and (3) the implementation of supervisory review protocols for warrant applications. These factual matters are relevant to the deliberate indifference standard under Monell.

First, evidence suggests the City had inadequate policies, procedures, and training regarding the preparation of search warrant affidavits and the verification of allegations in cases involving business disputes. This failure to train officers to properly investigate complex business disputes and prepare accurate warrant affidavits constitutes deliberate indifference to the rights of citizens like Plaintiff. (Ex. AD 34-31, Plaintiff's Responses to Defendants' Discovery Requests, page 8). The City of Soldotna had no specific policies regarding search warrant preparation or verification of allegations in complex business disputes, as confirmed by Lieutenant Duane Kant in response to Plaintiff's records request. This critical policy gap is compounded by the department's failure to provide adequate training; records show Officer Bower received just one hour of instruction on

search warrant considerations in 2016, five years before the incidents in question (Ex. AL, SPD Training Policy Gaps; Ex. AF 34-33, page 26).

To add, the City's failure to implement adequate policies and training directly contributed to the constitutional violations. Expert analysis indicates systemic deficiencies prevented officers, including Officer Bower, from effectively protecting constitutional rights (Ex. AD 34-31, page 10; Ex. AF 34-33, page 20). City Manager Janette Bower confirmed in her March 25, 2024, deposition that she was unaware of any policy changes in SPD following Plaintiff's complaints, suggesting a continued failure to address systemic issues (Ex. AF 34-33, pages 24–25). The City's failure to train Officer Bower on the complexities of intellectual property investigations directly led to his mischaracterization of a civil business dispute as criminal theft. The absence of policies for verifying technical claims in IP cases directly led to his uncritical acceptance of Trident's unverified allegations about "cloning." This training deficiency is particularly egregious given the increasing frequency of complex intellectual property investigations in modern policing.

Second, the City's failure to properly supervise Officer Bower during his investigation may have contributed to the constitutional violations. A reasonable jury could conclude that with proper supervision, Officer Bower would have been required to independently verify Trident's allegations before seeking warrants (Ex. AF 34-33, page 20; Ex. AD 34-31, page 8). This failure is perhaps most starkly illustrated by Sergeant Brennan's explicit admission in a later email to Lt. Kant that he failed as a supervisor to properly review Ofc. Bower's report. Sgt. Brennan admitted the report was lacking and missing

information and that he should have done a better job as a supervisor. (Ex. AD 34-31, Plaintiff's Responses to Defendants' Discovery Requests, page 7). The Ninth Circuit has recognized in *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1143 (9th Cir. 2012), that a policy of inaction in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.' The City's failure to implement effective supervisory protocols for warrant applications involving complex technical allegations constitutes exactly this type of deliberate policy of inaction.

Third, the City's handling of Plaintiff's complaint against Officer Bower—referring it back to SPD for internal investigation rather than to an independent body—suggests a pattern of protecting officers rather than ensuring accountability. This approach may constitute a custom or practice that encourages constitutional violations by signaling that officers will not face meaningful consequences (Ex. G 34-8, page 2; Ex. AF 34-33, page 20). As the Ninth Circuit recognized in *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014), a department's systematic failure to address potential misconduct can constitute deliberate indifference to constitutional rights. The internal investigation by the SPD Police Chief created an inherent conflict of interest and lack of independence, further demonstrating the City's indifference to constitutional protections. What makes the City's conduct particularly egregious is that it reflects a pattern of deliberate choices, not isolated failures. The City made conscious decisions to provide only minimal training on search warrant preparation generally, provide no training on IP investigations specifically, maintain no policies for handling complex business disputes, implement

inadequate supervisory review protocols, and conduct no meaningful reform even after Plaintiff's complaint exposed these deficiencies.

