

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ANCHORAGE DIVISION

MARTIN ANDERSON, an individual

    Plaintiff,

v.    Civil Action No. 3:23-cv-000119 SLG

THE CITY OF SOLDOTNA, a municipal corporation;

and DAVID BOWER, an individual

    Defendants.

REMOTE STREAMING DEPOSITION OF

JUSTIN WORKS

TAKEN ON

FRIDAY, FEBRUARY 14, 2025

9:05 A.M.

120 TRADING BAY ROAD, SUITE 200

KENAI, ALASKA 99611

1  on staffing and our ability to fill roles.
2       Q.   Yeah.  And then do different district
3  attorneys kind of get -- do you just come in, kind
4  of take one at a time, or do people get siloed to
5  different types of cases at all?
6       A.   Depending on your experience level and
7  your -- your grade, you're assigned various
8  different cases by the acting district attorney.
9       Q.   Okay.  So when you started in June of
10 2021, what kinds of cases were you first getting
11 assigned to?
12      A.   When I began in 2021, I was getting
13 assigned cases by the acting district attorney, Scot
14 Leaders at the time.  He assigned cases based on our
15 experience.  I primarily at the time handled felony
16 cases.
17      Q.   Okay.  And yeah, so -- so then my question
18 becomes when -- when a case gets assigned to you,
19 just a felony case, yeah, the -- the police -- I'm
20 trying to understand kind of just how things go from
21 -- from investigation to then getting charged, that
22 -- how that process typically works between a police
23 department and a district attorney.
24      A.   It depends on the case.
25      Q.   Okay.  So how would it work for just -- I

```
 1  don't know -- any -- any allegation of theft?
 2       A.   Well, it depends if whether or not a
 3  charging decision has been made by the police
 4  department prior to sending it over.
 5       Q.   So the -- the police department may or may
 6  not make a charging decision before they send it
 7  over to the District Attorney's Office?
 8       A.   It depends on the case, but yes.  I mean,
 9  generally -- and we're speaking in the broadest
10  possible terms.
11       Q.   Yes.  Yeah.
12       A.   Cases can either come in as already
13  charged where they have filed an information or a
14  complaint with the court.
15       Q.   Okay.
16       A.   Or they can send a case over by referral
17  where they -- you know, no charging decision has
18  been made at that time.  And it is for us to review
19  the available documentation and make a determination
20  of whether or not charges will be filed.
21       Q.   Okay.  And broadly, generally speaking,
22  about -- about how many things come in, in the one
23  bucket where they are -- you know, they've already
24  been filed in some way, the charging decision has
25  already been made and -- versus how many come in
```

```
 1  be a secondary kind of actus reus, which is the
 2  valuation of the property.  So you --
 3       Q.   Okay.
 4       A.   -- need all three of those essential
 5  elements.
 6       Q.   Yeah.  Okay.  Okay.  And then when
 7  referrals come in that are still being investigated,
 8  how -- would you -- yeah, would you give direction
 9  to the officers to say I want you to go look into
10  this, or is that something that they are directing
11  on their own?
12       A.   It is going to depend largely on the
13  individual case.  But we do not direct officers to
14  do anything.  We ask them on occasion to do follow-
15  up investigations, and we can have conversations
16  about, you know -- and help them, you know, with
17  navigating the legal processes.  But to be very
18  clear, the investigations are conducted solely based
19  on the determination of the investigation --
20  investigating officer.
21       Q.   Okay.  But is it correct that it's
22  ultimately -- well, yeah, whose decision is it --
23  who has authority, ultimately, to decide whether or
24  not to file charges or close -- close one of those
25  referrals?
```

(800) 528-3335 | NAEGELI DEPOSITION & TRIAL | NAEGELIUSA.COM
— Established 1980 —

```
 1   then; am I correct about that?
 2        A.   There's no way of me knowing that because,
 3   obviously, I -- I didn't start until the -- the
 4   14th.  I would say that, you know, if it was sent
 5   over for a referral, you know, at -- at or around
 6   the time I started, there may have never been
 7   somebody that touched the file from our office
 8   before -- before I got it.
 9        Q.   Okay.  Do you remember when this was --
10   when this file was assigned to you?
11        A.   June 14th, 2021.
12        Q.   Very first day.
13        A.   Very first day, very first case I
14   reviewed.
15        Q.   Oh.  Were you assigned other cases that
16   day or just -- just one to start the one day?
17        A.   I had limited computer access, so I
18   believe this was actually the very first case and
19   the only case I reviewed that day because I was
20   doing a lot of HR stuff, filling out, you know, tax
21   documents.  I think I signed up for my retirement
22   plan and health benefits that day as well.
23        Q.   Gotcha.  Okay.  So would the -- would the
24   file have shown you, yeah, when -- when that
25   referral was -- arrived to your office?  I mean, it
```

```
 1   looked like a -- you know, a pretty, you know, large
 2   file download from a computer.
 3       Q.   Do you remember receiving any voice
 4   recordings or other digital evidence other than a
 5   computer download?
 6       A.   I don't remember, no.  I'm sorry.
 7       Q.   Do you remember when the decision was made
 8   not to bring charges on this case?
 9       A.   So I -- I think I -- I made the final
10   decision in late October.  It was shortly after
11   receiving notice that the parties had filed -- or --
12   or -- or had -- had settled, I should say.  And then
13   I remember receiving an email from -- of that from
14   his defense counsel.  I think it was Clint Campion
15   at the time.
16           And then after receiving that, I think I
17   still took a couple days to -- to make the
18   determination.  I think I filed -- or, you know, in
19   our computer system, I think I made the
20   determination on like the -- like late -- late
21   October, a couple days afterwards.
22           Usually, you know, it's not a spur-of-the-
23   moment kind of thing because, once again, when I
24   received that notice, I'm -- I'm taking another time
25   to review everything, you know, make sure that, you
```

```
 1   know, if I'm rejecting a prosecution, that I've --
 2   you know, that I feel comfortable doing that, you
 3   know.
 4             It's not uncommon for me to sleep on it a
 5   night, you know, really let it kind of marinate in
 6   the back of my head, make sure that -- that I'm
 7   doing the right thing, and that, you know, I feel
 8   comfortable with this and comfortable with the
 9   resolution and then -- and then, you know, make a
10   determination not to move forward.
11        Q.   Okay.  Do you recall -- do you recall now,
12   between when you were assigned to this case in June
13   and then that's -- getting notice of the settlement,
14   finally deciding to not press charges in October,
15   what kind of investigation you were hoping was
16   happening there or what further information you were
17   looking for?
18        A.   I don't, no.  You know, in a -- in a case
19   like this, I -- you know, it would be -- you're
20   always looking for more information, you know.
21   Maybe there -- there's something that pops up.
22   Maybe there's -- you know, maybe settlement
23   negotiations or civil discovery breakdown.  And you
24   know, suddenly, you know, I'm -- you know, more
25   information becomes available or -- or something of
```