```
              IN THE UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF ALASKA

                      ANCHORAGE DIVISION


MARTIN ANDERSON, an individual,

        Plaintiff,

v.                  Civil Action No. 3:23-cv-000119 SLG

THE CITY OF SOLDOTNA, a municipal corporation;

and DAVID BOWER, an individual

        Defendants.




                          REMOTE STREAMING DEPOSITION OF

                                             DAVID BOWER


                                               TAKEN ON

                                   THURSDAY, JULY 11, 2024

                                              9:27 A.M.


                                    15 NORTH KOBUK STREET

                                   SOLDOTNA, ALASKA 99669
```

1    A.   Oh, approximate years.  Oh.  It was
2 Montana State Academy and that must have been around
3 '98 maybe, '99, and that was in Butte, Montana.  And
4 then in Sitka when I came up here 2004, and that's
5 just a guess, maybe it's 2003, that was Alaska State
6 Academy in Sitka.
7    **Q.   And did Alaska have a requirement that if**
8 **you came up from, if you're a police officer from**
9 **another state, you still had to attend the Alaska**
10 **Academy?**
11   A.   It was a recertification academy, so it
12 was an abbreviated version of their academy.
13   **Q.   All right, thank you.  And then when you**
14 **joined the SPD, were you put through any sort of**
15 **formal on-the-job training or mentorship?**
16   A.   Yeah, so FTO field training, you know, I
17 think it was a 14-week program.
18   **Q.   Okay.  And do you recall who the trainers**
19 **or mentors were?**
20   A.   I believe that Stace Escott was one of my
21 FTOs.  I don't remember who was my primary.  Johnny
22 Whitehead, who's since retired, was one of them.
23 Duane Kant was one of them.  And I can't remember if
24 there was more.
25   **Q.   Okay.  Have you had any specific courses**

1  or certifications in digital forensics?
2       A.   I have.  I attended -- and I don't
3  remember the name of the school, it was put on by
4  the Secret Service.  I believe that it was conducted
5  in Virginia and it was almost a week long.  And part
6  of that course, I received the forensic computer,
7  which was called FRED.  It was Forensic Recovery
8  Evidence Device.
9            And the FTK, Forensic Tool Kit, software
10 was given to me at the time to use at the Soldotna
11 Police Department and I was using that software for
12 almost eight years, I think, before the licensing
13 ran out on it.
14      Q.   Okay.  So when did the license run out on
15 it?  About?
16      A.   I can't even remember.  It was about it
17 was like five, six years after I attended the
18 training.
19      Q.   Okay.  So by the time of the events that
20 we're here about regarding the search warrant and
21 Mr. Anderson's computer media that license had
22 already expired?
23      A.   Correct.
24      Q.   So give me an idea about what kinds of
25 subject matters were included in this digital

1  forensics course of study in Virginia.  I'll just
2  start off with the two I'm sure were part of it.
3  Probably child pornography and image recovery was
4  one.  Probably a discovery about text messaging drug
5  dealers and stuff were another.
6            Were those two of them?
7       A.   Yes.
8       Q.   Okay.  So what other ones do you recall?
9       A.   Now that was pretty much the basis of the
10 training was recovery of digital media from
11 computers and cell phones.  And primary, it was put
12 on by the -- that was part of the ICAC, which is
13 Internet Crimes Against Children task force, and
14 that's who paid for the training to begin with.
15      Q.   Okay.  Did you have a good opinion of the
16 training?
17      A.   I did.
18      Q.   Did you find it to be a useful tool as a
19 police officer?
20      A.   I sure did.
21      Q.   There must be almost nothing more
22 gratifying than catching a pedophile or a child
23 abuser, right?
24      A.   It is.
25      Q.   Okay.  All right.  So I take it that you

1  have not had any courses for digital forensics in
2  the business dispute context, have you?
3       A.   I have not.
4       Q.   Okay.  And I take it you haven't had any
5  training on how to identify what is or what is not
6  protected intellectual property?
7       A.   I have not.
8       Q.   Okay.  And other than Mr. Anderson's case,
9  had you ever conducted a search warrant for to
10 recover digital information in a business context?
11      A.   From a business, but it was a different
12 context, but yes.
13      Q.   So what was the other one from the
14 business?  I'm dying to know.
15      A.   The other, without saying the name of the
16 businesses, it was in like a boss and one of the
17 employees, like a sexual harassment type case where
18 he was sending pornography to her and so I had to
19 recover that from their computers.
20      Q.   Okay.  So it was a misuse of a business
21 asset for an illegal purpose?
22      A.   Correct.
23      Q.   Now I take it that at least over time you
24 gained familiarity with SPD policies and procedures?
25      A.   Yes, sir.