

# Expert Report Addendum of David T. Sweeney

## May 1, 2025

### *Martin Anderson v. City of Soldotna*

### *Case 3:23-cv-00119-SLG*

## DT Sweeney Consulting, LLC

## 4616 25th Ave. NE Suite #156  Seattle, WA 98105

COS 2098

## INTRODUCTION:

I was retained by counsel for the defense to review the case *Martin Anderson v. City of Soldotna,* in order to offer opinions based on my experience and training as a law enforcement officer and as an expert witness. I previously submitted an expert opinion report in 2024 for this case.

## EXPERT'S QUALIFICATIONS:

I have 34 years of police experience, with 21 years as a police supervisor. I have seven years of experience as an expert witness in police practices. I currently serve as an adjunct instructor for the School of Police Staff and Command at Northwestern University in Evanston, Illinois. I teach both in-person and online classes to police executives in the U.S. on topics such as Training, Employee Relations, Leadership, Decision-making, Performance Appraisals, Union Issues, Media Relations, Public Speaking, etc.

From March 2021 to March 2022, I was the Patrol Commander for the Oregon State University Police Department. I was second in command overseeing 3 sergeants, 4 police officers, and 11 public service officers. In this role I was the incident commander for any unusual occurrences such as high-profile arrests, mental health calls, sporting events with large crowds, fires, protest demonstrations, etc. I was also responsible for approving arrests, search warrants, investigations, use of force, collisions and reports written by patrol officers. Prior to working at OSU, I was a Watch Commander for the Seattle Police North Precinct. In this position, I was actively engaged in the direct supervision of eight (8) sergeants and sixty (60) officers. I was responsible for all patrol activities of my personnel in the SPD North Precinct. As the watch commander, I was responsible for incident command of unusual occurrences taking place in Seattle. In addition, I had overall command and control for search warrants, arrests, use of force, collisions, pursuits, or any other high-profile incident and/or arrest. I served as the incident commander for numerous large-scale protest marches, riots and crowd disturbances within the City of Seattle.

I previously served as an Operations Lieutenant, Administrative Lieutenant for East Precinct, and Acting Captain for the North Precinct of the Seattle Police Department. In all those assignments, I was responsible for supervision of staff under my command. This included traffic stops, arrests, reports, collisions, use of force, pursuits, and both emergency and general patrol response. After the conclusion of the incident, my responsibilities included incident after-action reports as well as

command level review of high-profile incidents such as use of force, pursuits, collisions, complaints, etc. After completing the command level reviews and after-action reports, my responsibility included referrals for officers to training, to the Office of Professional Accountability, as well as commendations or notations for improvement within subordinate's performance reviews.

As a member of the SPD Training Cadre, I have both received and provided hundreds of hours of training in all aspects of patrol work. As a trainer, I instructed SPD officers and sergeants on both team formation and tactical response to unusual occurrences, mental health calls, arrests of armed suspects, barricaded suspects, or any other type of high-profile situation requiring a multiple officer response team. Using both classroom instruction and role-playing scenarios, I trained both line level staff and command staff on proper situational assessment, methods of containment, less-lethal utilization, team formation, de-escalation, arrest procedures, etc. I have been through three 40-hour Crisis Intervention Training (CIT) certification classes. As the Operations Lieutenant, the North Precinct Anti-Crime Team (ACT) fell within my purview. I reviewed and approved search warrants served by ACT for a variety of types of offenses, including narcotics, weapons, other felony crimes and arrest warrants for dangerous wanted persons.

Previously, as a sergeant I have worked with Seattle Police Department Human Resources, Internal Investigations, Patrol and SWAT. During my time as a sergeant in SWAT and Patrol, I was responsible for supervising teams of officers responding to high-profile serious incidents such as barricaded suspects, mental health calls, search warrants, arrests of dangerous felons, pursuits, dignitary protection, as well as situations requiring SWAT/sniper support due to armed suspect(s) threatening the public or police officers. During my time in SWAT, I routinely worked with detective units in order to assist them with the serving of search warrants. This would include reading the search warrant, determining validity, and discussing the search warrant with the responsible detective unit such as Homicide, Narcotics, Robbery, etc. Finally, SPD SWAT would then serve the search warrant or arrest warrant and I would supervise SWAT officers using the warrant in order to legally justify entry into the premises. Altogether, I have written, supervised and served approximately 100 search warrants. For the rest of my qualifications and work experience, please see my attached CV.

## FEE STRUCTURE:

My fee schedule is $400 per hour. My deposition fee is $2,500, with $550 per hour after the first 4 hours. I will require a reasonable time to review my reports and evidence prior to offering any deposition or trial testimony. Preparatory time is usually paid for by hiring counsel unless both sides make other arrangements.

# EXPERT'S HISTORY:

As an expert witness, I have assisted both plaintiff and defense attorneys with expert witness analysis and reports. The full list is on my CV. During the last 5 years, I have had my deposition taken and/or testified in nine cases, with two cases added since my original report:

1. *Woody v. Big Horn County, MT* – 2021. This was a police pursuit case that ended in a fatality. I was hired by plaintiff's counsel and testified in a deposition.

2. *Delafuente vs. City of Nampa, ID* – 2021. This was a police pursuit case that ended in two fatalities. I was hired by plaintiff's counsel and testified in a deposition.

3. *Richmond v. Spokane County* – 2022. This was a human resources EEO case which ended in separation of service. I was hired by plaintiff's counsel and testified in a deposition.

4. *O'Brien v. City of Chicago* – 2022. This was an excessive force case. I was hired by plaintiff's counsel and testified in a deposition.

5. *Irving v. City of Raleigh* – 2022. This was a police misconduct case. I was hired by plaintiff's counsel and testified in a deposition.

6. *Delafuente vs. City of Nampa, ID* – 2022. I testified in court for plaintiff regarding this police pursuit case.

7. *Hartman v. State of Arizona* – 2023. This was a pursuit case. I was hired by plaintiff's counsel and testified in a deposition.

8. *Hennefer v. Yuba County* – 2024. This was a police procedural case. I was hired by plaintiff's counsel and testified in a deposition.

9. *Jacquelyn Moore v. Jesse Patterson* – 2025. This was a police pursuit case. I was hired by plaintiff's counsel and testified in a deposition.

I have been published on two occasions:

*The Need for Police De-Escalation,* published in the Defense News in Fall of 2021 by Washington Defense Trial Lawyers Association.

In 2023 my Master's defense, *The Effects of Restrictive Police Pursuit Policies in Washington State,* was published by Oregon State University.

# MATERIALS REVIEWED:

Defense counsel previously provided me with the following materials which I reviewed. I reserve the right to amend my report should additional materials become available.

1. Complaint FILED 05-23-2023 ECF, 16 pages:

2. Def's Answer, 12 pages:

3. 2023.10.06 - P's Initial Disclosures, 11 pages:

4. 2023.10.06 - P's Initial Disclosure docs Portfolio (191 docs on one PDF):

5. 2024.04.19 - P'S CONSOLIDATED RULE 26 Expert Disclosures, 5 pages:

6. 2023.10.30 - Ds' Initial Disclosures, 9 pages:

7. COS 0001-1374, Ds' Initial Disclosure docs_Redacted, 1374 pages:

   a. 0001-0018: Complaint

   b. 0019 – 0022: 3/22/19 work order # 13981 from Computer Renaissance

   c. 0023 – 0026: 3/23/20 work order #15168 from Computer Renaissance

   d. 0027 – 0030: 9/5/20 work order #25006 from Computer Renaissance

   e. 0031 – 0041: Complaint letter to Soldotna Mayor and City Council

   f. 0042 – 0045: Complaint letter to Alaska Police Standards Council, including 16 bullet points regarding search warrant

   g. 0046 – 0049: Search warrant affidavit 3KN-21-77 SW, dated 5/18/21

   h. 0050 – 0053: Search warrant 3KN-21-77 SW, signed and dated 5/19/21

   i. 0054 – 0057: Search warrant affidavit 3KN-21-76 SW, dated 5/18/21

   j. 0058 – 0061: Search warrant 3KN-21-77 SW, signed and dated 5/19/21

   k. 0062 – 0065: SPD Incident Report #SO21000745 of theft, reported 4/26/21, 13:30

l.   0066: City of Soldotna letter to attorney for Martin Anderon re: PDR.

m.   0067 – 0068: Letter to Mr. Anderson re: ASNT ethics investigation

n.   0069 – 0078: Affidavit of Mr. Anderson - motion to suppress two search warrants

o.   0079 – 0081: PDR request from Mr. Anderson

p.   0082 – 0083: 6/8/21 letter from Andrew Walker of Computer Renaissance re: Search
     Warrant 3KN-21-77, said to contain inaccuracies

q.   0084 – 0090: Emails between Scott Hayes and Gene Meek regarding whistleblower
     Mr. Anderson

r.   0091 – 0094: Emails regarding PDR

s.   0095 – 0096: Emails regarding complaint

t.   0097 – 0101: Emails from James Hall to David Bower re: value of intellectual
     property

u.   0102 – 0114: Various course descriptions from aktech

v.   0015 – 0116: 3/25/21 photos of computers

w.   0117 – 0123: Emails and computer information, Dave Wilson and James Hall

x.   0124 – 0143: Various emails from and regarding Mr. Anderson and City of Soldotna

y.   0144 – 0161: Purchase and sale agreement dated 1/22/21 between Southern
     Services (Buyer), and Trident Engineering and Inspection (Seller)

z.   0162 – 0163: Email from Dave Wilson to James Hall re: Dell laptop

aa.  0164: Sales Order #597 from Computer Renaissance dated 3/24/21

bb.  0165 – 0174: 5/3/21 Email from James Hall to David Bower re: cloning of computer
     and valuation of intellectual property

cc.  0175 – 0187: Various course descriptions from aktech

dd. 0188 – 0189: 3/25/21 photos of computers

ee. 0190 – 0201: Emails and computer information, Dave Wilson and James Hall

ff. 0202 – 0214: Various course descriptions from aktech

gg. 0215 – 0216: 3/25/21 photos of computers

hh. 0217 – 0223: Emails and computer information, Dave Wilson and James Hall

ii. 0224 – 0235: Emails between Officer Bower and Russ Pack

jj. 0236 – 0239: The same 4 emails dated 4/27/21 from Sgt. Brennan to Officer Bower, asking him to take over the theft of data from a former employee up to conclusion. Related: page 0257 is a request from Officer Swangel to Sgt. Brennan, advising that he would be on vacation and requested another unit to work on the case.

kk. 0240 – 0241: Emails between Officer Bower and James Hall re: Mr. Anderson's training school and laptop cloning

ll. 0242 – 0339: Emails between Dave Wilson, Russ Pack, Brittany Winkler, James Hall, Officer Bower and various other people.

mm. 0340 – 0373: Affidavit of Mr. Anderson - motion to suppress two search warrants. On page 0357, it states, "...Trident went after him [Mr. Anderson] with criminal allegations and misled Ofc. Bower to accomplish this." (p. 0357:21). The motion goes on to suggest that Officer Bower did not have probable cause for his search warrant affidavit.

nn. 0374 – 0377: Search warrant affidavit 3KN-21-77 SW, dated 5/18/21

oo. 0378 – 0381: Search warrant 3KN-21-77 SW, signed and dated 5/19/21

pp. 0382 – 0385: Search warrant affidavit 3KN-21-76 SW, dated 5/18/21

qq. 0386 – 0389: Search warrant 3KN-21-77 SW, signed and dated 5/19/21

rr. 0390 – 0391: 6/2/21Email between DA Leaders and Officer Bower re: suppression of 2 warrants relating to Mr. Anderson

ss. 0392 – 0405: Various emails about the search warrant, bringing evidence to SPD, filing of motions, and other assorted topics

tt. 0406 – 0410: Search warrant request from Officer Bower, dated 6/1/21, relating to the prior two warrants

uu. 0411 – 0414: Unsigned search warrant for laptop in SPD storage

vv. 0415 – 0438: Various emails between people involved in this incident. Most appear to be repeated from earlier in the exhibit

ww. 0439 – 0444: Motions and emails to suppress the two search warrants

xx. 0446 – 0449: Messages from Lawyer Eric Derleth with case updates

yy. 0450 – 0451: 2021 Biennial report for Alaska Technical Training, Inc.

