| | Defendant's Factual Claims | Disputed / Undisputed | Plaintiff's Position | Evidence Supporting Pf's Position (Pin Cite) |
|---|---|---|---|---|
| 1 | On April 26, 2021, Russell Pack, Vice President of Trident Engineering and Inspection, Inc. ("Trident"), a private corporation licensed to do business in Alaska filed a complaint for ==felony== theft of intellectual property against Plaintiff Martin Anderson with the Soldotna Police Department ("SPD"). | Disputed | The highlighted portion of this statement is false. Russell Pack reported an intellectual theft by Martin Anderson. No felony or other criminal charges were filed. This statement also omits the fact that, prior to this date, Anderson had filed complaints with the FBI's Internet Crime Complaint Center (IC3) and OSHA against Trident. | COS 0908, COS 0910, COS 0688 - 0689 |
| 2 | Trident accused Plaintiff of misappropriating company property belonging to Trident, including training and marketing materials, intellectual property, and company goodwill, after Plaintiff ==separated from employment== with Trident. | Disputed | This statement accurately represents Trident's allegations, but Plaintiff was never employed by Trident.  The only evidence Trident provided to Officer Bower of Mr. Anderson's employment was the Purchase and Sale Agreement entered into between Trident and Southern Services, Inc., which explicitly stated that Trident, "agrees to assume the employment agreement of Martin Anderson as of the date of closing," contradicting Trident's claim that Mr. Anderson was a former employee. | COS 0145 |
| 3 | Trident alleged Plaintiff a company owned computer cloned and | Undisputed. | | |

|  | | | |
|---|---|---|---|
|  | proprietary information put onto his personal computer by Computer Renaissance in Soldotna, AK, before wiping the company computer clean and returning it to Trident. | | | |
| 4 | Trident reported Plaintiff then went to work for their competitor Blackhawk Engineering and Precision NDT, performing the same work, with the benefit of the training materials, its client list, and business goodwill Plaintiff had recently purchased. | Disputed | This statement accurately represents Trident's allegation, except that it was Trident, not Plaintiff, that had recently purchased the training materials, client list and business goodwill of SSI. | |
| 5 | Vice President of Trident Russel Pack reported Plaintiff's theft at a meeting with Officer Justin Swangel on April 26, 2021. | Disputed | Rusell Pack's name is misspelled in this sentence. He reported an alleged theft by Plaintiff. | COS 0908 |
| 6 | Officer Bower was then assigned to investigate the theft complaint on April 27, 2021. | Undisputed | | |
| 7 | Officer Swangel left for vacation, and Officer Bower, who had knowledge and training in computer forensics, was assigned. | Disputed | Officer Swangel went on leave, not vacation. Officer Bower testified in deposition that he has not had any courses for digital forensics in the business dispute context. | COS 0139, COS 0911, Bower Depo at 14:25-15:3 |

| | | | |
|---|---|---|---|
| 8 | Officer Bower contacted Computer Renaissance and was provided a work order and work notes for Plaintiff that was initiated on September 5, 2020. | Undisputed | |
| 9 | Officer Bower was able to confirm Plaintiff's laptop serviced by Computer Renaissance was a Dell Latitude E5440. | Undisputed | |
| 10 | On January 21, 2021, Trident entered into a Purchase and Sale Agreement (PAS) with Southern Services, Inc. (SSI), a business providing on-site inspections, nondestructive testing methods, as well as continuing education, training, and consulting, in Soldotna, AK, known as Alaska Technical Training. | Disputed | The PAS is dated January 22, 2021 and reflects that closing of the sale shall occur on February 12, 2021 or such later date as the parties may agree. The bill of sale attached to the PAS was dated and executed by Trident on March 11, 2021 and executed by SSI on March 16, 2021. | COS 0144 – 0145, COS 0159-0161 |
| 11 | Trident purchased certain assets of SSI, including its equipment, client lists, lease space, trade names used in connection with SSI (including "Alaska Technical Training" and "Alaska Technical") and its business goodwill, for $280,000. | Undisputed. | |
| 12 | SSI had previously been owned by Plaintiff, who was employed by SSI at the time Trident purchased SSI. | Disputed | The cited exhibits do not support the assertion that SSI was previously owned by Plaintiff. The assertion that Plaintiff was | COS 0145 |

3

| | | | | |
|---|---|---|---|---|
| | | | employed by SSI at the time Trident purchased SSI is inferentially supported by the clause in the PAS that provides, "Buyer agrees to assume the employment agreement of Martin Anderson as of the date of Closing." | |
| 13 | As part of the purchase, Plaintiff's employment agreement with SSI passed to Trident on the date of Closing (2/12/21). | Disputed | The PAS includes a clause that provides, "Buyer agrees to assume the employment agreement of Martin Anderson as of the date of Closing," but the Bill of Sale attached to the PAS is dated March 12, 2021 and March 22, 2021 was the "Date of Offense" reported by Russell Pack to the SPD on April 26, 2021, according to the SPD Incident Report and the DA's Criminal Case Intake and Disposition form. | COS 0145, COS 0159, COS 0851, COS 0908 |
| 14 | On April 28, 2021, Trident's Vice President spoke with Officer Bower and informed him that Trident would provide a written statement, logs, a copy of the receipt for Plaintiff's computer services at Computer Renaissance, and an estimate of loss. | Disputed | This statement is supported only by hearsay statements in Officer Bower's SPD Incident report, and omits the fact that "Pack estimated the value of the lost data at $10,000," on this date. | COS 0911 |

