```
Thad M. Guyer (Oregon # 821443)
Pro Hac Vice Pending
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501
thadg@whistleblower.org
(206) 954-1293 (mobile)

Attorneys for Plaintiff
```

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA AT**

**ANCHORAGE**

| | |
|---|---|
| MARTIN ANDERSON, an individual<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF SOLDOTNA, a municipal corporation.<br>And DAVID BOWER, an individual.<br><br>Defendants. | Case No. 3:23-cv-000119 KFR |

**DECLARATION OF MARTIN ANDERSON**

I, Martin Anderson, declare the following:

1. I am over the age of 18, competent in all respects, and I have personal knowledge of the information stated herein.

2. I am the founder and former owner of Alaska Technical Training Inc. an NDT consulting, training and testing company operated out of Sterling, AK. Alaska Technical was sold in March of 2019 to Southern Services Inc. Southern Services, Inc. (SSI), a company that provided nondestructive testing services in Texas, purchased Alaska Technical and opened an office in Soldotna, Alaska in 20219. In March 2021, SSI Alaska office was

37     acquired by Trident Engineering and Inspection, Inc., through an asset Purchase and Sale
38     Agreement finalized on or about March 16 , 2021. As part of the transaction, I released
39     SSI from the remaining year of a three year employment contract as my employment
40     contract signed in 2019 with SSI was not transferable. Once I released SSI from the
41     remaining year of my three year employment contract, Trident was able to make the
42     purchase and agreed to assume the final year of my contract. In exchange for releasing
43     SSI from the remaining year of my contract, they released me from my no complete
44     clause signed in the March 2019 contract. Once I released SSI from the employment
45     contract, Trident reneged on the agreement to assume the remaining year of the three
46     year employment contract and offered me employment at will.

47   3. On March 23, 2021, roughly eight days after the PSA closed Trident abruptly terminated
48     my employment before, I started the hiring process. I never completed federally required
49     forms such as the W2, or I9. I never completed the required drug test, background check
50     or any pre-hire forms of any kind. In fact, in Tridents' own HR manual, they clearly
51     stated that a person is not considered an employee until the I9 form and other pre-hired
52     requirements are met. This termination occurred one day after Trident's Vice President,
53     Russell Pack, asked me to sign a temporary employment agreement that had not been
54     previously discussed. I did not resign or breach any agreement with Trident, and the
55     sudden termination of the employment agreement came without explanation or warning,
56     despite my efforts to continue working with professionalism and transparency.

57   4. At no time did I ever ask Computer Renaissance to copy, clone, or transfer data from a
58     Trident-owned device or from any company device to my personal Dell E5440 laptop.
59     Computer Renaissance has confirmed this in thier signed affidavit. The service I

requested was limited to routine maintenance and hardware support and was made in September of 2020, six months prior to Trident purchasing any assets from SSI. I never provided them with an external hard drive or directed them to perform any data transfer between company and personal equipment. My request was made so that I could continue working while my old Dell E5470 laptop was being serviced. The use of external drive enclosures allowed me to access my files during repairs and was not for any unauthorized duplication but in fact, I never picked up the laptop hard drive placed into the temporary enclosure.

5. Before Officer David Bower applied for the two initial search warrants on May 18, 2021, he never contacted me to ask questions, gather information, or request my version of events. I received no outreach or interview request from him prior to the warrant applications or any time after, despite being fully available and willing to cooperate. Had Officer Bower reached out, I would have explained the nature of the Computer Renaissance services, provided documentation proving the work done on the laptops was routine and had been done several times over several years and paid for by my employer, and described the retaliatory behavior by Trident. The search warrant applications provided to the Judge where riddled with mistakes, wrong dates, wrong computer serial numbers, false statements and exempted exculpatory evidence gained prior to submitting the applications to the state judge. The search warrants were crafted to cause the Judge to believe I was a criminal and had committed crimes when in fact, nearly all the information on the search warrant applications was false or misleading.

6. On June 1, 2021, I surrendered my laptop in person, the Dell Latitude E5440 to the SPD. At the time, I was extremely anxious and under emotional pressure due to the existence

| | | |
|---|---|---|
| 83 | | of the search warrants and believed the residential search warrant was still active and that |
| 84 | | my home could be searched at any time. When I gave Ofc. Bower my personal laptop, I |
| 85 | | informed him no external hard drive existed as he stated in the search warrant. I stated, |
| 86 | | "If you would have just return my voicemail from last week, we would not be in this |
| 87 | | situation". He then stated, "Well we are", very aggressively. When Ofc. Bower searched |
| 88 | | my place of employment, he showed the search warrant for my home to Precision |
| 89 | | employee Megan Tolliver, who then told my wife about the search warrant and my wife |
| 90 | | contacted me who was out of state at the time. She was under severe emotional distress |
| 91 | | and this is what caused me to take my laptop to the police station upon my return to |
| 92 | | Alaska. I believe the reason Ofc. Bower told Megan Tolliver about the existence of the |
| 93 | | search warrant of my home was to coerce me into bringing my laptop to the police |
| 94 | | station. I was not attempting to avoid the investigation. I also did not know, and was |
| 95 | | never informed, that Search Warrant 3KN-21-76SW, authorizing a search of my |
| 96 | | residence, outbuilding, and vehicles, had not actually been executed. I only learned later |
| 97 | | that the warrant had gone unserved. |
| 98 | 7. | On April 18, 2021, I filed a whistleblower complaint with the Occupational Safety and |
| 99 | | Health Administration (OSHA), reporting unsafe working conditions and regulatory |
| 100 | | violations I had witnessed while contracting with Trident. Around the same time, I also |
| 101 | | submitted a complaint to the FBI's Internet Crime Complaint Center (IC3) regarding |
| 102 | | Trident's unauthorized access to my private email accounts. These reports were made |
| 103 | | well before Trident filed their theft complaint with SPD on April 26, 2021. |
| 104 | 8. | I also left a voicemail for Officer Bower on May 26, 2021, specifically detailing my prior |
| 105 | | OSHA and IC3 complaints, critical context bearing directly on the motive and credibility |