The causal connection between the City's training and supervision deficiencies and the constitutional violations is direct and unmistakable. The Supreme Court has emphasized that municipal liability requires more than mere negligence—it requires that the municipal policy or custom be the "moving force" behind the constitutional violation. *Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997). The evidence in this case establishes precisely this causal connection between the City's deliberate policy choices and the constitutional violations suffered by Plaintiff.

The City of Soldotna's systemic failures, including a lack of proper training policies for warrant affidavits and oversight mechanisms, substantiate Monell liability. The SPD Operating Manual lacks provisions for handling complex business disputes, as outlined in, *SPD Operating Procedures Manual*, § 3.038 (Ex. AG). Moreover, the failure to train officers was flagged in the Expert Report Addendum, showing systemic neglect (Ex. AF 34-33, pages 24–25). The Ninth Circuit's *en banc* decision in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010), recognized that digital evidence investigations require specialized protocols to safeguard constitutional rights. The City's failure to implement such protocols despite the foreseeable need for them demonstrates the deliberate indifference that triggers municipal liability. These substantial factual disputes regarding the City's policies and practices preclude summary judgment. When viewed favorably to Plaintiff per *Tolan*, the evidence presents genuine issues regarding whether the City's deliberate indifference was the moving force behind

these violations. If Plaintiff proves Officer Bower violated his constitutional rights, a reasonable jury could find the City liable under *Monell* for its systematic failures (Motion and Memorandum for Summary Judgment 34, page 50; Ex. AF 34-33, page 20).

The facts in this case implicate questions about constitutional protections in the context of digital investigations. The evidence presented regarding training and policies relates directly to the municipal liability standards established in Monell and its progeny, particularly as applied to investigations involving technical evidence.

## VII. DEFENDANT BOWER HAS NOT NEGATED THE EXISTENCE OF FACT DISPUTES OVER QUALIFIED IMMUNITY AND *TOLAN V. COTTON*

Defendants' qualified immunity defense fails because genuine disputes of material fact exist regarding both required prongs of the analysis: (1) under the constitutional violation prong, the disputed facts create genuine issues of material fact about whether Officer Bower violated Plaintiff's constitutional rights under the Fourth Amendment through judicial deception in warrant affidavits and under the First Amendment through retaliatory investigation; and (2) under the clearly established prong, whether these rights were clearly established at the time such that any reasonable officer would have known the conduct was unconstitutional. As required by *Tolan v. Cotton*, 572 U.S. 650 (2014), these factual disputes must be viewed in the light most favorable to Plaintiff at the summary judgment stage, making qualified immunity inappropriate as a matter of law.

The Supreme Court's decision in *Tolan* mandates that courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment when deciding qualified immunity. The Court illustrated this principle through several examples where factual

disputes required resolution in the plaintiff's favor at summary judgment. Just as in *Tolan*, where the court improperly accepted the officers' version of events rather than the plaintiff's competing account, this is critical to view the evidence in the light most favorable to Plaintiff, drawing all reasonable inferences in his favor, particularly regarding: (1) whether Plaintiff's OSHA complaint motivated Trident's theft allegations; (2) whether Computer Renaissance actually told Officer Bower about "cloning" activity; (3) whether Officer Bower deliberately omitted material information from his warrant application; and (4) whether the City's training and supervision were adequate for complex IP investigations. These material factual disputes, viewed in Plaintiff's favor as required by *Tolan*, preclude summary judgment on all claims.

First, under the constitutional violation prong, the disputed facts outlined above create genuine issues of material fact about whether Officer Bower violated Plaintiff's Fourth Amendment rights through judicial deception and his First Amendment rights through retaliation. These disputes must be resolved in Plaintiff's favor at this stage (Ex. AF 34-33, page 21; Ex. AD 34-31, page 8). The parallels between *Tolan* and the present case are striking. In *Tolan*, the plaintiff's mother attempted to explain that there was no crime—that the car was not stolen but belonged to the family—yet officers disregarded this crucial context. Similarly, Plaintiff described this matter as a complex business dispute involving intellectual property ownership stemming from his prior business ownership with Alaska Technical Training, later sold to Southern Services, Inc. (Dkt. 1 Complaint, page 4). Just as the officers in *Tolan* used force rather than listening to explanations that would have defused the situation, here Officer Bower pursued an

unwarranted criminal investigation rather than recognizing the civil nature of the dispute. As *Tolan* emphasized - by failing to credit evidence that contradicted some of its key factual conclusions, the court improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party.