zz. 0452 – 0453: Email from Copy Cats Printing, 6/7/21

aaa. 0454 – 0455: Letter from Andrew Walker, Computer Renaissance, 6/8/21

bbb. 0456 – 0467: Emails from Russ Pack and Officer Bower

ccc. 0468 – 0470: Emails from Lawyer Eric Derleth, Chief Meek, and Martin Anderson

ddd. 0471 – 0479: CV of Martin Anderson

eee. 0480: 4/26/21 Email from Officer Swangel to Sgt. Brennan re: assignment of case

fff. 0481 – 0482: 4/30/21 emails between Officer Bower and James Hall of Trident

ggg.    0483 – End: From my review, most all of this material seems to be in a repeating pattern from earlier portions of the exhibit. I will describe anything that seems noteworthy and/or new.

hhh.    0558 – 0564: 5/3/21 email from Dave Wilson to James Hall regarding a support program being installed on Trident computers on 2/18/21. His email indicates that he believes that Mr. Anderson cloned one of their laptops.

iii.    0565 – 0576: Emails between Bower, Pack, Hall re: case

jjj.    0577 – 0630: Scanning these emails appears to show previously reviewed emails

kkk.    0631: 5/14/21 email from Ofc. Bower to Russ Pack, indicating that he had written two warrants and was waiting for court approval in order to serve the warrants in the next week. On 5/17/21, Russ Pack wrote back saying that he would like to speak to the DA before the warrants are served.

lll.    0632 – 0659: More emails regarding the case. A quick scan shows that most if not all of the emails were already reviewed.

mmm.    0660 – 0661: 5/19/21 email from Russ Pack asking if there was any news. On 5/20/21, Officer Bower wrote back saying that the search warrants were granted, but had not been served and that Officer Bower expects to serve them as soon as he is able. On 5/21/21, Russ Pack wrote back asking how long the warrants are good for. On 5/25/21, Officer Bower wrote back saying that the warrants are good for a month and that he expects to serve the warrants on this day.

nnn.    0662 – 0733: Appears to be previously reviewed emails and motion to suppress the search warrants and previously viewed search warrant material

ooo.     0734: 6/1/21 email from lawyer Eric Derleth to Officer Bower requesting a date for Anderson to bring his laptop to SPD

ppp.     0735 – 0808: Previously viewed correspondence

qqq.     0809: Email from lawyer Eric Derleth to Officer Bower in order to schedule an interview of Martin Anderson

rrr. 0810-0850: Previously viewed correspondence

sss.     0851 – 0851:  Criminal Case Intake and Disposition re: Defendant Martin Anderson

ttt. 0852 – 0917: Previously viewed correspondence

uuu.     0918 – 0980: October 2021 - January 2022 correspondence re: disposition of the case and return of the computer to Mr. Anderson

vvv.     0981 – 1053: Previously viewed correspondence

www.     1054 – 1055: Written response to Soldotna search warrants dated 5-18-21 and 5-19-21

xxx. 1056 – 1147: Previously viewed correspondence, relating to a police complaint

yyy.     1148 – 1149: Complaint notification form dated 1/24/22 from Sgt. Escott to Officer Bower

zzz. 1150 – 1240: Previously viewed correspondence

aaaa.     1241 – 1274: 1/28/22 email from Sarah Hieb to Mr. Anderson regarding the status of his complaint and additional correspondence

bbbb.     1275 – 1336: 1/26/22 email from Paul Flaherty to Duane Kent regarding missing PDR documents. Numerous previously viewed pages were included.

cccc. 1337 – 1338: 3/21/22 email from Samantha Bower to Dkant@soldotna.org entitled "Evaluation" with a description of her responsibilities

dddd. 1339 – 1344: 3/15/22 email from Paul Flaherty to Duane Kent regarding police records request

eeee. 1345 – 1344: 5/2/22 email from Martin Anderson to Duane Kent regarding police records request. On 5/4/22, Duane Kent said he received the email and would look into it. Previously viewed correspondence was attached.

8. 2024.01.16 - Ds' 1st Supplemental Disclosure, 2 pages

9. 2024.01.16 - Bower Responses to Discovery Requests from Plaintiff, 23 pages.

10. 2024.01.16 - City of Soldotna's Responses to Plaintiff's Discovery Requests, 24 pages

11. 2024.03.25 - Def's 2nd Suppl Disclosures, 2 pages: (Officer Swangel is now a _former_ officer).

12. Dale Meek 03-25-2024.mini

13. Stace Escott 03-25-2024.mini

14. COS 1554-1582, emails, 29 pages: Community events held in Soldotna in 2019 and 2020

15. COS 1583-1592, 10 pages: City of Soldotna Employee Handbook

16. COS 1593-2034, SPD Operating Procedures Manual, 442 pages:

    a. **2.000(II) Powers and Duties of Commissioned Police Personnel – Policy**: "As a police officer SPD members have the authority to arrest and issue citations; Detain a person taken into custody until that person can be arraigned before a judge or magistrate; Conduct investigations of violations of and enforce criminal laws, regulations, and traffic laws; search with or without a warrant persons, dwellings, and other forms of property for evidence of a crime; And take other action

consistent with exercise of these enumerated powers when necessary to maintain the public peace." [Ref AS18.65.290(7)(A)]. (COS 1604, Pg. 12).

b. **3.018 Abuse of Position**: "Members of the Police Department shall not use their official position, identification, or badge for personal or financial gain or privilege or to avoid the consequences of illegal acts." (COS 1609, Pg. 17).

c. **3.033 Truthfulness**: "Members of the Police Department shall maintain the highest level of honesty during any official proceeding or inquiry. Deliberate false statements or omissions of critical facts are prohibited." (COS 1612, Pg. 20).

d. **3.038 Arrest, Search and Seizure**: "Officers shall not make any arrest, search, or seizure which they know or should reasonably know is not in accordance with the law and department procedures." (COS 1612, Pg. 20).

e. **3.039 Ethics**: "Members of the Police Department shall not conspire or knowingly engage in any activity which deprives any person of their civil rights, due process, equal opportunity for employment, advancement, job opportunities, or any constitutionally or statutory guaranteed right period." "With no compromise with crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities." (COS 1613, Pg. 21).

f. **3.041 Requests for Assistance**: "When any person requests assistance or advice or makes complaints or reports, either by telephone or in person, all pertinent information will be obtained in an official and courteous manner and will be properly and judiciously acted upon consistent with established Department procedures." (COS 1614, Pg. 22).

g. **C. Values 1. "**We will be sympathetic to victims. **2.** We will not shirk our responsibility to enforce the laws. We will be fair and professional and at times firm." (COS 1619, Pg. 27).

h. **A. Organizational Structure – General 5. "**The administrative assistant supervises the police clerk and the day-to-day operations of the office. The administrative assistant is also the evidence custodian. **A.** The administrative assistant is largely responsible for the department's fiscal activities, evidence, maintaining department files. **6.** The police clerk is primarily responsible for answering phones, receiving public enquiries at the front counter, digital evidence, case management, and gathering statistics." (COS 1621, Pg. 29).

i. **D. Authority and Responsibility: 1.** "Sworn officers receive their authority from the State of Alaska and the City of Soldotna, and in so doing take an oath of office to enforce the law, uphold the constitutions of the United States and the State of Alaska, and to abide by the Law Enforcement Code of Ethics." (COS 1622, Pg. 30).

j. **4.200 Case Management I. Policy**: "Proper case management is crucial to the efficient and effective delivery of police services. A computerized Records Management System (RMS) has been installed at the Soldotna Police Department that provides a tool for this purpose. It is the policy of SPD that supervisors and case officers will utilize the case management function to assign, track, and approve investigations conducted by SPD employees." (COS 1628, Pg. 36).

k. **6.310 Employee Misconduct IV(A)**. **Employee Mistakes and Minor Errors in Judgment – Coaching and Counseling 1.** "The Department recognizes that all employees periodically make minor unintentional mistakes and minor errors in

judgment that are correctable with coaching and/or additional training. Part of the role of the supervisor is to make those incidents positive learning experiences for the employee." (COS 1726, Pg. 134).

l.  **7.000 Patrol Operations IV(A)(3)**: Functions 3. Investigation of crimes and incidents. **C.(3).** Investigation of all cases including gathering and preserving evidence and effecting arrests. **(a).** Officers are responsible for gathering and impounding all related evidence including exculpatory evidence. (COS 1806-07, Pgs. 214-215).

m.  **8.000 – Evidence and Property Control**

    i.  II. Policy: "SPD's policy is to ensure that evidence and other property in its custody are properly secured and stored, readily at retrievable, and that any changes in its custody have been properly and fully documented. Employees who take custody of any property are responsible for documenting it and logging it into a secured property locker before leaving for the day. All evidence will be recorded and tracked in ARMS." (COS 2004, pg. 412).

    ii.  **III. Evidence definition**: "anything which may be used to establish or disprove the Commission of a crime or infraction." (COS 2004, pg. 412).

    iii.  **IV.A(6)(a) Procedure – Digital Evidence (Audio, Video, Photos, and Forensic):** "Each officer will have a digital evidence folder under "User Shared Folders". Within this folder there will be four additional folders labeled: "Audio", "Video", "FRED", and "Photos". "FRED" is used to drop forensic evidence. 1) Officers will drop their digital evidence in the

appropriate folder. (b). The Police Clerk will then retrieve this evidence and store it." (COS 2006, pg. 414).

iv. **IV.A(16) Procedure –** "Document the circumstances upon which piece of evidence came to be collected or seized and the release or destruction in the incident narrative." (COS 2007, pg. 415).

v. **IV.C. Procedure: Evidence/Property Transfer**

1. "All evidence and property transferred within the department will be tracked through ARMS. This maintains the chain of custody. All evidence transferred out of the department will maintain a chain of custody through ARMS, certified mail, or a property release form.

2. Property transferred to the crime lab.

   a. The investigating officer shall complete a lab request.

   b. The evidence custodian shall submit the lab request and evidence to the crime lab via certified mail.

   c. The crime lab will process the evidence and return the submitted evidence along with a report of findings unless it was a substance that was destroyed during testing period the evidence custodian shall then place the returned items back into evidence.

   d. Items that cannot be mailed to the lab shall be hand delivered.

3. Evidence submitted to the court

  a. Evidence requested by the court shall be submitted to the court by an officer. A property release report shall be utilized for the transfer.

  b. When the property is no longer needed by the court it shall be returned by an officer and delivered to the evidence custodian." (COS 2008, pg. 416).

vi. **D. Disposition of Property**

 1. "Evidence

  a. When no longer needed for evidentiary purposes, and when legally required retention (see Evidence Retention Key) periods have been met, all evidence shall be:

   1. released to its lawful owner;

   2. transfer to this or other jurisdictions by a court order;

   3. destroyed;

   4. converted to safekeeping status; or

   5. auctioned, traded, or sold as required by law.

  b. Case Officer responsibility after receiving the CCID.

   1. Ascertain that the evidence is no longer needed.

   2. Review the evidence retention key to verify the evidence does not need to be retained for other reasons listed therein.

3. Make the proper entry in ARMS for property disposal.

4. Scan the CCID into ARMS.

5. Return the CCID to the evidence custodian.

c. If the case officer is unavailable a supervisor may complete the duties listed in "b" above.

d. Physical evidence for misdemeanor and felony cases [where there is a conviction.] [1]

1. Evidence in misdemeanor cases will be held a minimum of (30) days from the date of sentencing listed on the CCID.

2. Evidence in felony cases will be held in minimum of (60) days after from the date of sentencing listed on the CCID.

3. This does not apply to digital evidence and photographs which have a separate retention schedule listed in the City code.

e. After the evidence is approved for disposal in ARMS, the evidence custodian will purge the property according to "1. a. 1) – 5)" above." (COS 2009-10, pg. 417 - 418).

---

[1] On my copy of COS 1593-2034, SPD Operating Procedures Manual, there is a notation for the bracketed word section: "Commented [PM1]: Language added 11/16/21." Note: The SPD Manual Chapter 8 heading indicates that this policy was originally Effective and Approved on 1/1/14. It was Revised and Approved on 11/16/21. I do not have the prior version, so I will assume that the language in D(1)(d) was added on 11/16/21, as indicated.

      vii. **8.001 – Evidence Viewing and 8.010 – Digital Media Files**: Reviewed policies, but I am not quoting them here. (COS 2012-16, pgs. 420 - 424).

     viii. **8.400 – Records Administration and 8.401 Records Retention**: Reviewed policies, but I am not quoting them here. (COS 2025-28, pgs. 433 - 436).