4

| | | | |
|---|---|---|---|
| 15 | On April 30, 2021, President of Trident, James Hall contacted Officer Bower and provided additional documentation in support of the report of theft, including an executed PSA confirming the reported purchase agreement and price of SSI. | Disputed | There is no footnote citing any evidence in support of this sentence. | |
| 16 | The President informed Officer Bower that Plaintiff returned the company laptop wiped clean, and there was missing data including project files, client lists, along with Alaska Technical Training course materials and exams that Trident had purchased from SSI. | Disputed | There is no footnote citing any evidence in support of this sentence. These assertions are contradicted by Ben Reaves' letter dated 6-15-21. | ANDERSON-000140-000141 |
| 17 | He also told Officer Bower Plaintiff contacted all of their clients, many of their employees, and used such words as "fraud" in emails to these people. | Disputed | This is an accurate statement of James' Hall's allegations, but there is no evidence that Officer Bower investigated to confirm the accuracy of this assertion. | |
| 18 | He reported Plaintiff had set up an office for a competitor in the area, Precision NDT, and had established a training school called "Alaska Technical & Training Services," which Officer Bower was able to verify. | Disputed | The evidence cited to support this assertion only shows that Officer Bower verified that Plaintiff applied for a business license to conduct business starting March 28, 2021 using the name "Alaska Training & Technical Services." | Exhibit I |

5

| | | | |
|---|---|---|---|
| 19 | Trident's President also provided Officer Bower with documentation from Trident's I.T. consultant, Dave Wilson at PC & Network Consulting, explaining how the company laptop used by Plaintiff during his employment, a Dell Latitude E5470 serial # F5XPGC2 ("E5470") had been cloned and the hard drive transferred onto a second laptop, a Dell Latitude E5440 serial # 7JBSL32 ("E5440"). | Undisputed. | |
| 20 | Per the I.T. consultant, in February 2021, the company owned laptop used by Plaintiff, Dell E5470, had remote support software (Simple Help) installed. | Undisputed. | |
| 21 | The software is a Windows installed program that enabled remote access to Trident's server when connected to the Internet. | Undisputed. | |
| 22 | When Plaintiff logged onto the server the software recorded certain information including the time and date of the login, Hostname, IP address, operating system, and it identified the | Undisputed. | |

| | | | |
|---|---|---|---|
| | computer details by make, model, and serial number (hardware details). | | |
| 23 | From the documentation provided to Officer Bower, when Plaintiff logged onto Trident's server on March 24, 2021, it showed Hostname "DESKTOP-UB3PDC1," IP address: 63.140.112, Windows 10 operating system, and Dell Latitude E5470 serial # F5XPGC2 as the computer. | Undisputed. | |
| 24 | Despite Plaintiff returning the Dell E5470 to Trident, the documentation provided showed access to Trident's server on March 29, 2021, by "Martin Anderson" from the same Hostname ("DESKTOP-UB3PDC1") and same IP address (63.140.112) but using Dell Latitude E5440 serial #7JB5L32. | Undisputed. | |
| 25 | Plaintiff was able to access Trident's server on March 29th because the hard drive of the E5470 had been cloned onto the Dell Latitude E5440, with the I.T. consultant noting when the E5470 was | Undisputed. | |

| | | | |
|---|---|---|---|
| | returned it was not connected to the system because it had a fresh Windows install. | | |
| 26 | Trident's President also provided a receipt from Computer Renaissance, which he said they emailed to him because it was for services to the company's laptop. | Undisputed. | |
| 27 | He stated Computer Renaissance said to ignore the invoice because Plaintiff had paid for it himself. | Undisputed. | |
| 28 | On May 4, 2021, Trident President forwarded information to Officer Bower from Trident's I.T. consultant further explaining the cloned hard drive transfer by Plaintiff. | Undisputed. | |
| 29 | He confirmed Plaintiff used Trident's Dell E5470, which had the Trident software downloaded, a hostname of DESKTOP-US3PDC1, and no reported issues. | Undisputed. | |
| 30 | When Plaintiff returned Dell E5470, the hostname changed to DESKTOP-IG12302, which Windows randomly generates when the software is installed. | Undisputed. | |

| | | | |
|---|---|---|---|
| 31 | The I.T. consultant attached documentation showing that the cloned laptop, E5440 logged into the server under the original hostname, after E5470's hostname had been changed an after E5470 had been returned. | Undisputed. | |
| 32 | On May 6, 2021, Trident's President provided information on the data taken by Plaintiff, including training materials and a loss value of $31,290. | Disputed | On May 6, 2021, Trident's President provided information on the data *allegedly taken by Plaintiff, the total value of which was estimated to be $31,290. |
| 33 | He noted Plaintiff returned "the laptop on March 25th with all of the data erased. | Disputed | This statement accurately represents Trident's allegation, but Trident did not provide proof that the laptop had been returned with all of the data erased. The picture attached to Trident's email to Officer Bower could have easily been fabricated. |
| 34 | Included were three photos of the Dell E5740, which showed a sticker from Computer Renaissance on the top, the make, model, and serial number of Trident's computer. | Disputed | The citation for this sentence is missing a pincite, but the photos described in this sentence are included in Exhibit K at pg. 19 (COS 0188) |
| 35 | As alleged, the reported theft constituted felony theft. | Disputed | This is a conclusion of law unsupported by the citation to AS 11.46.120, which provides that, "(a) A person commits the crime of theft in the first degree if the | Expert Report of Joe Desmond dated May 1, 2025, Expert Report of David Jude dated May 1, 2025 |