of Trident's accusations, yet Bower did not document this in his communications with the District Attorney. In addition, I provided written notice of these complaints in a June 1, 2021, motion to suppress, which Bower acknowledged receiving, but still omitted from his investigative materials and report to the DA a few days later. Both of my attorneys Eric Derleth and Clint Campion made a written request to meet with Ofc. Bower, which he did not respond to for more than six weeks and then stated he did not see a reason to meet. I and my legal counsel made it clear that I was willing to speak to Ofc. Bower with or without my attorney, but I could not secure a meeting.

9. I have personal knowledge of a written statement made by Benjamin Reaves, a former SSI/Trident employee, in which he confirms that I raised internal safety concerns at Trident prior to April 26, 2021. Mr. Reaves' statement also recounts that Brittany Winkler, a Trident manager, implied that I was the reason an OSHA audit was expected. This conversation occurred before Trident submitted its theft complaint to the Soldotna Police Department. In addition, another Trident associate, Mike Gossman, indicated in his own statements that he was told by Trident leadership that he blamed me for the office being shut down.

10. I am aware that the Soldotna Police Department (SPD) has a policy requiring specialized training for officers who conduct complex investigations involving digital forensics or intellectual property issues. Despite this requirement, Officer Bower received no formal training in identifying protected intellectual property or in handling civil-versus-criminal distinctions in such matters. I also understand that SPD had no policy in place requiring supervisory review of search warrant applications during the time of this investigation. As a result, Officer Bower's materially deficient affidavits were submitted without

oversight or quality control. His supervisor, Sgt. Brennan stated in an email that there was allot of information missing and lacking in Ofc. Bower's report, and in hindsight, he should never have approved the report and would do better as a supervisor and expect more from those he supervised. Yet, no corrections were ever sent to the DA's office.

11. The seizure and extended retention of my personal Dell E5440 laptop by SPD from June, 1through mid-November 2021 caused major disruptions to my business operations. I was unable to access critical client materials, training records, and financial information needed to operate effectively. As a result, I was unable to file my 2021 tax returns on time, lost existing client work, and was forced to rebuild work product and customer contact lists from scratch. My ability to conduct business in my specialized field was severely impacted during this period, and I experienced considerable professional instability. The emotional stress suffered by false allegations from Trident was unspeakable. Ofc. Bower, taking only the word of Trident and having no corroboration from any other source was nearly unbearable. In Ofc. Bower's deposition he stated that he found no evidence I had committed a crime while interviewing someone at Computer Renaissance (he does not know who he spoke with and did not record it in his report). He also stated that he found exculpatory evidence but did not add it to his report to the DA or document it anywhere.

12. Due to the stigma and uncertainty created by the criminal investigation, I was ultimately forced to abandon a planned federal civil suit under the Computer Fraud and Abuse Act against Trident and its principals. That lawsuit, which was filed in the District of Maine, had an estimated value of approximately $1.2 million. However, given the risk of criminal exposure created by Officer Bower's mishandled investigation and the

misleading search warrants, it became impossible to proceed with the litigation. This caused both financial and reputational losses.

13. In total, I invested over 1,400 hours responding to the legal fallout from the SPD investigation. This includes time spent gathering documentation, meeting with attorneys, responding to discovery, and managing the public and professional consequences of being investigated for a crime I did not commit. Valued conservatively at $160 per hour, this represents $224,000 in lost productivity and opportunity costs.

14. From May to October 2021, I lived in fear that I might be criminally charged, prosecuted, and potentially imprisoned based on false or misleading evidence. This caused severe emotional distress, including insomnia, anxiety, and strain on both professional and personal relationships. My work in nondestructive testing is highly reputation-based, and the damage to my standing in the community, including the loss of clients and professional contacts—has been substantial. I have top secret security clearance with the DOD and other federal agencies and could not take the risk of losing these due to a false charge.

15. Regarding my familiarity with the lack of training and supervision on the part of the SPD, my knowledge sources are (1) My thorough research of the matter to help my attorney challenge the sufficiency of the warrants, (2) public information requests I filed to obtain all written policies and procedures of the police department and studied them thoroughly. These do not require legal expertise to review and are written in layman's language for easy understanding by police officers with low education. As a certified quality auditor, it was easy to identify where SPD did not follow their policies such as performing a search through a search warrant and completing administrative investigations. Finally, (3) I

assisted my attorney, Thad Guyer, in preparing deposition exhibits and preparing for his own deposition, and he attended the depositions of all police officers and former police officers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __19____ day of June 2025 at Sterling, AK

Martin T. Anderson
Digitally signed by Martin T. Anderson
DN: cn=Martin T. Anderson, o=CHC, ou=Quality, email=martyusak@me.com
Date: 2025.06.19 22:47:00 -08'00'

Martin Anderson

**CERTIFICATE OF SERVICE**

Pursuant to Civil Rule 5, I hereby certify that on the ___ day of June, 2025, a true and correct copy of the foregoing was served via CM/ECF electronically on the following person(s).

JIMC. WILKSON, ESQ.

KENDRA E. BOWMAN, ESQ.
FARLEY & GRAVES, P. C.
807 G Street, Suite 250
Anchorage, Alaska 99501
Phone: (907) 274-5100 Fax: (907) 274-5111
Email: jwilkson@farleygraves.com; kbowm an@farleygraves.com

Attorneys for Defendants, The City of Soldotna and David Bower