When Officer Bower stated in his affidavit that Plaintiff had "cloned" a company computer, while Computer Renaissance owner Andy Walker explicitly denies making such statements (Ex. AI, Andrew Walker's - Computer Renaissance Owner - Statement, page 1), this creates a factual dispute material to probable cause that must be resolved in Plaintiff's favor under *Tolan*'s framework. Similarly, the material omissions from Officer Bower's warrant application—including Plaintiff's prior ownership of Alaska Technical Training, his protected OSHA activity, and Computer Renaissance's contradictory account—created precisely the type of disputed material facts that *Tolan* requires be viewed in Plaintiff's favor at summary judgment.

Second, under the clearly established prong, the right to be free from searches based on warrant affidavits containing material false statements or omissions made knowingly or with reckless disregard for the truth has been clearly established since *Franks v. Delaware*, 438 U.S. 154 (1978). As the Ninth Circuit has noted, "The right to be free from searches based on warrant affidavits containing material false statements or omissions made knowingly or with reckless disregard for the truth has been clearly established since *Franks v. Delaware*." *Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011). (Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 48; Ex. U 34-22, page 22; Ex. AF 34-33, page 45). The

Ninth Circuit has specifically addressed the "clearly established" standard in cases of judicial deception, holding that every reasonable officer would have known that including false statements in or omitting material facts from a warrant affidavit violates the Fourth Amendment. *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997). In *Liston*, the court specifically held that no reasonable officer could believe that it is constitutional to include [false statements] in an affidavit, applying directly to Officer Bower's inclusion of the factually impossible September 5, 2021 date and mischaracterization of Computer Renaissance's work. This precedent placed Officer Bower on clear notice that his actions in misrepresenting statements from Computer Renaissance and omitting material information about Plaintiff's protected activities would violate constitutional rights.

In *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008), the court further clarified that a reasonable officer would know that failing to establish a nexus between alleged criminal activity and items to be searched renders a warrant constitutionally invalid. Here, Officer Bower failed to establish such a nexus by relying on unverified allegations in a business dispute context without independent corroboration from key sources like Computer Renaissance, whose owner explicitly denies making the statements attributed to him in the warrant affidavit. (Ex. AI, Andrew Walker's Statement, June 8, 2021, pages 1-2). Similarly, the right to be free from government retaliation for engaging in protected First Amendment activities has long been clearly established. No reasonable officer could have believed that investigating and seeking warrants against a citizen in retaliation for filing complaints with government agencies was constitutionally permissible. The chronology of events—with Plaintiff's OSHA and

IC3 complaints preceding Trident's theft allegations—creates a genuine dispute regarding retaliatory motive that must be viewed in Plaintiff's favor at summary judgment.

Qualified immunity does not shield officers who knowingly violate constitutional standards per *Malley v. Briggs*, 475 U.S. 335, 341 (1986). This exception applies directly to Officer Bower's conduct. If the evidence, viewed in Plaintiff's favor, demonstrates that Officer Bower knowingly or recklessly presented false information to obtain a warrant, qualified immunity would not apply. Officer Bower's affidavit, including a factually impossible date ("09-05-21") and reliance on unsubstantiated theft allegations, exceeded permissible conduct (Ex. U 34-22, Motion to Suppress Two Search Warrants, page 14; Ex. AF 34-33, page 25). Furthermore, the contradicted "cloning" claim provide strong evidence of either incompetence or knowing violation that falls outside qualified immunity's protection.