17. COS 2035, Training_for_David_Bower 1 page: 1 hour training class held 4/28/16 on forensics, search warrants, and other litigation updates.

18. COS 2036, Property Release Report, Anderson 1 page: 11/16/21 property release report for Martin Anderson obtaining his Dell laptop.


Since the original report, defense counsel sent me the following documents in April of 2025:

19. 2024.05.02 - Bower's Supp Response to Pltff 1st Discovery

20. 2024.05.02 - COS Supp Response to Pltff First Discovery

21. 2025.01.20 - Plaintiff's Expert Witness Initial Disclosure (ID)

22. 2025.03.03 - P's Responses to Ds' First Set of Discovery Requests

23. 2025.03.03 - P's Suppl Disclosure of Docs - Response to 1st Set of Discovery

24. 2025.03.20 - P's Responses to Defendants' 2nd Set of Discovery Requests

25. 2025.03.28 - Plaintiff Anderson's Second Supplemental Production of Documents

26. Depo Transcript - David Bower 07-11-2024

27. Depo Transcript - Janette Bower 03-25-2024

28. Depo Transcript - Justin Works 02-14-2025

29. Depo Transcript - Lona Saylor 02-18-2025

30. Depo Transcript - Stephanie Queen 02-13-2025

# INCIDENT RECAP

On April 26, 2021, VP Russell Pack made a complaint to Soldotna Police Department (SPD) Officer Swangel of intellectual theft by Martin Anderson. He reported that Anderson took a Trident computer to Computer Renaissance in Soldotna and had company information transferred to his personal computer before returning the company computer that had been wiped clean. On April 27, 2021, Officer Bower took over the investigation and contacted Computer Renaissance. He was provided a work order for Martin Anderson from 9/5/21 at 12:37 hrs. Computer Renaissance transferred the hard drive from a Dell latitude E5470 and an Orrico external hard drive. On 3/22/21, Anderson brought in a silver Dell Latitude E5440 and requested a clone copy be put on the E5440. Anderson later picked up both laptops and external hard drive. On 4/28/21 at 1103, Bower contacted Pack and requested an estimate of the value of the lost data. Trident president Hall provided Bower with a 1/22/21 purchase order on 1/22/21 for $280,000. (Item #8).

On May 19, 2021, two search warrants were issued by Judge Martin Fallon: Search Warrant 3KN-21-00076SW and 3KN-21-00077SW. On 6/1/21, Mr. Anderson turned his laptop over to SPD. Consequently, a third search warrant was issued on June 1, 2021 and Officer Bower recovered files, stored as evidence.

## ANALYSIS AND OPINIONS

In order to offer my expert witness opinions, I will be utilizing the police training I have received, my years of experience training others, my extensive experience handling high-profile police incidents as an officer and as an incident commander. I will be relying on my years of completing investigations and search warrants, my years of completing command level review of police actions in the field, my experience writing and enforcing department policies and procedures, and several years of experience as an expert witness in policing. I will also rely on my education, specifically my Master's in Public Policy from Oregon State University. Lastly, I will rely on my knowledge, education and experience pertaining to the investigation of misconduct complaints against law enforcement officers.

This report addendum will focus on the following items from a reasonableness standard of policing.

A. Plaintiff's claim of violation of 42 USC 1983, U.S. Constitution, Amt. IV- Illegal Search and Seizure.
B. Plaintiff's claim of violation of 42 USC § 1983 Amt. I- Retaliatory Search against Officer Bower.
C. Plaintiff's claim of violation of 42 USC § 1983, U.S. Constitution-Municipal Liability against the City of Soldotna.
D. Plaintiff's claim that the official policy, or practice or custom of the City of Soldotna resulted in constitutional injury.
E. Plaintiff's claim that inadequacies in police training provided by the City directly resulted in constitutional injury.
F. Plaintiff's claim that the violations described above are not isolated incidents in Soldotna. The City of Soldotna has exhibited deliberate indifference to SPD's use of searches without probable cause, and that deliberate indifference caused the violation of Plaintiffs constitutional rights in this case and in others.

# OPINIONS AND ANALYSIS OF PLAINTIFF'S CLAIMS

## Interrogatory No. 1, Plaintiff's claim of violation of 42 USC 1983, U.S. Constitution, Amt. IV- Illegal Search and Seizure.

Plaintiff alleges that Officer Bower provided false information and withheld exculpatory evidence in his search warrant affidavits; that he submitted factually impossible information; that he failed to follow SPD policies and procedures and lacked appropriate supervision; that he inserted himself into a civil dispute and crafted it into a criminal event; that he never documented the initial search of plaintiff's place of business.

1. <u>Allegation:</u> Officer Bower provided false information and withheld exculpatory evidence in his search warrant affidavits.

   <u>Opinion:</u> As I pointed out in my initial report, I recognize that Officer Bower made factual errors when he applied for the initial two search warrants. In my opinion, based on my training and experience in the investigation of officer misconduct, there is a big difference between false information and mistakes. Officers are not perfect, and they can indeed make mistakes. I have reviewed thousands of police reports where mistakes were made. It is the job of the supervisor to correct these mistakes if they are important to the status of the case. It is important to correct these mistakes if it appears that the officer will have problems testifying in court over particular discrepancies. However, while I recognize that officers make mistakes and that it is the job of the supervisor to correct mistakes, it is impossible for a group of officers to be 100% correct, 100% of the time. Likewise, it is

impossible for the police supervisor to find and seek correction for 100% of the mistakes they discover when reviewing police reports. The supervisor usually was not the investigator. The supervisor does not know the case as well as the investigator. Similarly, as a supervisor I would not correct every single spelling and punctuation error. However, if I saw that a police report indicated that the address of an arrest was at a particular address, and the address listed on the report is different, I would seek clarification as this could affect the outcome of the case.

Providing false information has the connotation of officer dishonesty. False information can be a mistake or it can be intentional. Officers should not knowingly enter false information on any official police reports. However, it could be possible for an officer to unknowingly enter false information. I gave the example of the wrong address above. It can be difficult to detect when an officer has mistakenly provided false information, and when they have intentionally provided false information. In my training and experience, if a complaint of dishonesty is made against a departmental employee, there should be an investigation to determine if the complaint is sustained, not sustained, exonerated, or unfounded. As a member of the Seattle Police Office of Professional Accountability, I have investigated complaints where I believed that a department employee intentionally provided false information. The complaints were usually sustained, and the employee was disciplined as a result of the finding. I have also investigated cases where an officer unknowingly provided false information, whether by mistake, omission, or due to a lack of training. These types of cases were often sent back to the officer's supervisor so that the supervisor could provide training to the officer, and would then be aware to look for improvement in the officer's reports. Often, performance reviews were used in order to document these issues and to note if the officer improved.

Regarding the withholding of exculpatory information, Officer Bower admitted in his deposition that he did receive exculpatory information regarding Mr. Anderson during the course of his investigation.

*Attorney: "Did you obtain from Computer Renaissance any information that you viewed to*

*be exculpatory information?"*

*Officer Bower: "Yes."*

*Attorney: "Okay, what was the exculpatory information?"*

*Officer Bower: "That he did bring his computer there and had it transferred to another computer and a new software installed on the computer, like they were saying. So just confirmation of what was told me."* [2]

Plaintiff also presents this claim on page 5 of his Responses to Defendant's First Set of Discovery Requests. Defense counsel asked him to explain further the exculpatory information that was withheld but he did not provide an explanation of the exculpatory information that Officer Bower withheld, so I cannot address this claim further.[3]

In my opinion, exculpatory information should generally be provided to the court when seeking a search warrant. It is important for the court to review the information in order to make a decision on granting the search warrant. Ideally, I would have liked to see this information included in the affidavit. I will not offer a legal opinion as to whether or not this invalidates the search warrant. In my professional police opinion, this would be a training issue for Officer Bower. I did not see an issue of dishonesty. As I wrote earlier, there is a big difference between knowingly providing false information and making mistakes. Failing to notify the court might fall toward the issue of making a mistake, which could be corrected by training. If it could be proven that an officer willfully provided false information in order for the court to grant a search warrant, this would be an honesty violation which would probably result in the officer being fired.

To conclude my opinions on Officer Bower providing false information, I did not see anything

---

[2] Depo Transcript – David Bower 07-11-2024, p. 57:
[3] Plaintiff's Responses to Defendant's First Set of Discovery Requests, p. 5: 1-17

in the reports or the search warrant affidavits to show that Officer Bower intentionally provided false information in his reports. In my opinion, he was doing his job as best he could. I believe that any false information was unintentional. I did not see any indication that he knowingly provided false information. He should have noted the information from Computer Renaissance in his affidavit.

2. Allegation: Officer Bower submitted factually impossible information.

   Opinion: Again, the plaintiff did not specify the factually impossible information that Officer Bower submitted. As I wrote in my initial report, Officer Bower submitted improper dates to the court in his search warrant affidavits that would have been factually impossible. In my opinion, these are scrivener's errors. Ideally, Officer Bower would have caught the discrepancies and corrected them prior to submitting the affidavits to the court. I do not see an indication of dishonesty or knowingly providing false information. Further, there is no other evidence to indicate that this is a regular pattern and practice of the Soldotna Police Department.

3. Allegation: Officer Bower failed to follow SPD policies and procedures and lacked appropriate supervision. Officer Bower inserted himself into a civil dispute and crafted it into a criminal event.

   Plaintiff wrote, "...the Soldotna Police Department and Officer David Bower maintain an unofficial custom whereby their police officers are permitted to conduct criminal investigations into matters that are civil disputes, and to have SPD take sides in said civil disputes. Officer Bower pursuant to this official policy and practice was authorized to obtain a search warrant through an affidavit which set out only a description of a civil dispute between businessmen under a specific business contract. Pursuant to said policy and practice, the search warrants were executed at Plaintiff's office without probable cause to believe that a crime had been committed. This official SPD policy directly caused the clear violation of US Constitution Amendment I and IV and the clear guidance of U.S.

Supreme Court and Ninth Circuit law." [4]

Defense Counsel asked the Plaintiff to describe the factual basis of this claim. Plaintiff stated, "Officer Bower failed to follow SPD policies and procedures and lacked appropriate supervision in conducting his investigation of Trident's retaliatory complaint against me." "Officer Bower involved himself in a civil dispute and crafted it into a criminal event." [5]

Opinion: I covered most of this allegation in my original report, summarized as follows:

Officer Bower is a law enforcement officer in the State of Alaska. Department policy allows him the authority to investigate possible criminal activity. He is allowed to make arrests. He should assist people who report criminal activity. He is sworn and authorized by the U.S. Constitution and the Constitution of the State of Alaska to investigate criminal activity and to seek search warrants. He does not have to prove the case beyond a reasonable doubt. He just needs probable cause. [6]

In my opinion, Officer Bower properly followed up on a report of intellectual property theft. This potential theft falls under an investigation of Alaska Statutes 11.46.100/120, Theft and Theft in the First Degree. I explained how the value determines the level of the crime and the elements of the crime. In my opinion, Officer Bower proceeded reasonably in his investigation of the possible theft committed by Mr. Anderson. There was no malfeasance for relying on the statements of victim Pack. I also explained the fluid description of probable cause and how it applied to Officer Bower, given the facts he was working with. I also explained that in my opinion, Officer Bower had enough facts to go on in order to establish the probable cause standard, and that his next step would be to write an affidavit in order to obtain a search warrant from the court. I saw no evidence that Officer Bower or the SPD used a criminal investigation in order to settle a civil dispute. I am aware of past criminal allegations made by victims against suspects who stole intellectual property. In my

---

[4] Complaint filed 05-23-2023 ECF, pp. 10-11, paragraph #35.
[5] Plaintiff's Responses to Defendant's First Set of Discovery Requests, p. 5: 7-12
[6] Expert Report of DT Sweeney Consulting, LLC dated 9/3/2024, pp. 20-24

DT Sweeney Consulting, Expert Report Addendum- *Martin Anderson v. City of Soldotna* **24 |** P a g e

Case 3:23-cv-00119-KFR    Document 46-42    Filed 06/20/25    Page 25 of 63

opinion, it is not for the officer on the street to decide these matters. Officer Bower behaved reasonably with his investigation. He followed proper training and investigatory guidelines. [7]

I did not find any policy violations committed by Officer Bower, as alleged by Plaintiff. Again, he might not have been as accurate as he should have been, but I did not see any evidence of knowingly making any false statements.