| | | | person commits theft as defined in AS 11.46.100 and the value of the property or services is $25,000 or more." Defendants fail to explain or offer any evidence that the bare allegations against Plaintiff constituted theft as defined in AS 11.46.100, which provides, "A person commits theft if<br>(1) with intent to deprive another of property or to appropriate property of another to oneself or a third person, the person obtains the property of another;<br>(2) the person commits theft of lost or mislaid property under AS 11.46.160;<br>(3) the person commits theft by deception under AS 11.46.180;<br>(4) the person commits theft by receiving under AS 11.46.190;<br>(5) the person commits theft of services under AS 11.46.200; or<br>(6) the person commits theft by failure to make required disposition of funds received or held under AS 11.46.210." This conclusion is contradicted by the opinions expressed in the expert reports of David Jude and Joe Desmond. | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 36 | Trident's President explained that Plaintiff kept all of the proprietary project files and documents Trident had purchased from SSI on his laptop, instead of on the server. | Disputed | This statement is not supported by the citation to AS 11.46.120 and is contradicted by the letter written by Ben Reaves on June 15, 2021. | ANDERSON-000140-000141 |
| 37 | He informed Officer Bower that Plaintiff was the regional manager. | Disputed | This statement is not supported by any citation. | |
| 38 | He stated Plaintiff kept the training programs on an external hard drive, which was not return to Trident. | Disputed | This statement is not supported by the citation to AS 11.46.120. | |
| 39 | Officer Bower contacted Computer Renaissance and confirmed Plaintiff owned the Dell E5440, and ordered the work order and notes. | Undisputed. | | |
| 40 | Officer Bower researched Precision NDT LLC, and learned the company was established in Alaska on April 27, 2021, and the only listed agent being Plaintiff, business address of 47801 Funny River Road. | Undisputed. | | |
| 41 | On May 13, 2021, Officer Bower requested information about Plaintiff's employment with Trident and SSI, and asked for any logs showing connection times that | Disputed | Officer Bower did not request information about Plaintiff's employment on this date or in the string of emails cited in support of this statement. He did ask for connection logs showing times | COS 0652 - COS 0659 |

11

| | | | | |
|---|---|---|---|---|
| | the cloned drive (E5440) connected with Trident's server. | | that the cloned drive connected with Trident's server, but there is no reference to any serial number in these communications. This exhibit also shows Officer Bower replying to advise Trident: "I completed two search warrants and I'm waiting on the court to approve them. My best guess is that I will execute the warrants next week. I will contact you after that has been completed." | |
| 42 | Trident provided a copy of the employment offer signed and accepted by Plaintiff. | Disputed | False. The cited exhibit does not support this assertion and there is no evidence that Trident provided a copy of any employment offer signed and accepted by Plaintiff. The only evidence Trident provided to Officer Bower of Mr. Anderson's employment was the Purchase and Sale Agreement entered into between Trident and Southern Services, Inc., which explicitly stated that Trident, "agrees to assume the employment agreement of Martin Anderson as of the date of closing," contradicting Trident's claim that Mr. Anderson was a former employee. | COS 0652 – COS 0659; COS 0145 |
| 43 | Trident also provided connection logs for all of the times the cloned hard drive | Disputed | False. The cited exhibit does not support this assertion, or include | COS 0652 – COS 0659 |

12

| | | | | |
|---|---|---|---|---|
| | (E5440) connected to Trident's server on or after March 26, 2021, confirming the logins were from the company computer's prior hostname (DESKTOP-UB3PDC1) and the same IP address. | | the pincited page numbers referenced in the citation. | |
| 44 | On May 18, 2021, Officer Bower submitted applications for two search warrants, which are on preprinted forms. | Undisputed. | | |
| 45 | Under 3KN-21-76SW it states, "Being duly sworn, I <mark>state I</mark> have reason to believe that: on the person of Martin T. Anderson on the premises know as 36696 Kimball Court, Sterling AK <mark>…</mark>there is now being concealed property, namely: Dell Latitude E5440 serial #7JB5L32 and a black Orico external hard drive." | Disputed | The quoted language is incomplete in the highlighted areas. The first should read "state that I" and the ellipsis is omitting the words, "at Soldotna, Alaska," thereby giving the false impression that the affidavit included a single complete address, when in fact it listed both cities. | COS 0829 |
| 46 | Under 3KN-21-77SW, the affidavit the same except for the search location, seeking to search "… on the premises know as Precision NDT 47801 Funny River Road at Soldotna, Alaska... ." | Undisputed. | | |
| 47 | The two search warrant affidavits are otherwise identical. | Undisputed. | | |
| 48 | Officer Bower's | Undisputed. | | |