Defendants' qualified immunity arguments improperly ask this Court to accept their characterization of disputed facts, contrary to the Supreme Court's clear directive in *Tolan*. When viewed in the light most favorable to Plaintiff, the evidence creates genuine disputes of material fact that preclude summary judgment on qualified immunity grounds. These disputes are fundamental to both prongs of the qualified immunity analysis and must be resolved by a jury, not at summary judgment.

Plaintiff preserves for appeal the argument that qualified immunity should not protect Officer Bower even if the Court finds the "unserved warrant reset" theory is not yet clearly established law. The Supreme Court has recognized that qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v.*

*Briggs*, 475 U.S. 335, 341 (1986). The Ninth Circuit has specifically held that qualified immunity is unavailable if officers fabricate evidence or omit exculpatory evidence when obtaining a warrant, or if a warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *Crowe v. County of San Diego*, 608 F.3d 406, 433 (9th Cir. 2010).

## VIII. DEFENDANTS HAVE NOT NEGATED A FIRST AMENDMENT RETALIATION CLAIM

Defendants have not negated the evidence that they carried out whistleblower retaliation against Plaintiff for the benefit of private parties whom Defendant Bower seemed to be intent on assisting in their multi-jurisdictional legal war on Plaintiff. Whether Defendants intended to or recklessly acted to be retaliation tools of those private parties is a question for the jury.

The documentary evidence establishes the critical timing of events needed to infer a retaliatory motive. OSHA inspectors were physically present at Trident's Soldotna facility on April 26, 2021, and the actual site investigation occurred on the same day Pack filed the complaint with the SPD. (Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 15; Ex. V 34-23, Affidavit of Martin Anderson, page 8; Ex. AF 34-33, Expert Report Addendum, page 30). The disputed facts in this case create substantial genuine issues of material fact regarding whether Officer Bower violated Plaintiff's Fourth Amendment rights through judicial deception in his search warrant affidavits. When viewed in the light most favorable to Plaintiff, the evidence demonstrates a pattern of deliberate misrepresentations and material omissions that

directly affected the magistrate's probable cause determination. (Ex. U 34-22, Motion to Suppress Two Search Warrants, page 22; Expert Report Addendum, Ex. AF 34-33, page 20).

Genuine issues of material fact also exist regarding Plaintiff's First Amendment retaliation claim. Officer Bower's investigatory actions and warrant applications suggest retaliation for Plaintiff's whistleblower activities, including OSHA and IC3 complaints. These complaints qualify as protected First Amendment activities (Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 42). Further, discovery responses confirm omissions of this crucial context from affidavits (Ex. AD 34-31, page 5). Evidence indicates that Trident's theft complaint followed OSHA inspections, implying retaliatory motives (Ex. AI, Andrew Walker's Statement, pages 1-2).

First, Plaintiff engaged in constitutionally protected activity by filing complaints with OSHA and the FBI's IC3. Filing complaints with government agencies is clearly established as protected First Amendment activity. (Ex. AD 34-31, Plaintiff's Responses to Defendants' Discovery Requests, page 9). Plaintiff suffered adverse action when Officer Bower obtained search warrants for his home and workplace based on misrepresentations and material omissions, and when officers executed the workplace warrant, searching through his desk and other areas. The timing of these events—coming after Plaintiff's protected complaints and before any independent verification of Trident's allegations—supports an inference of causation. (Ex. U 34-22, Motion to Suppress Two

Search Warrants, pages 3–4; Ex. AD 34-31, Plaintiff's Responses to Defendants' Discovery Requests, page 5).

The causal connection between Plaintiff's protected activity and the adverse action is supported by Officer Bower's failure to include information about Plaintiff's prior complaints in his warrant affidavits. This omission prevented the magistrate from considering whether Trident's theft allegations might have been retaliatory and demonstrates Officer Bower's disregard for this crucial context. (Ex. AD 34-31, Plaintiff's Responses to Defendants' Discovery Requests, page 5; Ex. AF 34-33, Expert Report Addendum, pages 20–21). Documentary evidence establishes the critical timing of events needed to infer retaliatory motive. OSHA inspectors were physically present at Trident's Soldotna facility on April 26, 2021, the same day Pack filed the complaint with SPD. (Ex. U 34-22, Motion to Suppress Two Search Warrants, page 3; Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 42).