Finally, Plaintiff alleges that Officer Bower lacked proper supervision. He stated, "SPD take[s] sides in said civil disputes." I discussed this issue in my expert report. Officer Bower received concrete information from a credible victim for the crime of theft. He gathered the evidence and applied for a search warrant. Chief Meek said, "There was no intentional misconduct that was committed by Officer Bower." [8] Chief Meek also stated that SPD officers are not required to have any oversight or review by anyone in the department before submitting a search warrant. [9] Lt. Escott agreed with this in his deposition. [10] SPD follows both the Alaska and the U.S. Constitution. Neither constitution mentions that officers must seek a supervisor's approval before applying for a search warrant. Likewise, there is no mention of this supervisory requirement in the SPD Manual. [11] Chief Meek said that Officer Bower had the necessary training and experience to conduct this type of investigation. [12] Lt. Escott said that Officer Bower was the most qualified person in the department in computer forensics. [13]

In my opinion, which is reflected in my initial report, Officer Bower followed SPD policies and procedures and SPD provided him with appropriate supervision. He followed the evidence. I saw nothing that showed that he had a bias against the Plaintiff, or acted with unreasonable favoritism toward victim Pack. There were no other similar incidents either.

---

[7] *Id.,* at pp. 26-31, 34-35
[8] Meek deposition, p. 31:4-5
[9] *Id.,* at p. 32:19
[10] Escott deposition, pp. 27:25 – 28:5
[11] Meek deposition, p. 33:3-5
[12] *Id.,* pp. 35-37
[13] Escott deposition. P. 46:14-25

Plaintiff wrote, "Pursuant to said policy and practice, the search warrants were executed at Plaintiff's office without probable cause to believe that a crime had been committed. This official SPD policy directly caused the clear violation of US Constitution Amendment I and IV and the clear guidance of the U.S. Supreme Court and Ninth Circuit law." [14]

Opinion: As covered previously in the expert report, I went over the probable cause standard and how Officer Bower met this standard. The court agreed and issued the search warrant based on his affidavit. Again, he does not need to prove his case beyond a reasonable doubt. He just has to consider whether or not he has enough facts to meet the probable cause standard. After that, the court has to agree or disagree. I described this fluid, non-specific standard. In my opinion, Officer Bower met the probable cause standard. He behaved reasonably. [15]

4. Allegation: Officer Bower never documented the initial search of plaintiff's place of business. "Officer Bower and at least three other SPD officers arrived at my place of work and presented both search warrants to Megan Tolliver at the Precision NDT LLC office, searched my desk and removed items before returning them. Officer Bower never documented this search in his official report to the Kenai District Attorney's Office." [16]

Opinion: I do not see direct evidence of this search in the case file. If what the witness says is true about officers searching the desk, I would then agree with the Plaintiff that Officer Bower should have documented the searching the desk. At this point, I do not know if Officer Bower knew that this backing officer had searched the desk. If he did not know, I can see how Bower would leave this information out of his report.

While I agree with the plaintiff that this fact should have been reported if it happened as described, this does not mean that the SPD fails to train and supervise officers. When mistakes are made, it might be prudent to follow-up with officers in order to instruct them

---

[14] Complaint filed 05-23-2023 ECF, pp. 10-11, paragraph #35
[15] Expert report of DT Sweeney Consulting, LLC dated 9/3/2024, pp. 36-37
[16] Plaintiff's Responses to Defendant's First Set of Discovery Requests, p. 5: 12-15

on proper search warrant procedures. I do not see anything in the Plaintiff's complaint to indicate that this is a regular occurrence or that SPD supervisors fail to train subordinates. Plaintiff does not list any other evidence of this being a pattern and practice of the Soldotna Police Department.

# Interrogatory No. 2, Plaintiff's claim of violation of 42 USC § 1983 Amt. I- Retaliatory Search against Officer Bower.

Allegations: Plaintiff wrote that Officer Bower "... use the search warrant process motivated in whole or in part to chill Plaintiff from pursuing a Department of Labor Occupational Health and Safety (OSHA) complaint and IC3 Complaint against Trident and/or from using the courts to seek civil redress. Defendants, under color of State law, obtained and executed the search warrants to chill Plaintiff from pursuing his OSH and IC3 complaint and/or court actions. [17]

The Defense attorney asked Plaintiff to describe the factual basis of this complaint. The Plaintiff said, "Officer Bower had the responsibility to question Trident and its management as to if any existing complaints existed against them or any current civil legal events were in progress or if I had any current or pending actions against them. This would have been normal investigative procedures to establish whether any motive existed for the complaint by Trident." [18]

Opinion: I did not find any evidence that indicated that Officer Bower attempted to use the search warrant process to chill Plaintiff from filing any type of complaint. The attorney questioned Bower about this in his deposition. Bower said he heard about the complaint, and Lt. Escott questioned him about it. He eventually heard that there were no misconduct findings made against him. [19]

According to the records, the initial complaint from victim Pack was made to SPD on 4/26/2021. Bower visited Computer Renaissance on 4/27/2021. Bower investigated the case, and spoke to the DA's office, who told him to investigate it like any other criminal case. [20] The search warrants were

---

[17] Complaint filed 05-23-2023 ECF, p. 14, paragraphs #51 and 52
[18] Plaintiff's Responses to D's First Seat of Discovery Requests p. 14, paragraphs 51 and 52
[19] Bower Deposition, pp. 44:7 – 46:11
[20] *Id.,* at pp. 51:24 – 52:3

issued on 5/19/2021. Currently, I cannot find the date that SPD went to Precision NDT to serve the search warrant. I do know that on 6/1/2021, Mr. Anderson stopped by the department to turn over his laptop. Therefore, search warrant service occurred between 5/19/2021 and 6/1/2021. An email between Officer Bower and Russ Pack of Trident indicates that he will attempt to serve the search warrants on 5/25/2021. [21] On 6/2/2021, a forensic copy of the hard drive's 1,193 files was analyzed with Griffeye Analyze software. To conclude this paragraph, Officer Bower actively worked on this criminal investigation between 4/27/2021 and 6/2/2021. [22]

The records show that on 6/1/2021, Mr. Anderson filed a motion with the District/Superior Court State of Alaska Third Judicial District Kenai to suppress the two search warrants. [23]  The records show that Mr. Anderson initiated a complaint with the American Society of Nondestructive Testing, INC ("ASNT") on 6/14/2021. The Ethics Committee was unable to substantiate the allegation of misuse of training materials. The records show that Mr. Anderson initiated a complaint with the Alaska Police Standards Council against Officer Bower on 12/7/2021, after the search warrant service. [24] On 3/23/2023, Ms. Lesley Pacey wrote an email to Scott Hayes of Oregon Accreditation.org indicating that Martin Anderson filed an OSHA whistleblower complaint in April of 2021 when "...Trident Engineering filed a false police report for theft against Mr. Anderson with the Soldotna Police Department (SPD), which is accredited through the Oregon Accreditation Association." She said that the OSHA complaint came in 10 days before the Trident police complaint. Ms. Pacey requested an update on what OAA is doing to investigate SPD and Officer Bower's actions, as it appears that no investigation ever transpired. [25] On 3/31/2023, Scott Hayes wrote back to Lesley Hayes via email indicating that they do not conduct investigations of alleged wrong doing against an agency or its personnel. He suggested that Mr. Anderson file a complaint with the Soldotna Police Department. [26]

In my opinion, based on the evidence I reviewed, Mr. Anderson filed an OSHA complaint in April of

---

[21] COS 0001-1374, D's Initial Disclosure docs_Redacted, p. COS 0429
[22] Soldotna Police Department General Report Incident #SO21000745, pp. 1-2
[23] COS 0001-1374, D's Initial Disclosure docs_Redacted, pp. COS 0340-0373
[24] *Id.,* at, pp. COS 0042-0043
[25] Email from Lesley Pacey to Scott Hayes, dated 3/23/2023, pp. COS 0084-0085
[26] Email from Scott Hayes to Lesley Pacey. Dated 3/31/2023, p. COS 0086

2021, 10 days prior to the police investigation, which would be 4/16/2021. The SPD criminal complaint was made on 4/26/21. Officer Bower worked on this investigation between 4/27/2021 and 6/2/2021. Mr. Anderson filed the motion to suppress on 6/1/2021, the ASNT complaint on 6/14/21, and the complaint with Alaska Police Standards council on 12/7/21.

In my opinion, the OSHA complaint occurred before the search warrant service. I found no evidence that Officer Bower was ever aware of the OSHA complaint. OSHA complaints are civil matters and I have never heard of a police officer investigating an OSHA complaint other than a separate investigation during a catastrophic incident such as a crane collapse. In my opinion, there is no evidence that the search warrant service was used to silence Mr. Anderson regarding his OSHA complaint. All of the other complaints appear to have been made after the search warrant service, so there is no relationship there. Lastly, I disagree that Officer Bower had the responsibility to investigate all civil claims against Trident. Police officers do not enforce civil law.

# Interrogatory No. 3, Plaintiff's claim of violation of 42 USC § 1983, U.S. Constitution - Municipal Liability against the City of Soldotna.

Plaintiff noted in his complaint that Sgt. Brennan admitted in an email to Lt. Kant that he failed as a supervisor to properly review Ofc. Bower's report in this matter. Sgt. Brennan admitted the report was lacking and missing information and that he should have done a better job as a supervisor and expected more from those he supervised. [27] I searched COS 0001-1375, Ds' Initial Disclosure docs_Redacted, and found two emails involving Sgt. Brennan. On COS pages 139, 257, 480 and 598, there is the same email from Officer Swangel to Sgt. Brennan, informing him that he was going on leave so he wrote up what Russell Pack told him about the theft. On COS pages 142, 236, 237, 238, 239, 483, 577, 578, 579, and 580 there is the same email from Sgt. Brennan, assigning the case investigation to Ofc. Bower. I searched for Kant's name, and found it 146 times in COS 0001-1375, but did not find an admission from Sgt. Brennan to Lt. Kant that he had failed to properly review Bower's report.

Opinion: Even though I cannot find the information, what plaintiff is describing is not uncommon in policework, similar to what I tried to describe in the paragraph above. Sometimes, officers make mistakes while involved in policework. Sometimes, supervisors make mistakes in their supervisory duties. This does not mean that the department is a failure, or the officer is a failure, or the supervisor is a failure. Frankly, admitting that you have not done the best job is someone being honest in their self-assessment. In my experience, being honest and knowing about the need for improvement is where a supervisor can take steps forward into becoming a better supervisor. It also helps that the supervisor recognizes that the police officer came up short. When a supervisor expects more from a police officer, this can help them scrutinize work more thoroughly. It can also help the supervisor look for opportunities in which to provide training to the staff they supervise.

---

[27] Plaintiff Anderson Responses to First Set of Discovery Requests.2025.02.20, p. 6, response #3

# Interrogatory No. 4, Plaintiff's claim of official policies, practices or customs of the City that resulted in constitutional injury.

Defendant asked Plaintiff to "...describe with particularity the official policy, or practice, or custom of the City that you content directly resulted in your constitutional injury." [28]

Plaintiff replied with the following 11 policies, practices and customs. [29] I will follow each allegation with my opinions regarding that allegation.

1. <u>Allegation:</u> Engaging the SPD/City in civil matters through criminal investigations and search warrants.