| | | | |
|---|---|---|---|
| | affiliants state the computer and hard drive is evidence of the particular crime of Theft I under AS 11.46.100(a), and tends to show that Martin Anderson committed the particular crime of Theft I, AS 11.46.10(a), and is stolen or embezzled property. | | |
| 49 | Under "Preliminary Matters" Officer Bower confirmed he was currently a police officer with SPD assigned to patrol. | Undisputed. | |
| 50 | He affirmed part of his duties were to investigate criminal activities. | Undisputed. | |
| 51 | He identified being a police officer with the Libby Police Department in Montana from October 1998 to February 2004, and employed with SPD since March 2004. | Undisputed. | |
| 52 | He stated having made numerous investigations of criminal activity that have resulted in arrests, as well as the application for and execution of numerous search warrants. | Undisputed. | |

| | | | | |
|---|---|---|---|---|
| 53 | Officer Bower graduated from the Montana State Law Enforcement Academy and also attended the Alaska certification academy in Sitka. | Disputed | Officer Bower stated this in his affidavits. | COS 0830, COS 0838 |
| 54 | He possesses an advanced certificate as a police officer issued by the Alaska Police Standards Council, was a field training officer, and received specialized training for forensic analysis of digital media, to include "computer hard drives and cellular phones." | Disputed | Officer Bower stated these things in his affidavits, but he testified in his deposition that the only digital forensics training he has completed is a course paid for by the Internet Crimes Against Children task force based on "recovery of digital media from computers and cell phones." | COS 0830, COS 0838. Bower Depo at 13:1-14:14 |
| 55 | Officer Bower's affidavits in support of his application for two search warrants set out the facts tending to establish the foregoing grounds for issuance of a search warrant as follows: | Undisputed. | | |
| 56 | On 04-26-21 at 1330 hours, Trident Engineering & Inspection Vice President, Russell Pack stopped by the department to report an intellectual theft by former employee, Martin Anderson, to Officer Swangel. Pack reported Anderson took a company owned computer to Computer Renaissance, located in Soldotna, and had the company information transferred to his | Disputed | This is an accurate recitation of the statement in Officer Bower's affidavits, but the characterization of Martin Anderson as a former employee of Trident is inaccurate. In fact, the Purchase and Sale Agreement Trident provided to Officer Bower as proof of their right to claim over files allegedly retained on Anderson's personal laptop explicitly stated that Trident agreed to assume Anderson's employment | COS 0145 |

| | | | |
|---|---|---|---|
| | personal computer before returning the company computer that had been wiped clean. | | agreement upon closing, directly refuting Trident's claim that Anderson was their former employee. | |
| 57 | On 04-27-21 Officer Bower took over the investigation and contacted staff at Computer Renaissance. Officer Bower was provided the work order and notes for Martin Anderson which was initiated on 09-05-21 at 1237 hours. Computer Renaissance transferred the hard drive from a Dell Latitude E5470 onto an Orico external hard drive. On 03-22-21 Anderson brought in a silver Dell Latitude E5440 and requested a clone copy be put on the ES440 and requested the process to be expedited. Anderson later picked up both laptops and external hard drive. | Disputed. | This is an accurate recitation of the statement in Officer Bower's affidavits, but is not supported by the work order and notes from Computer Renaissance, which do not once reference a Dell Latitute E5470 or any Orico external hard drive. | ANDERSON-000117-000121 |
| 58 | On 04-28-21 at 1103 hours, Officer Bower contacted Russell Pack and requested an estimate of the value of the lost data to provide computer logs from their I.T. department. | Disputed. | This is an accurate recitation of the statement in Officer Bower's affidavits, but omits the additional details included in Officer Bower's SPD Incident Report that "Pack estimated the value of the lost data at $10,000," on this date and "also advised Anderson had paid out of pocket | COS 0911 |

16

| | | | for the computer work and had not billed the company." | |
|---|---|---|---|---|
| 59 | On 04-30-21 at 1204 hours, Trident Engineering & Inspection President James Hall contacted Officer Bower and provided him with a Final Purchase & Sale Agreement, which was documentation that showed Trident Engineering & Inspection had purchased the company from Southern Services, Inc. on 01-22-21 for $280,000, which included the following:<br>a. the equipment and other tangible assets;<br>b. all client lists and associated client data of the Business;<br>c. Lease of office space in Soldotna, Alaska from date of execution of Purchase;<br>d. trade names used in connection with the Business, including "Alaska Technical Training" and "Alaska Technical"; and<br>e. The goodwill of the Business. | Disputed. | This is an accurate recitation of the statement in Officer Bower's affidavits, but the statement itself is an inaccurate recitation of the language in the Purchase and Sale Agreement, which included an additional clause at the end of paragraph a, stating, "set forth on Exhibit A attached." Officer Bower omitted that sentence from his search warrant affidavits, but included the complete language of the PSA in the SPD Incident Report he submitted to the DA's office. | COS 0911 |
| 60 | On 05-03-21 James Hall contacted Officer Bower and advised Anderson had set up an office for a competitor in the area, Precision NDT. | Disputed. | This is an accurate recitation of the statement in Officer Bower's affidavits, but an inaccurate recitation of the actual timeline of events as demonstrated by the | COS 0143, 0911 |