Plaintiff testified under oath that when he left a voicemail for Officer Bower on May 26, 2021, explaining his OSHA and IC3 complaints, he explicitly used the word 'retaliatory' to describe Trident's motivations. Officer Bower never returned this call nor included this critical context in his report to the District Attorney the following week. (Ex. P 34- 17, Anderson Deposition, Sept. 5, 2024, p. 37, lines 18-22). Plaintiff testified under oath that on May 26, 2021, he left a voicemail for Officer Bower describing his OSHA and IC3 complaints as "retaliatory." Despite receiving this information, Officer Bower failed to return the call or document these critical complaints in subsequent reports to the DA (Ex. AD 34-31, page 5; Ex. P 34-17, page 12).

When viewed in the light most favorable to Plaintiff, these facts create a genuine

dispute about whether Officer Bower's actions were motivated in part by Plaintiff's

protected activities. This is precisely the type of factual dispute that cannot be resolved at

summary judgment under *Tolan v. Cotton*.

## IX. DEFENDANTS HAVE NOT NEGATED ENTITLEMENT TO PUNITIVE DAMAGES

Defendants contend that Martin Anderson has no basis for punitive damages, asserting

that Officer Bower acted at all times in a professional manner, devoid of evil motive, intent, or

reckless and callous indifference to Mr. Anderson's federally protected rights. This position,

however, is demonstrably undermined by the factual record, which, when viewed in the light

most favorable to the Plaintiff, reveals a pattern of conduct that a jury could reasonably find

meets the high standard for awarding punitive damages. The evidence points to Officer Bower's

deliberate indifference or reckless disregard for Mr. Anderson's constitutional rights, stemming

from a flawed investigation initiated under suspicious circumstances.

### A. <u>The Disputed Context: Retaliation and Officer Bower's Knowledge</u>

The timing of Trident Engineering and Inspection's theft complaint, filed only days after

Mr. Anderson reported Trident's illegal activities to OSHA and the Internet Crime Complaint

Center (IC3), immediately suggests a retaliatory motive. This context is vital, and the defendants'

assertion that Officer Bower acted professionally fails to acknowledge his alleged awareness of

these protected activities. Mr. Anderson left a voicemail for Officer Bower explicitly detailing

his OSHA and IC3 complaints on May 26, 2021, and further provided written notification in a

motion to suppress search warrants filed on June 1, 2021, which Officer Bower acknowledged

receiving. To proceed with an aggressive criminal investigation, including seeking and executing

search warrants, despite being apprised of potential retaliatory motivations and exculpatory

information, could be interpreted by a jury as a reckless disregard for the true nature of the dispute and a deliberate chilling effect on Mr. Anderson's First Amendment rights.

**B.**    **Reckless Disregard in Warrant Procurement**

Officer Bower's conduct in procuring the search warrants further supports a claim for punitive damages. His affidavits contained material misrepresentations and omissions that fundamentally distorted the probable cause analysis presented to the magistrate. For instance, the inclusion of a future, factually impossible date for Computer Renaissance's services is not a mere "typographical error" but raises serious questions about the diligence and truthfulness of the affidavit. More significantly, Officer Bower omitted crucial exculpatory information, such as the Computer Renaissance owner's written refutation that Mr. Anderson had "cloned" a company computer, and failed to independently verify Trident's claims or contact Mr. Anderson for his side of the story. This systematic failure to investigate impartially, compounded by the selective presentation of information, goes beyond negligence; it suggests a reckless indifference to the accuracy required for such a serious infringement on a citizen's rights. Indeed, expert testimony concludes that Officer Bower's investigation was insufficient to establish probable cause, indicating that a professional standard was not met.