   <u>Opinion:</u> This was thoroughly covered in my initial expert report. I outlined the legal and policy authorization granted to Officer Bower (and SPD) to enforce the law [30], legal requirements for a search warrant [31], and proper procedures to obtain and execute a search warrant. [32] I then examined codified language from the State of Alaska regarding Theft. [33] Finally, I opined that Officer Bower met the probable cause standard for Theft, which he needed in order to write the affidavit for the search warrants. [34]

   In my opinion, SPD received an allegation of criminal activity and investigated the allegation as required by Department Policy, authorized by the powers granted to the City of Soldotna through the Alaska Constitution and the U.S. Constitution. Officer Bower followed

---

[28] Plaintiff Anderson Responses to First Seat of Discovery Requests.2025.02.20, p. 7, interrogatory #4
[29] *Id.,* at pp. 7-8
[30] Expert report of DT Sweeney Consulting, LLC dated 9/3/2024, pp. 20-22
[31] *Id.,* at pp. 23-24
[32] *Id.,* at pp. 25-27
[33] *Id.,* at pp. 27-29
[34] *Id.,* at pp. 29-34

departmental policy, met the probable cause standard, and this was reinforced by the court who granted him two search warrants based on his affidavit. Plaintiff believes that this was a civil dispute. This does not matter. The officer received a criminal complaint, investigated, developed probable cause, and wrote an affidavit for a search warrant which was granted by the Court. Plaintiff's belief that this was a civil matter does not negate the facts of the case. This was simply a case of a police officer doing his job.

2. Allegation: "Inadequate supervision of officers, sergeants, and lieutenants."

Opinion: Plaintiff did not provide any evidence that SPD officers, sergeants, and lieutenants are inadequately supervised. The only similar allegation plaintiff brought up previously by plaintiff was his belief that Officer Bower was required to obtain supervisory approval for his search warrant affidavit. I previously addressed Sgt. Brennan's email regarding Bower's report needing better review.

As I wrote in my initial expert report [35], SPD officers are not required to gather a sergeant's approval when applying for a search warrant. This was supported by Officer Bower, Lt. Escott [36], and Chief Meek. In addition, I did not see supervisory approval mentioned in the Constitution of the State of Alaska or in the U.S. Constitution. In my opinion, Officer Bower and the SPD met the constitutional guidelines established when Officer Bower wrote his affidavit and applied for the search warrant. This is why the court approval is a necessary step before an SPD officer can enter a home or business and conduct a search.

I previously covered Sgt. Brennan being honest in his wish that he had examined Bower's reports closer prior to approving them. This is a normal course of action in police departments and I commend him for his insightfulness. This is not misconduct.

---

[35] *Id.,* at pp. 34-35
[36] Stace Escott 03-25-2024 deposition, p. 30:1-5

3. <u>Allegation</u>: "Lack of adherence to established written policies by City officials, particularly in administrative investigations."

<u>Opinion:</u> Plaintiff provided one example of "lack of adherence" which was not adhering to policy when conducting administrative investigations. In my opinion, the evidence shows that SPD conducted an administrative investigation of Officer Bower.

*Attorney: "Now at some point, did it come to your attention that Mr. Anderson, or people on Mr. Anderson's behalf, were, wanted to complain about that whole process?"*

*Officer Bower: "It did come to my attention."*

*Attorney: "And how did it come to your attention?"*

*Officer Bower: "I believe the first one was by one of my supervisors that had went through the – Mr. Anderson had went to the state level and complained that or made a complaint there, so they launched an administrative investigation. So that was my first knowledge of it, was being interviewed for that."*

*Attorney: "Okay. And who interviewed you?"*

*Officer Bower: "Lieutenant Escott."*

*Attorney: "Okay. So as I understand the process, and correct me if I'm wrong, is that Mr. Anderson made a complaint to an authorized body that receives those complaints over alleged police misconduct. That investigation was then assigned to SPD, who gave it to Lieutenant Escott, who then began an investigation; is that your understanding?"*

*Officer Bower: "Yes, sir."*

*Attorney: Okay. And he asked you questions and you just told him what you knew?"*

*Officer Bower: "Yes, sir."*

*Attorney: Did he ask you questions roughly similar to what I asked you today?*

*Officer Bower: "Yes, it was pretty much just like this."*

*Attorney: Okay. All right. And then did you hear anything more about that complaint?"*

*Officer Bower: "No."*

*Attorney: "Okay. Well did somebody tell you at some point the complaint had been disposed of and no findings of misconduct have been made against you?"*

*Officer Bower: "That's correct."*

The attorney went on to ask him about Mr. Anderson filing more complaints, and filing a complaint in federal court. The attorney asked Officer Bower if he was aware of any previous legal complaint brought by aggrieved citizens or aggrieved defendants, but Officer Bower was unaware of any other complaints. [37]

Lt. Escott confirmed that he had been assigned to complete the administrative investigation. He said, "That's an administrative investigation. That's what this is, administrative investigation. Did our officer violate policies? Did he do as the complaint suggests?" [38] He went on to say that he compared Officer Bower's conduct to departmental policy. He interviewed Officer Bower and the District Attorney. Ultimately, Escott concluded that Officer Bower did not violate search warrant policy, so the complaint was not sustained. There was no violation. [39]

---

[37] Depo Transcript – David Bower 07-11-2024, pp. 44:7 – 47:5
[38] Stace Escott 03-25-2024 deposition, pp. 33:9-13
[39] *Id.,* at pp. 33:14 – 37:21

City manager Queen confirmed that the city performed an administrative investigation of Officer's Bower's conduct. She was briefed by Lt. Kant, who informed her that their investigation did not discover any actions that would have warranted disciplinary action. She also reported that the APSC investigation covered whether or not Officer Bower was an officer who was eligible to continue as an officer. As a result of that investigation, Soldotna did not find any grounds to be concerned about the officer's status to be an officer. She said that investigations happen fairly regularly and a senior sergeant or lieutenant in the department would gather information relevant to the complaint. This involved interviewing employees, documentation, and discussion with the department head regarding standard operating procedures and employee conduct. This is a fact-finding effort to document and verify if the complaint had merit and was warranted. [40]

Without seeing the full investigation, I cannot comment further on the quality of the administrative investigation. However, I do have evidence that an investigation was completed.

4. <u>Allegation</u>: The City has a policy, practice, custom, and procedure to suppress exculpatory evidence.

   <u>Opinion</u>: I covered this previously under A1 above. I have nothing else to add.

5. <u>Allegation</u>: City permits false statements to be included in official SPD documents.

   <u>Opinion</u>: I covered this previously under A1 and A2 above. I have nothing else to add.

6. <u>Allegation</u>: City has a policy, practice, custom, and procedure of failing to rectify false statements or incorporate exculpatory evidence when aware of them.

---

[40] *Id.,* at pp. 18:14 – 19:23

Opinion: I covered this previously under A1 and A2 above. I have nothing else to add.


7. Allegation: City is non-compliant with approved reporting procedures.

    Opinion: Without more specific information, I cannot provide further opinion. As previously discussed above, in my opinion, SPD received a report of theft from a credible witness. Officer Bower followed up on the report of theft with an investigation. Ultimately, he believed he developed probable cause for the crime of theft by Mr. Anderson. He wrote an affidavit for a search warrant and the search warrants were granted by the court. In my opinion, he followed proper reporting procedures.

    As I wrote in A3 above, "Officer Bower is a law enforcement officer in the State of Alaska. Department policy allows him the authority to investigate possible criminal activity. He is allowed to make arrests. He should assist people who report criminal activity. He is sworn and authorized by the U.S. Constitution and the Constitution of the State of Alaska to investigate criminal activity and to seek search warrants. He does not have to prove the case beyond a reasonable doubt. He just needs probable cause. [41]


8. Allegation: The City Manager has insufficient knowledge regarding SPD policies and procedures, leading to inadequate oversight of the SPD.

    Opinion: I read the deposition of City Manager Stephanie Queen. Ms. Queen was formerly the City Manager for the City of Soldotna, Alaska from 2017 to 2023, covering the period of the theft investigation in question. She said, "So the city council and the mayor are the legislative body. They set policy, and the city manager is hired to run the day-to-day operations of the city. And that's done through several different departments, most of which have a department head, who is essentially the manager or supervisor of that department.

---

[41] Expert Report of DT Sweeney Consulting, LLC dated 9/3/2024, pp. 20-24

They all report to the City manager, who oversees the staff of the city." [42]

Ms. Queen went on to say that the police chief sets policies and procedures for their own department, while the city manager sets policies and procedures that apply citywide. [43]

Plaintiff's attorney went on to ask Ms. Queen about who sets police department policies and procedures for training and supervision of police personnel and search warrants. Ms. Queen said that the Chief of Police would oversee all of the staff within the police department in regards to compliance with SPD policies. [44]

In my opinion, based on my police training and experience, as well as what I learned while completing my Master's in Public Policy, Ms. Queen is correct and SPD is correctly following the city manager method of city governance. It is not required that the city manager writes, develops, trains and administers every policy for every department in the City. This would be unwieldly and too difficult for one person. The idea of a city manager form of governance is that the city manager will oversee individual department heads who write, develop, train and administer policies which are specific to their department. The city manager is more suited to writing, developing, training and administering citywide policies which are applicable to all employees, not just police employees. The Chief of Police is one of the department heads, responsible for writing, developing, training and administering SPD policies and procedures.

In my opinion, it is not required that the city manager knows every policy and procedure for every individual department for the City of Soldotna. This is not advised, nor feasible. In my opinion, this is why the city manager appointed a police chief. It is the chief's responsibility to write, develop, train and administer SPD policies and procedures.

---

[42] Depo Transcript – Stephanie Queen 02-13-2025, pp. 10:18 – 11:1
[43] *Id.,* at 13:4-9
[44] *Id.,* at 13:22 – 14:12

9. <u>Allegation:</u> SPD is non-adherent to law enforcement best practices, SPD's own accreditation standards, and the state oath taken by officers.

   <u>Opinion:</u> I did not see evidence that SPD is non-adherent to law enforcement best practices, SPD's own accreditation standards, and the state oath taken by officers. In my opinion, the SPD is made up of employees who are human and make mistakes. This is the same for any police department in this country. It is impossible for SPD or any police department to hire perfect police officer candidates. It is impossible to expect perfection from SPD employees. Mistakes will be made. Officer Bower made mistakes in his affidavit. However, I did not see any evidence of misconduct, intentionally lying or using false information, or any bias. Officer Bower properly investigated this theft complaint. He gathered evidence and developed probable cause. He is authorized to write and obtain search warrants by submitting an affidavit of probable cause to the Court, who granted his search warrants. These best practice standards are applicable to any police department sworn to uphold the Constitution of the United States.

   Plaintiff did not specify how SPD violated their own accreditation standards or the state oath taken by officers, so I cannot comment further. I can say that I did not see any egregious or intentional violation of law enforcement best practices and/or accreditation standards common to law enforcement agencies in the U.S., or the state oath of Alaska.

10. <u>Allegation:</u> There was an evasion of accountability and suppress of SPD misconduct and illegal activities under the guise of authority.

    <u>Opinion:</u> SPD properly received a theft report from a victim. Officer Bower investigated this complaint. Officer Bower involved the DA's office for advice in the investigation of Mr. Anderson. Officer Bower wrote an affidavit of probable cause and then involved the court for the granting of the search warrants. In my opinion, SPD and Officer Bower did not make any attempts to evade accountability in this investigation.

    When notified of any administrative investigation for this case, the City of Soldotna

complied with the investigating authorities. I did not see any attempt to evade accountability for their actions.

Lastly, in my opinion, there were no illegal activities committed by any member of the SPD under the guise of authority. Again, SPD properly received a theft report from a victim. Officer Bower investigated this complaint. Officer Bower involved the DA's office in the investigation of Mr. Anderson. Officer Bower wrote an affidavit of probable cause and then involved the court for the granting of the search warrants. These are not illegal activities. Officer Bower and the SPD complied with the U.S. Constitution and the Constitution of the State of Alaska.

11. <u>Allegation:</u> SPD engages in, and ratifies conduct by SPD officers that gives the appearance of violating laws such as Tampering with Public Records; False Information or Report; Official Misconduct; Perjury (Alaska); Deprivation of Rights Under Color of Law; False Statements; Destruction, alteration, or Falsification of Records in Federal Investigations; and Perjury (Federal).