17

| | | | | |
|---|---|---|---|---|
| | | | evidence produced in this case. Email records show that Hall advised Officer Bower about Anderson setting up an office for Precision NDT on April 30, 2021, in the same email that attached a copy of the Purchase and Sale Agreement. Officer Bower's notes in the SPD Incident report submitted to the DA's office corroborate that April 30 was the date "Hall said Anderson has set up an office for a competitor in the area, Precision NDT" | |
| 61 | On 05-04-21, James Hall provided Officer Bower with documentation from the business I.T. department which used Trident software to link the business laptops to the company server. The software communicates with the server every time it is connected to the Internet. The logs showed the company lap top, Dell Latitude E5470 serial # F5XPGC2, last connected to their server on 03-26-21 at 0814 hours. Anderson turned in the company computer on 03-25-21, which had a new Windows installed on it and did not have any of the company files. The logs further showed | Disputed. | This is an accurate recitation of the statement in Officer Bower's affidavit, except the copy of Search Warrant No. 3KN-21-76 shows omissions in the third line of this paragraph, such that the second sentence reads, "The____ the server every ___me it is _____." Moreover, the evidence produced in this case demonstrates that these statements are an oversimplified recitation of an email from the complaining "victim" Trident, which are entirely unsupported by any independent investigation or verification. | COS 0167-0169, 0831, COS 0839 |

| | | | |
|---|---|---|---|
| | that after the computer was turned in, on 3-29-21 at 1111 hours, a new computer connected to their server, a Dell Latitude #5440 serial #7JB5L32. This was made possible due to the cloned drive transferring the Trident software to the new computer. | | | |
| 62 | On 05-06-21 James Hall provided Officer Bower with a list detailing the data that taken and the reported value, which totaled $31,290. Officer Bower researched Precision NDT and learned it was established in Alaska on 04-27-21 with an address of 47801 Funny River Road, Soldotna, AK and Martin Anderson was listed as the agent | Disputed. | This is an accurate recitation of the statement in Officer Bower's affidavits, but the evidence produced in this case demonstrates that Officer Bower accepted the alleged value of the data as reported by the complaining victim, "Trident" as true, without conducting any independent investigation or verification of that assertion. | COS 0172 |
| 63 | The search warrants were granted pursuant to AS 12.35.020 by Judge Martin Fallon, who found probable cause existed and authorized a search be conducted at "36696 Kimball Court, Sterling, AK[,] outbuildings and any vehicle owned by Martin T. Anderson" and at "Precision NDT 47801 Funny River Road and any vehicle owned by Martin T. Anderson at Soldotna, AK" | Disputed | The highlighted portion misquotes Search Warrant No. 3KN-21-76 by omitting after Martin T. Anderson the, "at Soldotna, AK." Like Officer Bower's affidavit, the search warrant also listed both Sterling and Soldotna as the city. | COS 0825 |

19

| | | | | |
|---|---|---|---|---|
| 64 | The warrants were required to be served between the hours of 7 a.m. and 10 p.m., and completed within 30 days. | Undisputed. | | |
| 65 | On May 25, 2021, at approximately 12:30 p.m., Officer Bower, with three SPD officers went to Precision NDT ("Precision") to execute search warrant 3KN-21-77SW. | Disputed. | Megan Tolliver's affidavit attests that "an estimated three to four officers" one who identified himself as Officer Bower, came to the hangar where Precision NDT's office was located. | ANDERSON-000134 |
| 66 | Plaintiff began working for Precision in or around April 2021. | Undisputed. | | |
| 67 | Precision opened its office at the Soldotna airport in May 2021, where the business leased spaced. | Undisputed. | | |
| 68 | Plaintiff spent approximately 20-25 percent of his time working out of the Precision office, where he shared a workspace with Precision employee Megan Tolliver. | Undisputed. | | |
| 69 | Plaintiff was employed as a regional manager of Precision. | Disputed. | The deposition page cited to support this assertion only reflects that Plaintiff was employed by Precision and never had any ownership interest in the business. Plaintiff's title as an employee of Precision is not mentioned. | |
| 70 | On the date and time Officer Bower presented to Precision to | Disputed. | The deposition page cited does not support this assertion. | |

| | | | |
|---|---|---|---|
| | serve the search warrant (5/25/21) only Ms. Tolliver was present at the address. | | |
| 71 | Per Ms. Tolliver, she was in the office with the hangar door open observing the airfield while taking a break when the police stopped their vehicles in front of the office, and several officers exited their vehicle and made their way to the threshold of the hangar. | Disputed. | The deposition page cited does not support this assertion. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000134 |
| 72 | She contends Officer Bower asked if Plaintiff was present, and she informed him that Plaintiff was out of state on business. | Disputed. | The deposition page cited does not support this assertion. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000135 |
| 73 | She was told they had a search warrant for a laptop in Plaintiff's possession, and was shown the front of the search warrant. | Disputed. | The deposition page cited does not support this assertion. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000135 |
| 74 | Ms. Tolliver indicated that she and Officer Bower entered the office together, while she attempted to contact Plaintiff. | Disputed. | The deposition page cited does not support this assertion. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000135 |
| 75 | As she and Officer Bower entered the office, Ms. Tolliver reported "a few officers walked around the open bay of the hangar…another officer entered and began to look around the office. | Disputed. | The deposition page cited does not support this assertion. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000135 |