**C.**    **Evidentiary Irregularities and Supervisory Admissions**

The irregularities in the execution of the search warrant at Precision NDT, where officers searched Mr. Anderson's desk despite being told the sought-after laptop was not present, highlight a disregard for the warrant's scope. Perhaps most damning, Officer Bower's own supervisor, Sergeant Brennan, explicitly acknowledged that reports from Officer Bower "should never have been approved" and admitted his own failure to "properly review" them. These internal criticisms directly contradict the defense's narrative of professional conduct and indicate that even within the Soldotna Police Department, serious deficiencies in Officer Bower's work

were recognized. Such admissions, coupled with the pattern of misleading affidavits and the pursuit of an investigation despite knowledge of retaliatory motives, demonstrate that Officer Bower's actions could reasonably be found to exhibit the reckless or callous indifference necessary to support an award of punitive damages.

D.    <u>**Defendants' Cited Cases Support, Rather Than Negate, Entitlement to Punitive Damages**</u>

Defendants selectively cite *Smith v. Wade*, 461 U.S. 30, 56 (1983) and *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991), for the standard that punitive damages are available only when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Far from negating Mr. Anderson's entitlement to punitive damages, these cases establish the legal framework within which his claims are supported. The standard articulated in *Smith v. Wade* and *Davis v. Mason County* precisely describes the nature of Officer Bower's alleged conduct as detailed herein. The evidence presented by the Plaintiff—including the suspicious retaliatory context of the complaint, Officer Bower's alleged knowledge of Mr. Anderson's protected whistleblower activities, the significant material misrepresentations and omissions in the search warrant affidavits, and the admissions by Officer Bower's own supervisor regarding the inadequacy of his reports—collectively points to a reckless or callous indifference to Mr. Anderson's Fourth and First Amendment rights. These actions, if proven at trial, are precisely the type of egregious conduct that *Smith v. Wade* and *Davis v. Mason County* contemplate as warranting punitive damages. Thus, the defendants' reliance on these precedents inadvertently bolsters, rather than diminishes, Mr. Anderson's claim for punitive relief by providing the very legal definition that his factual allegations aim to satisfy.

## X. DEFENDANTS' HAVE NOT NEGATED ACTIONABLE DAMAGES

Defendants assert that Anderson has no actionable damages, claiming he suffered no constitutional injury given that no charges were brought, nor was he interrogated, detained, or arrested. This argument fundamentally misunderstands the scope of damages available for constitutional violations and is directly contradicted by the significant and well-documented harms Mr. Anderson endured as a direct result of the defendants' actions. The absence of a conviction or physical injury does not equate to an absence of cognizable harm under 42 U.S.C. § 1983.

### A. Substantial Financial and Economic Damages

Mr. Anderson has incurred substantial financial and economic damages directly attributable to the defendants' alleged constitutional violations. Foremost among these are the significant attorney fees, amounting to $110,000, expended to defend against the false accusations and to navigate the legal complexities thrust upon him by the improper investigation and search warrants. Furthermore, the criminal investigation and the issuance of unwarranted search warrants compelled Mr. Anderson to abandon a Computer Fraud and Abuse lawsuit, a distinct legal claim valued at approximately $1,200,000. This lost legal claim represents a tangible economic detriment directly flowing from the chilling effect and interference caused by the defendants' conduct. Beyond direct legal costs, Mr. Anderson dedicated an estimated 1,400 hours, valued at $224,000, to addressing the legal fallout of this improper investigation, time that could otherwise have been spent on productive business endeavors. The seizure of his laptop from June to November 2021, a direct consequence of the search warrants, severely disrupted his ability to conduct business, requiring substantial efforts to reconstruct work product and client information and hindering his ability to file tax returns. These are concrete, measurable financial losses that demonstrate the real-world impact of the defendants' actions.