In my opinion, I found no evidence that SPD officers violated any of the following laws:

a. <u>AS 11.56.610 - Tampering with Public Records:</u>
Definition: [45]
(a) A person commits the crime of tampering with physical evidence if the person
(1) destroys, mutilates, alters, suppresses, conceals, or removes physical evidence with intent to impair its verity or availability in an official proceeding or a criminal investigation;
(2) makes, presents, or uses physical evidence, knowing it to be false, with intent to mislead a juror who is engaged in an official proceeding or a public servant who is engaged in an official proceeding or a criminal investigation;

---

[45] 2024 Alaska Statute 11.56.610, accessed 4/29/2025 from: https://law.justia.com/codes/alaska/title-11/chapter-56/article-4/section-11-56-610/

(3) prevents the production of physical evidence in an official proceeding or a criminal investigation by the use of force, threat, or deception against anyone; or

(4) does any act described by (1), (2), or (3) of this subsection with intent to prevent the institution of an official proceeding.

(b) Tampering with physical evidence is a class C felony.

In my opinion, Mr. Anderson did not provide any evidence that any SPD member tampered with public records or evidence. Any evidence in this case was obtained voluntarily (evidential records obtained from Trident; Mr. Anderson's laptop) or through a search warrant granted by the Court (the unknown officer who searched the desk, picked up something, then put it back). In my opinion, no SPD employee violated this law, nor did the DA see fit to charge any SPD employee with violation of this law.

b. <u>AS 11.56.800 - False Information or Report</u>

Definition: [46]

(a) A person commits the crime of false information or report if the person knowingly

(1) gives false information to a peace officer

(A) with the intent of implicating another in an offense; or

(B) concerning the person's identity while the person is

(i) under arrest, detention, or investigation for a crime; or

(ii) being served with an arrest warrant or being issued a citation;

(2) makes a false report to a peace officer that a crime has occurred or is about to occur;

(3) makes a false report or gives a false alarm, under circumstances not amounting to terroristic threatening in the second degree under AS 11.56.810, that a fire or other incident dangerous to life or property calling for an emergency response has occurred or is about to occur;

---

[46] 2024 Alaska Statute 11.56.800, retrieved 4/29/2025 from: https://law.justia.com/codes/alaska/title-11/chapter-56/article-5/section-11-56-800/

(4) makes a false report to the Department of Natural Resources under AS 46.17 concerning the condition of a dam or reservoir; or

(5) gives false information to a public employee relating to a person's eligibility for a permanent fund dividend under AS 43.23 and the false information does not also violate AS 11.56.205.

(b) False information or report is a class A misdemeanor.

The Plaintiff made allegations that Officer Bower relied on false information provided by Mr. Pack and Mr. Hall when they reported the crime of theft to SPD.

In my opinion, I did not see any information that came from Trident that Officer Bower should have known was false information. I did not see information which would lead me to believe that Mr. Pack or Mr. Hall should have been arrested for providing false information. Officer Bower relied on the victim's statement and the evidence provided in order to conduct his own investigation. Ultimately, his investigation led him to develop probable cause for the crime of theft. He conferred with the DA's office, then used a probable cause affidavit to

c. AS 11.56.850 - Official Misconduct

Definition: [47]

(a) A public servant commits the crime of official misconduct if, with intent to obtain a benefit or to injure or deprive another person of a benefit, the public servant

(1) performs an act relating to the public servant's office but constituting an unauthorized exercise of the public servant's official functions, knowing that that act is unauthorized; or

(2) knowingly refrains from performing a duty which is imposed upon the public servant by law or is clearly inherent in the nature of the public servant's office.

---

[47] 2023 Alaska Statute 11.56.850, accessed 4/29/2025 from: https://law.justia.com/codes/alaska/2023/title-11/chapter-56/article-6/section-11-56-850/

(b) Official misconduct is a class A misdemeanor.

In my opinion, the Plaintiff did not provide any evidence that any SPD employee engaged in official misconduct. I will agree that mistakes on the affidavit were made by Officer Bower. However, I found no evidence that Officer Bower attempted to obtain any type of benefit. I found no evidence that Officer Bower attempted to deprive another person of any type of benefit. Officer Bower received credible information from a crime victim. He investigated the potential crime, and developed probable cause for the crime of theft. He consulted with the District Attorney. He wrote an affidavit to the court in order to obtain a search warrant. The court reviewed his affidavit and granted him two search warrants. In my opinion, Officer Bower attempted to fulfill the department's mission of helping victims of crime. There was nothing he gained from the investigation other than the satisfaction of doing his job. He had no bias toward Mr. Anderson. He did not attempt to deprive Mr. Anderson of any type of benefit. In my opinion, Officer Bower was the opposite of misconduct as described in 11.56.850(2) above. He **did not refrain** from performing a duty which is imposed upon the public servant; namely, the proper investigation of a crime reported by a citizen.

d. <u>AS 11.56.200 - Perjury (if false statements were made under oath)</u>

Definition: [48]

(a) A person commits the crime of perjury if the person makes a false sworn statement which the person does not believe to be true.

(b) In a prosecution under this section, it is not a defense that

(1) the statement was inadmissible under the rules of evidence; or

(2) the oath or affirmation was taken or administered in an irregular manner.

(c) Perjury is a class B felony.

In my opinion, the Plaintiff did not specify where any SPD employee committed

---

[48] 2024 Alaska Statute 11.56.200, accessed 4/29/2025 from: https://law.justia.com/codes/alaska/title-11/chapter-56/article-2/section-11-56-200/

perjury, or the perjured statement. In my opinion, I did not see anything in the police reports or the depositions taken of SPD employees which appeared to be perjury. Again, I have discussed mistakes made by Officer Bower in his affidavit for the search warrants. However, in my opinion, these were simple errors that he made and should have caught to be corrected. These were not statements which indicated lying under oath, or knowingly making false statements. I previously opined about the allegation of making false statements under section A(1) above. I have nothing more to add.

e. <u>18 U.S.C. § 242 - Deprivation of Rights Under Color of Law.</u>

This is for the Defendant's attorney to argue. In my opinion, I did not see any instance where Officer Bower denied Mr. Anderson's rights. He investigated a potential crime, and developed probable cause for the crime of theft. He then applied for a search warrant in order to obtain the laptop computer.

f. <u>18 U.S.C. § 1001 - False Statements</u>

I previously opined about the allegation of making false statements under section A(1) above. I have nothing more to add.

g. <u>18 U.S.C. § 1519 - Destruction, Alteration, or Falsification of Records in Federal Investigations</u>

In my opinion, plaintiff did not provide specific information or evidence to show where anyone from the City of Soldotna destroyed, altered, or falsified records in a federal investigation. I have nothing more to add.

h. <u>8 U.S.C. § 1621 - Perjury (if false statements were made under oath)</u>

In my opinion, the Plaintiff did not specify where any SPD employee committed

perjury, or the perjured statement. In my opinion, I did not see anything in the police reports or the depositions taken of SPD employees which appeared to be perjury. Again, I have discussed mistakes made by Officer Bower in his affidavit for the search warrants. However, in my opinion, these were simple errors that he made and should have caught to be corrected. These were not statements which indicated lying under oath, or knowingly making false statements. I previously opined about the allegation of making false statements under section A(1) above. I have nothing more to add.

# Interrogatory No. 5, Plaintiff's claim of inadequacies in police training provided by the City that resulted in constitutional injury

1. <u>Allegation:</u> Plaintiff said that Officer Bower did not have the understanding of Non-destructive testing, mechanical inspection or computer forensics to the level needed to determine a crime was committed (probable cause). Ofc. Bower should have used AST or other SME to determine probable cause.

   <u>Opinion</u>: it is common for police officers to be involved in criminal investigations where they might not be a subject matter expert. This case is a prime example of this opinion. I agree with plaintiff that Officer Bower did not possess the scientific knowledge described above. In his deposition, Officer Bower admitted he had no familiarity with digital information about business operations and training. He had no knowledge or experience with non-destructive testing in the petrochemical industry. He did not contact anybody or try to access resources of anyone who could explain these concepts to him other than the alleged victim. [49]

   Plaintiff's attorney suggested to Officer Bower that he did not contact anyone regarding the rules about intellectual property. Officer Bower disagreed with that statement. He said that he consulted with the District Attorney. The DA explained what intellectual property was, and told Officer Bower to treat this case like a theft case. Officer Bower said that it was difficult to deal with this case because he was looking for property he was not familiar with. He said he did the best he could. He said he handled everything in accordance with SPD policies and procedures and no one ever told him that he had violated any policies or procedures. [50]

---

[49] Depo Transcript – Dovid Bower 07/11/2024, p. 35:1-16
[50] *Id.,* at pp. 34:17 – 35:8

In my opinion, it was not necessary for Officer Bower to have a full understanding of Non-destructive testing, mechanical inspection or computer forensics in order to conduct this investigation. I noted a training file for Officer Bower kept in Guardian Tracking. This document showed that Officer Bower received training in Legal / forensic updates from attendees of the National ICAC Conference; An update on the ongoing Apple v. Department of Justice iPhone litigation; Standard forensic reports / best practices; Some things to consider in search warrant affidavits; Discovery best practices; Cross-designation of law enforcement; and Updates about ongoing issues/operations/cases. [51]  In my opinion, this type of training would provide Officer Bower with some background knowledge about computer search and seizure. Lt. Escott stated in his deposition that Officer Bower was the most qualified person in the department in computer forensics. [52]  I would not expect a police officer to have the knowledge that plaintiff is asking for in this case. In my opinion, this is why an officer is held to the probable cause standard. Officer Bower knew obtained enough information that he felt he met this standard. The only thing he was lacking was the actual evidence itself, which he expected the hard drive of the laptop to hold. This is exactly why he sought the search warrant. The court agreed that he met the probable cause standard and that the laptop could be seized, so the search warrant was granted.

After Mr. Anderson delivered the laptop to SPD, Officer Bower sought another search warrant for the contents of the laptop. He then used his training and department software to remove the hard drive from the computer, make a forensic copy of the hard drive and then work off of the forensic copy. This way, he knew that nothing could be altered on the hard drive. He created a forensic image of the hard drive and stored the data on a thumb drive. [53]

In my opinion, the DA or SPD could have sought outside computer expertise if the DA wanted to move forward with prosecution in this case. It was not necessary for Officer Bower to be that expert. He was required to follow his training, and department policies and procedures. In my opinion, he did just that.

---

[51] COS 2035, Training_for_David_Bower, p. 1
[52] Escott depo., p. 46:14-25
[53] Depo Transcript – David Bower 07-11-2024, pp. 37:6 – 39:25

2. <u>Allegation:</u> SPD failed to follow several policies and procedures, due to a lack of training/auditing or willfully ignoring them.

   <u>Opinion:</u> There is no such thing as a perfect police officer, nor are there any perfect police departments.  In my opinion, I did not see evidence that SPD is blatantly non-adherent to their policies and procedures. In my opinion, the SPD is made up of employees who are human and make mistakes. This is the same for any police department in this country. It is impossible for SPD or any police department to hire perfect police officer candidates. It is impossible to expect perfection from SPD employees. Mistakes will be made. Without knowing specific policies that SPD violated, I cannot address each individual policy. In general terms, when policies and procedures are violated, it is up to the supervisors to correct employees, and to provide training in proper adherence to department policies and procedures. When there is intentional misconduct, or police behavior which results in harm to others, the department should investigate these incidents. If sustained, there may be a need for training and/or discipline in order to correct behavior.

3. <u>Allegation:</u> Sgt. Brennan admitted he accepted reports from Ofc. Bower that should never have been approved. This showed either a lack of training on the part of Bower and Brennan or a reckless disregard for established policies and procedures.

   <u>Opinion:</u> I addressed this issue in Interrogatory #3 on page 30. I have nothing more to add.

4. <u>Allegation:</u> Lt. Escott did not follow the procedures for Administrative Investigations. He either lacked training in the procedures or he willfully and recklessly ignored the established procedures.

   <u>Opinion:</u> I covered this in Interrogatory #4 section #3 on page 33. There was an administrative investigation conducted by Lt. Escott. I currently do not possess the actual

investigation, so I will not comment further than what I wrote previously.

5. <u>Allegation:</u> Ofc. Bower sent evidence against him to external personal email.

   <u>Opinion:</u> I have no further opinion on this issue without more evidence.

6. <u>Allegation:</u> Ofc. Bower received confidential documents from his wife and SPD police clerk Samantha Bower.

   <u>Opinion:</u> I have no further opinion on this issue without more evidence.