| | | | | |
|---|---|---|---|---|
| 76 | He walked over to Martin Andersons desk and began searching through it." | Disputed. | This is the second sentence of quoted material from Megan Tolliver's affidavit that begins in the row above. The deposition page cited does not support this assertion. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000135 |
| 77 | She did not know the officer's name. | Disputed. | There is no citation supporting this sentence. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000135 |
| 78 | She contends the officer held up a laptop and she informed him that it was not the right laptop, because the laptop in the warrant was with Plaintiff. | Disputed. | This is an inaccurate summary of Megan Tolliver's affidavit, which attests that she "informed him that I knew it was not the laptop in question because it had been the laptop issued to Martin Anderson by Precision NDT." | ANDERSON-000135 |
| 79 | She noted the laptop was returned by the unidentified officer, and they all left, with Officer Bower leaving his contact information to pass along to Plaintiff. | Disputed. | The deposition page cited does not support this assertion. This is supported by Exhibit O, Megan Tolliver's affidavit. | ANDERSON-000135 - 136 |
| 80 | No attempt was made by Officer Bower or any other SPD peace officer to serve or execute search warrant 3KN-21-76, which authorized a search of Plaintiff's residence, outbuilding, and vehicles. | Disputed. | The second cited deposition page is not included in Defendants' Exhibit P, but this assertion is inferentially supported by the deposition pages that are included in Exhibit P. | |

| | | | | |
|---|---|---|---|---|
| 81 | On June 1, 2021, the Search Warrant Return was filed for 3KN-21-76, with Officer Bower noting under "Receipt and Inventory of Property Seized, that the warrant went "UNSERVED" with no property seized "on the authority of this warrant." | Disputed. | The Receipt and Inventory of Property Seized attached to this Search Warrant only states, "UNSERVED," it does not include the second quoted language in this statement, and neither Warrant Return is attached to the email submitted as evidence of the filing of this return, Exhibit Q. | COS 0621, COS 0828 |
| 82 | Officer Bower made no other effort to serve or execute search warrant 3KN-21-77 after March 25, 2021. | Disputed. | The Receipt and Inventory of Property Seized attached to this warrant states, "ANDERSON WAS OUT OF STATE DURING THE TIME OF SERVICE BUT TURNED THE LAPTOP IN ON 06-01-21." | COS 0836 |
| 83 | Plaintiff's out-of-state attorney requested copies of the two warrants, which were sent to her on May 26, 2021. | Disputed. | The email from Dani Vanderzanden cited to support this assertion reflects that she requested, "a copy of the warrant and supporting affidavit relating to Mr. Anderson," and the cited deposition pages are not relevant to this statement. | COS 0392 |
| 84 | On June 1, 2021, local counsel for Plaintiff, Eric Derleth, contacted Officer Bower and asked "Can we make a time for [Anderson] to bring his subject laptop to you at SPD?" | Undisputed. | | |
| 85 | Plaintiff then brought the subject laptop into the police station on | Disputed. | Plaintiff testified in his deposition that he was, "compelled through | Exhibit P, p. 68:19-69:3 |

| | | | | |
|---|---|---|---|---|
| | his own accord later that day (6/1/21), which was logged into evidence. | | the search warrant" to bring his laptop to the SPD police station. | |
| 86 | Plaintiff did not have an external hard drive. | Undisputed. | | |
| 87 | Despite voluntarily delivering the subject laptop (Dell E5440) to SPD, Plaintiff also filed a Motion to Suppress Two Search Warrants (3KN-21-76 and 3KN-21-77) on June 1, 2021, concurrently notifying the District Attorney's (DA) office of filing the motion. | Disputed. | Plaintiff testified in his deposition that he was, "compelled through the search warrant" to bring his laptop to the SPD police station. | Exhibit P, p. 68:19-69:3 |
| 88 | Plaintiff's counsel admitted likelihood of prevailing was a "longshot," but was done with the intention of opening a dialogue and to give the DA's office and law enforcement information to consider as the investigation proceeded. | Undisputed. | | |
| 89 | An agreement was reached to hold the Motion in abeyance. | Undisputed. | | |
| 90 | According to Plaintiff, SPD "was tricked into believing that Marty Anderson 'stole' data from Trident Engineering and Inspection." | Undisputed. | | |
| 91 | Plaintiff recounted what he believed to have occurred in an affidavit narrating his version of events in a "documented | Disputed. | The Motion to Suppress Two Search Warrants filed on behalf of Plaintiff by his local counsel, Eric Derleth, included a | Exhibit U |

24

| | | | |
|---|---|---|---|
| | timeline," contending Trident reported untrue information to SPD and "falsely portrayed itself as a victim." | | "documented timeline of what happened before Trident falsely portrayed itself as a victim." | |
| 92 | Plaintiff's affidavit stated Trident filed the theft complaint with SPD after he reported complaints against Trident with the Occupational Safety and Health Association (OSHA) and Internet Crime Complaint Center (IC3):<br>C. Prior to Trident reporting to SPD that I "stole" their data, I had already reported Trident's illegal hacking to the FBI via the DOJ cyber-hacking web portal known as the Internet Crime Complaint Center (IC3).<br>. . . . .<br>H. Prior to Trident reporting the alleged theft, I contacted OSHA and made a whistleblower complaint for numerous safety violations that I observed while working as a contractor to Trident, and spoke to OSHA personnel about these allegations a few days later. | Undisputed. | | |
| 93 | After the laptop was logged and secured into evidence, Officer Bower applied for a warrant to search the Dell 5440 for Trident | Undisputed. | | |