### B. Documented Emotional Distress and Reputational Harm

Beyond the quantifiable financial losses, Mr. Anderson suffered profound non-economic damages, including significant emotional distress and professional harm. The experience of being targeted by a criminal investigation for a crime that ultimately "did not exist" caused him severe emotional distress, anxiety, and sleep disruption, requiring medical treatment from May through October 2021. The constant fear of facing felony charges and potential imprisonment for a baseless accusation created an immense psychological burden. In a specialized field like non-destructive testing, professional reputation is paramount. The criminal investigation and the execution of search warrants led to substantial professional embarrassment and significant reputational harm, directly impacting his standing in the industry. This stress also strained his personal relationships. These are not speculative harms; they are documented impacts on Mr. Anderson's well-being and professional life, directly flowing from the alleged constitutional infringements.

### C. Defendants' Legal Authorities Misconstrue § 1983 Damages Law

Defendants' assertion that Mr. Anderson's alleged damages are not "recoverable under 42 U.S.C. § 1983" fundamentally mischaracterizes the established principles of civil rights remedies. While defendants do not explicitly cite cases to support their limited view of recoverable damages, their argument implies a narrow interpretation of § 1983 that is contradicted by Supreme Court precedent. Section 1983 is intended to provide a remedy for actual injuries caused by violations of constitutional rights. The Supreme Court in *Carey v. Piphus*, 435 U.S. 247 (1978), established that damages in § 1983 actions are compensatory, aiming to put the plaintiff in the position he would have been in had the wrong not occurred. This compensation is not limited to physical injury or conviction. Furthermore, in *Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986), the Court affirmed that compensatory

damages for constitutional violations include both pecuniary and non-pecuniary harms, specifically recognizing that "mental and emotional distress" are "actual injury" for which damages may be awarded. Therefore, the absence of an arrest, detention, or physical injury, as emphasized by the defendants, is not a barrier to recovering for documented emotional distress, reputational harm, or concrete economic losses like attorney fees and lost business opportunities. The law is clear that a plaintiff need not endure the most severe forms of state action to suffer actionable injury under § 1983. The defendants' implicit reliance on a restrictive view of damages is unsupported by the very legal framework governing civil rights litigation.

## XI.  CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion for Summary Judgment in its entirety. The evidence clearly demonstrates genuine issues of material fact that must be resolved by a jury. Justice demands that Plaintiff be permitted his day in court to address these serious constitutional violations. Viewing the evidence in the light most favorable to Plaintiff, as required by T*olan v. Cotton*, genuine disputes of material fact exist regarding whether Officer Bower violated Plaintiff's First and Fourth Amendment rights and whether the City of Soldotna is liable under *Monell* (Motion and Memorandum in Support of Defendants' Motion for Summary Judgment 34, page 36; Ex. AF 34-33, page 21).


Respectfully Submitted,

/s/ Thad M. Guyer
_____
Thad M. Guyer, Esq.
T M Guyer and Ayers & Friends, PC
For Government Accountability Project

116 Mistletoe Street
Medford, OR 97501
Tel: (202) 417-3910
Mobile: (206) 941-2869
Email: thad@guyerayers.com

Attorneys for Plaintiff

## CERTIFICATE OF WORD COUNT

This document contains 8,157 words with a font of 13 points excluding caption, table of contents and certificates. The Statement of Facts contained 4,832 words, for a total word count of approximately 13,000 words, and pages equivalent of those submitted by Defendants. However, the Court has granted a page limit extension:

| 05/09/2025 | 35 | **KFR TEXT ORDER:** The First Motion for Leave to File Overlength Brief 33 is GRANTED. The Motion for Summary Judgment is accepted as filed. (ELH, CHAMBERS STAFF) (Entered: 05/09/2025) |
|---|---|---|

/s/ Thad M. Guyer

_____

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025 a true and correct copy of the foregoing Opposition was served upon all parties by electronic ECF Service

/s/ Thad M. Guyer

_____