# Interrogatory No. 6, Plaintiff's claim that The City of Soldotna has exhibited deliberate indifference to searches without probable cause

<u>Allegation:</u> Plaintiff gave details from three previous cases of improper search and seizure:

1. In 2004, two officers arrested an individual without probable cause. The Alaska Court of Appeals overturned the conviction, citing SPD's failure to adhere to constitutional standards during the incident.

2. In 2004, an officer falsified evidence and lied during an administrative investigation. The officer was terminated and police officer certification was revoked.

3. An officer engaged in multiple incidents of misconduct, including excessive force and arrests without probable cause. Despite receiving at least three disciplinary actions, the officer was rehired after termination. (Dates were not provided).

<u>Opinion:</u> Although I have no further details on these three cases, I do have some general observations:

1. Two of the cases were nearly two decades before the incident involving Officer Bower. This does not compel a belief from me that these cases show a link between the actions of the officers in 2004 and any allegations made against Officer Bower from 2021.

2. I do not have the dates of misconduct for the officer involved in #3. However, I do see that there was a termination involved. I have seen cases where the Chief or Sheriff has reviewed a misconduct case and issued a letter of termination, only to be overruled by outside forces

such as mediation, arbitration, civil service, union grievances, etc. This case does not necessarily mean that SPD follows a pattern and practice of showing indifference to searches and seizures without probable cause. It does show that the City of Soldotna holds police officers accountable for their actions, which is an encouraging sign of a well-functioning department.

3. I also see that the officer in #2 was terminated and police certification was revoked. This is the way that a well-run disciplinary system should work. Again, police officers are not perfect and there are no perfect police departments. I am encouraged that the City of Soldotna holds police officers accountable for their actions.

4. Regarding case #1, in my experience, it is not uncommon for a state court of appeals to overturn a conviction. The court of appeals may have cited SPD's failure to adhere to constitutional standards during the incident. This is the system of checks and balances set up between the Executive Branch, Judicial Branch and the Legislative Branch of government. In my opinion, this does not mean that SPD continually violates search and seizure. In my opinion, it is easier to use the court's 20/20 hindsight to determine proper course of action than it might be for the officer directly involved in police action taken in the moment.

5. Three incidents in nearly two decades show me that the SPD runs a tight ship, with well-functioning officers and supervisors, executive leadership, and a well-functioning disciplinary system.

# Summary and Conclusion

In this expert report addendum, I have examined the plaintiff's claims of police misconduct, lack of training, and failure to follow policies and procedures. Where relevant, I have pointed out where I believe that the City of Soldotna could improve police department administrative and operational effectiveness. Overall, those instances are relatively rare. It is much more common that Officer Bower and SPD behaved properly during his investigation of the theft reported by Mr. Pack and Mr. Hall, and during the administrative follow-up to plaintiff's complaints. In my opinion, based on the evidence I reviewed, the SPD is a well-run department. It is not without its mistakes, but no department functions with 100% efficiency and effectiveness 100% of the time. I did not see a pattern and practice or departmental customs to indicate any kind of deliberate misconduct or repeated violation of civil rights.

My original report and opinions still stand.

_____          May 1, 2025_____

David T. Sweeney                                                          Date

DT Sweeney Consulting, LLC

# David T. Sweeney

## Expert Witness & Consultant



206.883.6238 david@policeexpert.com
https://PoliceExpert.com
4616 25th Ave. NE Ste. #116 Seattle, WA 98105

## Professional Profile

34-year veteran police leader with a mission to improve best practices in policing by offering expert witness and police consultation services for both plaintiff and defense.

## Core Skills

| | |
|---|---|
| • Use of Force | • De-Escalation |
| • Crowd Control | • Legal Standards |
| • Pursuits | • SWAT |
| • Human Resources | • EEO |
| • Training | • Less Lethal |

## Career Summary

**Sep 2017 - Present DT Sweeney Consulting, LLC, Seattle, WA**
**Expert Witness**

*Outline*

Expert witness/consultant on policing issues including pursuits, training, SWAT, use of force, early intervention, liability, complaints, EEO, human resources, performance reviews, etc. I have assisted attorneys 41 different times which included 16 defense cases and 25 plaintiff cases. I have been deposed 8 times and testified once at trial. In my police career, I testified in trial approximately 100 times.

*Key Responsibilities*
- I assist attorneys with expert witness reports, consultation, evidence and case review and deposition/trial testimony.
- I enjoy using my expertise to assist both plaintiff's attorneys and defense attorneys.
- I provide a review of the facts, including both strengths and weaknesses of the case.

**May 2022 - Present Northwestern University, Evanston, Illinois**
**Adjunct Faculty**

*Outline*

Faculty, Northwestern University School of Police Staff and Command. I teach a variety of police executive disciplines to police leaders from across the U.S. Topics include Training, Employee Relations, Leadership, Decision-making, Performance Appraisals, Media Relations, Public Speaking, etc.

**Feb 2021 - Feb 2022 Oregon State University Police Department, Corvallis, Oregon**
**Lieutenant**

*Outline*

2nd in command, overseeing sergeants, officers and public safety officers as we developed a brand-new police department to serve the students, faculty and staff at Oregon State University. I supervised and trained all employees in all areas of policing, force, procedures, etc. I helped build a sense of community between the university and their police department.

**Feb 2005 - Feb 2022 King County ADR and Oregon Federal Executive Board, Seattle,**
**WA and Corvallis, OR**
**Mediator**

*Outline*

Trained mediator, specializing in conflict resolution in the workplace.

*Key Responsibilities*
- Mediator for workplace conflict, landlord/tenant issues, labor conflict and human resources complaints.
- Assisted employees with conflict resolution.
- Identify differences and similarities in power structure, race, sex and equality in the workplace in order to promote communication and cooperation.

*Key Achievements*
- Led employees in conflict resolution in order to heal relationships and increase work productivity.
- Provided a sounding board for employees and made outside referrals when appropriate.

**Aug 2019 - Feb 2021 Seattle Police Department North Precinct, Seattle, WA**
**Watch Commander**

*Outline*

Supervised 8 sergeants and 60 officers. I was responsible for all patrol activities of my personnel in the SPD North Precinct, a community of 235,000 people. I coordinated and directed staff during routine and emergency responses. I conducted use of force, collision, complaint and pursuit reviews for my staff.

**Feb 2005 - Feb 2021 Seattle Police Department, Seattle, WA**
**Training Cadre**

*Outline*

I have trained thousands of SPD employees from all ranks in the following disciplines: Equal Employment Opportunity (EEO), Performance Reviews, Early Intervention for Police Officers and Supervisors, Supervision of Police Personnel, Tactical De-Escalation, Care Under Fire, Integrated Tactics, Use of Force, Active Shooter/Rapid-Intervention, Crisis Intervention, Post-Academy Training for New Officers, Taser Instructor, CPR, Emergency Vehicle Operations Course, & Legal Standards for police.

*Key Achievements*
- I have trained and/or demonstrated training tactics to personnel from the Department of Justice as well as other local and federal police departments in Crisis Intervention, Tactical De-escalation and Use of Force.

**May 2016 - Jul 2019 Seattle Police Department East Precinct, Seattle, WA**
**Force Investigations Lieutenant**

*Outline*

Responsible for analysis of officer's use force during arrests. I gathered evidence from reports, statements, photos, recordings, and in-car video (ICV). I evaluated the officer's legal authority and lawful purpose when detaining suspects. I formed opinions on whether or not the officer made proper efforts at de-escalation prior to use of force.

*Key Responsibilities*
- Precinct Compliance Lieutenant, responsible for employee training attendance and records.
- I received specialized force review training approved by the U. S. Department of Justice.

**May 2015 - Apr 2016 Seattle Police Department North Precinct, Seattle, WA**
**Operations Lieutenant**

*Outline*

Responsible for reviewing use of force, pursuits, collisions, and misconduct investigations. Supervised the Community Police Team (CPT) and the Anti-Crime Team (ACT). Served as Acting Captain, in charge of the precinct. Responded to unusual occurrences in the precinct.

*Key Responsibilities*
- Delivered both written and oral communication in SeaStat, SPD's community crime reduction through data-driven policing.
- Spoke to community members and groups about North Precinct police activities.
- Responsible for staffing the precinct's 3 patrol shifts.

*Key Achievements*
- Reduced precinct budget expenditures through reduction of overtime and identifying extraneous activity.
- Reduced crime through analysis of criminal activity trends and deployment of key personnel to precinct hot spots.

**Jan 2015 - Apr 2016 Seattle Police Department North Precinct, Seattle, WA**
**Patrol Sergeant**

*Outline*

Responsible for squad's response to 911 emergency and routine calls (assault, robbery, theft, burglary, alarms, collisions, etc.).

*Key Responsibilities*
- Analyzed and reviewed use of force by officers in the field.
- Guided, directed, motivated and trained a patrol squad of 6 – 12 officers.

**Aug 2010 - Jan 2014 Seattle Police Department, Seattle, WA**
**SWAT Sergeant**

*Outline*

Responsible for tactical response to hostage situations, barricaded persons, high-risk search warrants, riot control, and other high-risk 911 calls.

*Key Responsibilities*
- Dignitary protection.
- Supervised 6-24 officers during full-team callouts to high profile incidents.
- Led a group of subject matter experts and published the SPD SWAT Manual.
- Created a tracking database for all SWAT callouts, training, and qualifications.
- Provided administrative response to public disclosure requests.

**Jan 2005 - Jul 2010 Seattle Police Department, Seattle, WA**
**Detective Sergeant - Human Resources**

*Outline*

Equal Employment Opportunity (EEO) investigator, Early Intervention Coordinator, Performance Review Coordinator.

*Key Responsibilities*
- Investigated complaints of misconduct, harassment, and/or hostile work environment based on race, creed, color, national origin, age, sexual orientation, etc.
- Handled a high caseload, investigating with care and confidentiality.
- Advised the Chief and other high-ranking administration on investigations, key data, and recommendations on how to improve the workplace for employees.
- Attended 300 hours of training. Completed 60 EEO investigations.

- System administrator and analyst for On-Target Performance Tracking System.
- Trained department supervisors on proper methods of creating performance reviews for employees.

*Key Achievements*
- Trained all new employees and department supervisors in EEO law, issues, and on how to keep SPD a safe place for all employees to work.
- Implemented a brand new program within SPD designed to identify and assist officers potentially involved in at-risk behavior in their professional and/or personal life.
- Trained and advised department supervisors on performance reviews for 1600 employees of SPD.
- Created a performance review tracking system to keep SPD on track with all performance reviews.

**May 2003 - Dec 2004 Seattle Police Department, Seattle, WA**
**Detective Sergeant - Internal Affairs**

*Outline*

Internal Investigator responsible for handling complaints of misconduct made against police personnel.

*Key Responsibilities*
- Internal Investigations.
- Complaint intake.

*Key Achievements*
- Handled 80 internal investigations of some of the most complex and sensitive complaints within SPD.
- Prioritized competing work demands.
- Practiced confidentiality and thoroughness while interacting with a diverse group of citizens and employees.

**Jun 2001 - Apr 2003 Seattle Police Department West Precinct, Seattle, WA**
**Patrol Sergeant**

*Outline*

Responsible for leading, motivating and training a group of patrol officers. We were responsible for 911 calls in the downtown precinct at nighttime.

*Key Responsibilities*
- Responsible for supervision and review for officer's use of force, arrests, reports, and other calls for service.
- Handled citizen complaints against officers.
- Responsible for downtown nightlife scene with numerous people and incidents on Friday and Saturday nights

*Key Achievements*
- Engaged with bar owners/operators in downtown Seattle to develop the precinct violence reduction plan.

**Jun 1987 - Apr 2001 Seattle Police Department, Seattle**
**Police Officer**

*Outline*

Police Officer, responsible for a variety of law enforcement activities within the City of Seattle.

*Key Responsibilities*
- Special Deployment Officer: responsible for large scale staffing plans for SPD (Y2K, WTO, Parades, Sporting events, etc.
- Movie Officer: Assisted with police involvement for movie, TV and commercials filmed in Seattle, including permits and hiring officers.
- DUI Officer: 500 DUI arrests, thousands of traffic stops, drinking lab, numerous reports and courtroom testimony.