| | | | | |
|---|---|---|---|---|
| | project files, client lists, and the Alaska Technical Training course materials. | | | |
| 94 | The affidavit was made in order to extract and analyze the data from Plaintiff's laptop. | Disputed. | There is no citation supporting this assertion. | |
| 95 | The District Court Judge found probable cause. | Undisputed. | | |
| 96 | Officer Bower's affidavit confirmed there was probable cause to believe Plaintiff committed the particular crime of Theft I under AS 11.46.100(a), by having in his possession certain property, namely. | Disputed. | This is an incomplete sentence containing an unsupported legal conclusion. | |
| 97 | Search warrant 3KN-21-82 was served on SPD's evidence custodian. | Disputed. | This statement is inferentially supported by the Receipt and Inventory of Property Seized attached to this search warrant (Exhibit W), which reflects that the warrant was left at the "SPD Evidence Room," and that "1,193 files belonging to Trident Engineering," were seized. The Declaration of Stace Escott (Exhibit G) also cited in the footnote following this sentence provides no support for this statement. | Exhibit W (ANDERSON-000850) & Exhibit G |
| 98 | Officer Bower removed the hard drive and made a forensic copy of the drive. | Disputed. | This statement is not supported by the evidence cited (Exhibit W & Exhibit G). This statement is | Exhibit W (ANDERSON-000850) |

| | | | | |
|---|---|---|---|---|
| | | | parroting a statement written by Officer Bower in the SPD Incident Report (Exhibit B) and only inferentially supported by the Receipt and Inventory of Property Seized, which reflects that the warrant was left at the "SPD Evidence Room," and that "1,193 files belonging to Trident Engineering," were seized. | & Exhibit G & Exhibit B (COS 0912) |
| 99 | On June 2, 2021, the forensic copy was analyzed with forensic software, and 1,193 files were discovered on Plaintiff's laptop, which included power-point presentations, training material, .pdfs, and word documents belonging to Trident. | Disputed. | This statement is not supported by the evidence cited (Exhibit W & Exhibit G). This statement is parroting a statement written by Officer Bower in the SPD Incident Report (Exhibit B) and only inferentially supported by the Receipt and Inventory of Property Seized, as described above. | Exhibit W (ANDERSON-000850) & Exhibit G & Exhibit B (COS 0912) |
| 100 | Officer Bower generated a report and a copy of the files were entered into evidence. | Disputed. | This statement is not supported by the evidence cited (Exhibit W & Exhibit G). This statement is parroting a statement written by Officer Bower in the SPD Incident Report (Exhibit B) | Exhibit W & Exhibit G & Exhibit B (COS 0912) |
| 101 | Officer Bower did not make a determination on criminal charges; instead on June 2, 2021, he sent the case to the DA's office as a "referral." | Disputed. | The SPD Incident Report (Exhibit B) includes a note authored by Officer Bower dated 06-02-21 which states, "This report will be sent to the District Attorney's Office for review," but the Criminal Case Intake and | Exhibit B (COS 0912), Exhibit AB (COS 0939) |

| | | | | |
|---|---|---|---|---|
| | | | Disposition Sheet (Exhibit AB) stamped "Prosecutor File," which includes the Instruction "FOR REVIEW" reflects that the referral was received in the DAO by someone with the initials "BR" on June 10, 2021. | |
| 102 | When a case is referred to the DA, evidence is reviewed and the charging decision is made by the DA. | Undisputed. | | |
| 103 | The case was assigned to ADA Justin Works on June 14, 2021. | Disputed. | This is correct, but omits the fact that this referral was initially received in the DA's office for review four days prior, on June 10, 2021. | Exhibit AB (COS 0939) |
| 104 | Once referred, it was ADA Works' decision to file charges. | Disputed. | Pg. 24 of Works' deposition, which is cited in support of this assertion, is missing from Defendants' Exhibit Y, and this portion of Works' testimony was not discussing this case specifically, but rather, in general terms, explaining that Works' position holds the authority to decide whether to file charges when cases are referred without having already been charged. | Exhibit Y, Works Depo pgs. 23-24 |
| 105 | On May 28, 2021, Trident filed a civil complaint against Plaintiff in the Alaska Superior Court, alleging violations of the Alaska Unfair Trade Practices | Undisputed. | | |

28

| | | | | |
|---|---|---|---|---|
| | Act, Unjust Enrichment, Tortious Interference with Contracts, and Intentional Interference with Prospective Economic Advantage. | | | |
| 106 | On June 8, 2021, Plaintiff filed a separate lawsuit against Trident and its two principals in federal court, USDC District of Maine, alleging the company violated his rights under Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g), in gaining unauthorized access to his computer media and online accounts. | Undisputed. | | |
| 107 | Plaintiff's counsel notified ADA Works and Officer Bower about the civil lawsuit between Trident and Plaintiff on June 16, 2021. | Disputed. | Plaintiff's counsel notified DA Scot Leaders and Officer Bower about the civil lawsuits between Trident and Plaintiff on June 16, 2021. Mr. Derleth had been communicating with DA Leaders and Officer Bower since filing the motion to suppress the search warrants on June 1, 2021. | Exhibit Z (COS 0789-790) & Exhibit T (COS 0298 – 0300) |
| 108 | Attorneys for Trident and Plaintiff both contacted ADA Works and informed him the parties would be mediating. | Disputed. | This statement from the Declaration of Stace Escott is hearsay. | Exhibit G, p. 3 |
| 109 | Plaintiff's attorney asked if the parties were to resolve the litigation if ADA Works would | Disputed. | This statement is unsupported by any citation, but is also hearsay from the Declaration of Stace Escott. | Exhibit G, p. 3 |