- Field Training Officer (FTO): Guided, directed and trained new officers on becoming an effective police officer.
- Patrol Officer: Handled 911 calls for service, felony and misdemeanor investigations, collisions, mental health issues, detected and deterred criminal activity.
- Crisis Intervention Team (CIT): Well-trained within SPD to respond to community members with mental health issues, suicidal ideation, drug dependency, etc.

*Key Achievements*
- Designed and participated in an SPD drinking lab in order to test and evaluate people under the influence of alcohol.
- MADD Officer of the Year, 1998.
- Numerous commendations and citizen thank-you reports.
- Took on additional responsibilities as an FTO for officers in need of specific competence training.
- Regular presenter to the community on patrol enforcement for criminal hot spots, drug houses, etc.

**Aug 1983 - May 1987 Seattle Pacific University, Seattle, WA**
**Security Officer**

*Outline*

Lead supervisor, responsible for detecting and deterring criminal activity on campus in order to keep students, faculty and staff safe. Conducted safety and security assessments for university buildings.

# Education

- **Master of Public Policy** | Oregon State University
- **Bachelor of Arts** | University of Washington
- **Associate in Arts/Sciences** | Shoreline Community College
- **Certificate, School of Police Staff and Command** | Northwestern University

# Additional

**Publications**

• The Need for Police De-Escalation. The Defense News, published by Washington Defense Trial Lawyers Association, Fall 2021.

• The Effects of Restrictive Police Pursuit Policies in Washington State. Published by Oregon State University, EMPP Defense - 2023.

**Expert Witness Cases: 19 defense cases and 32 plaintiff cases.**

1. 10/2017: Deposition-Defendant.
Skyler Morrison v. Seattle School District, NO. 18-2-00464-1 SEA.
WA State Court of Appeals.

2. 11/2017: Arbitration – Defendant.
Zachary Smalls v. USAA, 003254247-040, Arbitration.

3. 11/2017: Case Review – Defendant.
Estate of Jessica Ortega v. Pierce County, 17-2-11836-8.
Superior Court for the State of WA, in and for the county of Pierce.

4. 11/2020: Case Review – Plaintiff.
Ghodsee v. City of Kent, 20-2-09383-1.
SEA Superior Court for the State of WA, in and for the county of King.

5. 3/2021: Case Review – Defendant.

Steven Morse v. Oregon Patrol Service, 19CV35949.
Circuit Court of the State of Oregon for County of Multnomah.

6. 4/2021: Deposition – Plaintiff.
Estate of Kenneth Woody v. Big Horn County, 2016 MT-180.
Supreme Court for the State of Montana.

7. 7/2021: Deposition – Plaintiff.
Estate of Delafuente v. City of Nampa, CV14-20-01023.
Idaho District Court, 3rd District.

8. 8/2021: Written Declaration – Plaintiff.
Alexsey Predybaylo v. Sacramento County, 2:19-CV-01243-MCE-CKD.
U.S. District Court, Eastern District of California.

9. 8/2021: Case Review – Plaintiff.
Hempel v. City of Grass Valley.

10. 10/2021: Written Declaration – Plaintiff.
Estate of Gabriel Strickland v. Nevada County.
2:21-CV-000175-MCE-AC, U.S. District Court, Eastern District of California.

11. 12/2021: Deposition – Plaintiff.
Richmond v. Spokane County, 2:21-CV-00129-SMJ.
U.S. District Court Eastern District of WA.

12. 1/2022: Written Declaration – Plaintiff.
Estate of Nicholas Rapp v. King County, 3:21-CV-05800.
U.S. District Court, Western District of WA at Tacoma.

13. 4/2022: Case Review – Plaintiff.
Sanchez V. City of Eugene, 6:21-cv-00142-MC.
U.S. District Court, State of Oregon Eugene Division.

14. 4/2022: Case Review – Plaintiff.
Ramirez v. City of Chandler.
U.S. District Court for the Eastern District of California.

15. 4/2022: Case Review – Plaintiff.
Hartman v. State of Arizona.

16. 5/2022: Deposition – Plaintiff.
O'Brien v. City of Chicago, 20-CV-2260.
U.S. District Court, Northern District of Illinois, Eastern Division.

17. 7/2022: Expert Report – Defendant.
Thompson v. City of Fairbanks, 4FA-21-02496 C.
Superior Court for the State of Alaska, Fourth Judicial District at Fairbanks.

18. 7/2022: Expert Report – Plaintiff.
Perkins v. City of Des Moines, 4:21-cv-00248-RGE-HCA.
U.S. District Court for the Southern District of Iowa, Central Division.

19. 7/2022: Deposition – Plaintiff.
Irving v. City of Raleigh, 5:22:V-068-BO.
U.S. District Court for Eastern District of North Carolina.

20. 8/2022: Expert Report – Plaintiff.
Reid v. West Virginia State Police, #2:21-cv-00647.
U.S. District Court for the Southern District of West Virginia at Charleston.

21. 9/2022: Case Review – Plaintiff.

Estate of Hennefer v. Yuba County.

22. 10/2022: Expert Report – Defendant.
Payne v. City of Tukwila, 22-2-06475-7 KNT.
Superior Court of the State of WA in the County of King.

23. 12/2022: Trial Testimony – Plaintiff.
Estate of Delafuente v. City of Nampa, CV14-20-01023.
Idaho District Court, 3rd District.

24. 1/2023: Case Review – Defendant.
State of Idaho v. George Dixon, 2022-216528.
Idaho Superior Court.

25. 1/2023: Case Review – Defendant.
Estate of Killsnight v. U.S., 4:22-cv-00018-BMM-JTJ.
U.S. District Court for the District of Montana, Great Falls Division.

26. 2/2023: Preliminary Expert Report – Defendant.
Estate of Justin Schaffer v. Thurston County. Tort claim against Thurston County.

27. 3/2023: Expert Report – Defendant.
Yamindi and Gordon v. Cameron Osmer and WSP. 2:22-cv-00961-LK Matter #10956640.
US District Court for the Western District of WA.

28. 4/2023: Expert Opinion – Plaintiff.
Estate of Jones v. Franklin Co., et al., 4:22-cv-05138-SAB.
U.S. District Court Eastern District of WA.

29. 8/2023: Preliminary Review – Plaintiff.
Rebekah Fitzgerald v. Yellowstone Co., DV 56-2023-0011.
Montana 13th District Court, Yellowstone County.

30. 9/2023: Deposition – Plaintiff.
Hartmann v. State of Arizona, CV2022-010880.
Arizona Superior Court, County of Maricopa.

31. 10/2023: Expert Report – Defendant.
Henry v. City of Tacoma.
3:22-CV-05523-LK, U.S. District Court, Western District of WA.

32. 11/2023: Expert Review – Plaintiff.
Estate of Manzanares v. 3 Denver PD Officers, 2023-CV-31683.
District Court, City and County of Denver, State of CO.

33. 11/2023: Expert Review – Defendant.
State of Nevada v. Robert Telles, C-22-368935-1 Dept. XII.
District Court Clark County, Nevada.

34. 12/2023: Expert Review – Plaintiff.
Estate of Su v. City of Seattle.

35. 12/2023: Expert Review – Defendant.
Stallone v. Roberts, Whidbey Animals Improvement, 23-2-00285-1.
Superior Court State of WA, Island County.

36. 1/2024: Expert Review – Plaintiff.
Foss v. Alspach, et al., 2:22-CV-01728-JHC.
U.S. District Court, Western District of WA.

37. 12/2024, Expert Report – Defendant.
Velasco-Ortega v. Okanogan County, 4:22-cv-05138-SAB.

U.S. District Court Eastern District of WA.

38. 1/2024, Expert Report – Defendant.
Estate of Dante Jones v. Franklin Co., 4:22-cv-5138-JAG.
U.S. District Court Eastern District of WA.

39. 3/2024: Expert Report – Plaintiff.
Estate of Jesse Gardner v. Bullhead City, 3:2023cv08078.
U.S. District Court in and for the District of Arizona.

40. 4/2024: Expert Report – Plaintiff.
Estate of Arlin Bordeaux v. U.S. of America, 1:23-cv-00047-SPW.
U.S. District Court for the District of Montana Billings Division.

41. 4/2024: Expert Review – Defendant.
Burney v. Snohomish County, et al., 24-2-05395-6 KNT.
In the Superior Court of WA, For the County of King.

42. 5/2024: Expert Review – Plaintiff.
McKinzie Rees v. City of Edgewater, 1-23-CV-01626-PAB-NRN.
U.S. District Court for the District of Colorado.

43. 5/2024: Expert Report – Defendant.
Anderson v. City of Soldotna, AK.3:23-cv-000119SLG.
In the United States District Court for the District of Alaska at Anchorage.

44. 6/2024: Expert Review – Plaintiff.
Todd v. United States of America. 1:23-ccv-00047-SPW.
U.S. District Court for the District of Montana Billings Division.

45. 8/2024: Expert Review – Plaintiff.
Ortiz v. Sioux City, IA.

46. 1/2024: Deposition – Plaintiff.
Hennefer v. Yuba County, CA. 2:22- cv- 000389-TLN-CSK. U.S. District Court for the Eastern District of California.

47. 11/2024: Expert Witness Report – Defendant.
Jeremy Jones v. Safariland. 4: 23- cv - 05154-JAG.
U.S. District Court for the Eastern District of Washington at Richland.

48. 1/2025: Expert Witness Report – Plaintiff.
Kennedy v. Acree, et al. 5:21-cv-00134-GNS-LLK.
U.S. District Court, Western District of Kentucky Paducah Division.

49. 3/2025: Expert Witness Report – Plaintiff
Moore v. Patterson, et al. 1:24 -cv-01600
U.S. District Court for the District of Maryland, Northern District

50. 3/2025: Expert Witness Report – Defendant
Callandret v. Jackson Investors, et al. 23-2-21189-8 SEA
Superior  Court for the State of Washington, in and for King County

51. 3/2025: Expert Witness Review – Plaintiff
Estate of Berryman v. Cowlitz County, WA

52. 4/2025  Expert Witness Review - Defense

Comas v. Valley Medical.

**Court History: I have testified in eight depositions and once at trial.**

Woody v. Big Horn County, MT – 2021. This was a police pursuit case that ended in a fatality. I was hired by plaintiff's counsel and testified in a deposition.

Delafuente vs. City of Nampa, ID – 2021. This was a police pursuit case that ended in two fatalities. I was hired by plaintiff's counsel and testified in a deposition.

Richmond v. Spokane County – 2022. This was a human resources EEO case which ended in separation of service. I was hired by plaintiff's counsel and testified in a deposition.

O'Brien v. City of Chicago – 2022. This was an excessive force case. I was hired by plaintiff's counsel and testified in a deposition.

Irving v. City of Raleigh – 2022. This was a police misconduct case. I was hired by plaintiff's counsel and testified in a deposition.

Delafuente vs. City of Nampa, ID – 2022. I testified in court for plaintiff regarding this police pursuit case.

Hartman v. State of Arizona – 2023. This was a pursuit case. I was hired by plaintiff's counsel and testified in a deposition.

Hennefer v. Yuba County - 2024. This was a police procedures case. I was hired by plaintiff's counsel and testified in a deposition.

Jacquelyn Moore v. Jesse Patterson - 2025. This was a police pursuit case. I was hired by plaintiff's counsel and testified in a deposition.

**Media Consultations: Interviews, reviews, commentary, expertise:**

1/2025: Estelle Atkinson, Las Vegas Review-Journal. Discussion about Tasers and other less lethal weapons.

3/2025: Ryan J. Foley, Associated Press. Discussion about Tasers and use of force, which led to a death of a subject being taken into custody.

8/2024: Jeff Domenick, WTAE Pittsburgh. Review of police officer's use of a police vehicle against a fleeing suspect.

6/2022: Susan Samples, WOOD TV/ABC 4 Michigan. Discussion about accidental discharges of firearms.

3/2022: Dan Morse, Washington Post. Review of police pursuit practices.

1/2022: Tania Sims, Live Now Fox. Discussion about violence and threats directed at the police as a result of recent shootings.

2/2022: Frank Mitchell, Close Up Radio. Discussion of police practices.

2/2024: Katie McDowell, KCPQ. Review of an officer involved shooting.

6/2021: Angelica Relente, Tacoma News Tribune. Discussion about police jurisdictions within Washington State.