| | | | | |
|---|---|---|---|---|
| | agree to drop the criminal matter. | | | |
| 110 | ADA Works agreed to let them go to mediation and await the result. | Disputed. | This statement from the Declaration of Stace Escott is hearsay. | Exhibit G, p. 3 |
| 111 | The parties settled, and as part of the agreement Trident informed ADA Works that they were not interested in pursuing their theft complaint against Plaintiff. | Undisputed. | | |
| 112 | ADA Works was informed of the settlement outcome and made the decision not to pursue charges against Plaintiff in late October 2021. | Undisputed. | | |
| 113 | The case was close by the DA's office on October 28, 2021 via the final Arrest Tracking Number (ATN) with "Victim Declines to Prosecute" disposition, and Plaintiff's laptop was returned on November 16, 2021. | Disputed. | The evidence cited does not reflect the date Plaintiff's laptop was returned. | Exhibit AB (COS 0939) |
| 114 | Despite there being only one attempted search for the subject property occurring at Plaintiff's work (at a time he was not even present), voluntarily delivering the property to SPD, no interrogation, no detainment, no arrest, and of course, no criminal charges even filed, Plaintiff has | Disputed. | This statement includes argumentative mischaracterizations of the evidence and conclusions of law that are unsupported by the hearsay statements in Stace Escott's Declaration.  Escott attests that Anderson filed one complaint with the Alaska Police | Exhibit G, p. 2 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | initiated numerous administrative and informal complaints against Officer Bower resulting in an internal investigation and multiple reviews of the evidence. |  | Standards Council on December 7, 2021 against Officer Bower, which was referred to the SPD and assigned to Escott to perform the Administrative Investigation. |  |
| 115 | On December 7, 2021, Plaintiff filed a complaint against Officer Bower through the Alaska Police Standards Council (APSC) complaining Officer Bower, "falsified a search warrant application, recklessly propagated false information and fabricated information in order to obtain a search warrant. | Undisputed. |  |  |
| 116 | Plaintiff alleged Officer Bower "willfully omitted information that would have clearly shown my innocence." | Undisputed. |  |  |
| 117 | APSC referred the Complaint to SPD, which performed an Administrative Investigation (AI). | Undisputed. |  |  |
| 118 | The investigation was performed by (now) SPD Police Chief Stace Escott. | Undisputed. |  |  |
| 119 | Chief Escott interviewed ADA Works as part of the AI investigation, who reported that his review of the evidence did not show any improper actions by Officer Bower. | Disputed. | This statement from Escott's declaration describing what Works' reported is hearsay and misquotes Escott's declaration, which attests that, "Mr. Works informed me that he saw nothing | Exhibit G, pgs. 2-3 |

31

| | | | | |
|---|---|---|---|---|
| | | | in Bower's search warrant affidavits that led him to believe Bower lied or engaged in wrongdoing. Mr. Works stated Bower likely did not have all of the information, as is the norm in these types of cases, and the reason why search warrants are requested. Not having all of the facts, or the correct facts does not mean that Bower's affidavits were improper." | |
| 120 | He agreed to close the investigation after the victim wrote him and told him they were no longer interested in pursuing theft charges. | Disputed. | This statement from the Declaration of Stace Escott is hearsay. | Exhibit G, p. 3 |
| 121 | Chief Escott also interviewed Officer Bower, and reviewed the complaint brought by Plaintiff against the information Officer Bower obtained to apply for the search warrants, including Trident's information and Computer Renaissance's worker order and notes with Officer Bower's interpretation. | Undisputed. | | |
| 122 | Upon review of the documents, evidence, and information obtained and evaluated as part of the AI, Officer Bower's explanation interpreting his understanding of the evidence, | Disputed. | Escott attests that he reached this conclusion, but Escott failed to conduct the Administrative Investigation in compliance with SPD's policies and procedures. | Exhibit G; Expert Report of Joseph W. Desmond |

| | | | | |
|---|---|---|---|---|
| | including interpretation of Computer Renaissance's notes, was valid and truthful. | | | |
| 123 | He found no evidence that Officer Bower conducted an unlawful search and/or seizure, recklessly propagated false information, fabricated information, acted recklessly, or willfully omitted material information. | Disputed. | This statement accurately reflects the conclusion Escott reached, but Escott failed to conduct the Administrative Investigation in compliance with SPD's policies and procedures. | Exhibit G; Expert Report of Joseph W. Desmond |
| 124 | Plaintiff was not satisfied with the finding, and accordingly, initiated this lawsuit. | Disputed. | There is no citation supporting this argumentative assertion. | |
| 125 | He alleges to have suffered approximately $1.9 million in damages – despite having no charges brought against him, no interrogation, no detainment, no arrest, no bail, no prison, no bodily injury, and no conviction. | Disputed. | There is no citation supporting this argumentative assertion, simply the statement in a footnote that, "Defendants deny Plaintiff has suffered any damages, nor are the majority of damages alleged even recoverable under 42 U.S.C. § 1983. | |
| | | | | |