**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| MARTIN ANDERSON, an individual,<br>Plaintiff,<br>v.<br>THE CITY OF SOLDOTNA, a municipal corporation; and DAVID BOWER, an individual,<br>Defendants. | Case No. 3:23-cv-00119-KFR |

**ORDER RE MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants City of Soldotna ("City") and David Bower.[1] Plaintiff Martin Anderson responded in opposition to the Motion,[2] and Defendants replied.[3] Because Defendants have demonstrated that they are entitled to summary judgment as to each of Plaintiff's claims, the Motion is **GRANTED**.[4]

//

//

//

//

//

[1] Docket 34.

[2] Docket 44. Plaintiff also separately filed a "Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment," as well as a corresponding table in which Plaintiff goes through the factual assertions contained in Defendants' Motion and indicates whether he disputes or does not dispute each assertion. Docket 41; Docket 46-44.

[3] Docket 55. Defendants also filed a "Reply to Plaintiff's Statement of Material Facts in Opposition to Summary Judgment and Response to Evidentiary Objections." Docket 56.

[4] The Court is authorized to issue dispositive rulings pursuant to the parties' consent to a magistrate judge's exercise of plenary jurisdiction. *See* 28 U.S.C. § 636(c)(1); *Branch v. Umphenour*, 936 F.3d 994, 1001 (9th Cir. 2019).

## I. BACKGROUND

### A. Facts[5]

#### 1. Events preceding Officer Bower's theft investigation

In March 2019, Southern Services, Inc. ("SSI"), a business that provided non-destructive testing services in Texas, acquired Alaska Technical Training Inc., a non-destructive consulting, training, and testing company founded and owned by Plaintiff.[6] After the acquisition, Plaintiff became an employee of SSI, working out of a newly opened office in Soldotna, Alaska.[7]

On January 22, 2021, SSI entered into a purchase and sale agreement with Trident Engineering and Inspection, Inc. ("Trident"), a private corporation licensed to do business in Alaska.[8] Pursuant to this agreement, Trident purchased certain assets from SSI—including client lists, Alaska Technical Training, and trade names used in connection with SSI—as well as SSI's business goodwill.[9] Trident further agreed to assume Plaintiff's employment contract on the date of closing.[10] Before closing, Plaintiff released SSI from the one year remaining of the employment contract's term, as the contract was not transferable.[11]

On March 16, 2021, soon after Trident and SSI closed their agreement, Trident extended Plaintiff an offer of at-will employment, stating in a letter that the purpose of this offer was to allow Plaintiff to continue working as they negotiated a one-year contract.[12] On March 20, 2021, Plaintiff accepted the offer.[13] On March 23, 2021, however, Trident

---

[5] The following recitation of facts is based on the Court's review of the evidence submitted by the parties, the evidentiary arguments addressed in the parties' filings at Dockets 41, 46-44, and 56, and the Court's application of the pertinent evidentiary standards at summary judgment. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (stating that courts "focus on the admissibility of [the evidence's] contents" at summary judgment, rather than "the admissibility of the evidence's form"); *see also* Fed. R. Civ. P 56(c).

[6] Docket 42 at 1, ¶ 2; Docket 34-9 at 3.

[7] Docket 42 at 1–2, ¶ 2; Docket 34-9 at 3.

[8] Docket 34-2; Docket 34-9 at 1–19.

[9] Docket 34-9 at 1–16.

[10] Docket 34-9 at 3; Docket 34-9 at 17; Docket 42 at 1–2, ¶ 2.

[11] Docket 42 at 2, ¶ 2.

[12] Docket 56-1 at 3.

[13] Docket 56-1 at 4.

terminated Plaintiff's employment.[14]

On March 22, 2021, the day before his termination, Plaintiff brought a Trident-owned Dell Latitude laptop (model E5470) to Computer Renaissance, a local computer sales and repair store, for "expedited" service.[15] Computer Renaissance proceeded to copy the data that was on the Latitude E5470 onto a different Dell Latitude laptop (model E5440) that Plaintiff had brought to the store for service six months earlier, on September 5, 2020.[16]

In working on the Latitude E5440, Computer Renaissance had discovered various issues, including a failed internal system hard drive that required replacement.[17] While waiting for replacement parts to arrive, Computer Renaissance removed the Latitude E5440's still-functioning internal storage hard drive and converted it into an external hard drive that Plaintiff could use in the meantime.[18] To make the conversion, Computer Renaissance put the internal hard drive into an external enclosure manufactured by Orico.[19] However, Plaintiff never picked up the Latitude E5440's converted hard drive and did not otherwise return to Computer Renaissance until March 22, 2021, when he brought in the Latitude E5470.[20]

On March 25, 2021, Plaintiff returned the Latitude E5470 to Trident.[21] At some point afterward, Trident noticed that a new, unfamiliar Dell laptop was connecting to its server.[22] It turned out that this laptop was Plaintiff's Latitude E5440—his personal laptop—and the laptop had connected to Trident's server multiple times beginning on March 29, 2021.[23]

On April 18, 2021, Plaintiff filed a whistleblower complaint against Trident with the Occupational Safety and Health Administration ("OSHA"), alleging unsafe working conditions and regulatory violations.[24] Around this same time, Plaintiff also made a complaint to the FBI's

---

[14] Docket 42 at 2, ¶¶ 2–3.
[15] Docket 34-7 at 5.
[16] Docket 34-7 at 1, 5; Docket 46-21.
[17] Docket 34-7 at 5.
[18] Docket 34-7 at 5; Docket 46-21; Docket 42 at 3, ¶ 4.
[19] Docket 34-7 at 5; Docket 46-21.
[20] Docket 46-22 at 5; Docket 42 at 3, ¶ 4.
[21] Docket 34-12 at 1, 19.
[22] Docket 34-11.
[23] Docket 34-12 at 21–23; Docket 34-13 at 2–6.
[24] Docket 42 at 4, ¶ 7.

Internet Crime Complaint Center, alleging that Trident had accessed his private email accounts without authorization.[25]

### 2. Officer Bower's theft investigation

On April 26, 2021, Trident's Vice President Russell Pack reported to the Soldotna Police Department ("SPD") that Plaintiff had committed felony theft of Trident's intellectual property.[26] Pack alleged that Plaintiff had transferred company data from a Trident-owned laptop to his personal laptop and then returned the company laptop wiped clean.[27] Pack further suggested that Plaintiff had gotten this work done at Computer Renaissance.[28]

On April 27, 2021, SPD Officer David Bower was assigned to investigate the alleged theft.[29] Over the course of the following two and a half weeks, Officer Bower spoke with Pack, corresponded with and received additional information from Pack and Trident's President James Hall, and made efforts to verify that information by contacting Computer Renaissance and conducting his own independent research.[30]

Among other things, Hall told Officer Bower that: (1) Plaintiff had "clon[ed] . . . the hard drive of [Trident's] company computer"; (2) Computer Renaissance had sent Trident a receipt for that service but told Trident that Plaintiff had paid for the service himself; (3) Plaintiff had returned the company laptop "wiped clean with everything erased"; (4) the laptop was supposed to contain files that Trident had purchased from SSI, including Alaska Technical Training materials, and Plaintiff had not saved those files to Trident's server; (5) the estimated value of the missing files was approximately $31,290; (6) Plaintiff had contacted Trident's clients and employees after his termination and used words such as "fraud" in his messages; (7) Plaintiff had recently set up a local office for Blackhawk Engineering and Precision NDT ("Precision"), one of Trident's competitors; and (8) Plaintiff had recently established a training

---

[25] Docket 42 at 4, ¶ 7.
[26] Docket 34-3 at 3; *see also* ALASKA STAT. §§ 11.46.100, 11.46.120, 11.46.130.
[27] Docket 34-3 at 3–4.
[28] Docket 34-3 at 3–4.
[29] Docket 34-3 at 4; Docket 34-4; Docket 34-5.
[30] *See* Docket 34-3 at 4–5; Docket 34-9; Docket 34-10; Docket 34-11; Docket 34-12; Docket 34-13.

school called "Alaska Technical & Training Services."[31] Hall also told Officer Bower that Plaintiff had kept certain files owned by Trident on an external hard drive that Plaintiff did not turn in after his termination.[32]

To corroborate this account, Hall provided Officer Bower with various pieces of documentation, including the executed purchase and sale agreement between Trident and SSI; the receipt Computer Renaissance forwarded to Trident; Trident's employment offer that Plaintiff signed on March 20, 2021; and technical explanations and evidence from Trident's IT consultant regarding the cloning of the Latitude E5470's hard drive to a Latitude E5440, including details of multiple connections that the Latitude E5440 had made to Trident's server since Plaintiff's termination.[33] Moreover, Officer Bower verified through State of Alaska records that Plaintiff had established a business called "Alaska Training & Technical Services" on March 28, 2021,[34] and that Precision had been established in Alaska on April 27, 2021, with Plaintiff listed as the company's registered agent.[35]

In addition, Computer Renaissance provided Officer Bower with a work order and work notes for the services it performed for Plaintiff between September 5, 2020 and March 22, 2021.[36] These documents indicated that Plaintiff had initially brought in his Latitude E5440 for diagnostics, which revealed various problems including the faulty internal system hard drive.[37] A technician wrote that Plaintiff authorized a drive replacement, and that Plaintiff "w[ould] be bringing [his] other laptop to do a drive image off of in about a week, so for now the laptop has been moved to bay D."[38] The notes indicate that Plaintiff later "[s]topped by and wanted his laptop back and didn't know [Computer Renaissance] w[as] wanted [sic] on

---

[31] Docket 34-9 at 1; Docket 34-12 at 1, 3; Docket 34-14 at 7. The training school was in fact called "Alaska Training & Technical Services." Docket 34-10.
[32] Docket 34-12 at 1.
[33] Docket 34-9 at 2–22; Docket 34-11 at 1–3; Docket 34-13 at 1–5; Docket 56-1 at 1–4.
[34] Docket 34-15 at 7; Docket 34-10.
[35] Docket 34-15 at 7.
[36] Docket 34-7.
[37] Docket 34-7 at 1, 4–5.
[38] Docket 34-7 at 5.

him to bring in his laptop in order to make a clone."[39] The notes further indicate that after talking about it with the technician, Plaintiff agreed to "do a [sic] external hard drive enclosure[.]"[40] The technician then put the "customer data drive . . . in [the] enclosure" for Plaintiff to pick up, moved Plaintiff's laptop to "bay C," and called Plaintiff to let him know Computer Renaissance was "waiting on [his] drive for an image."[41] The next and last entry in the work notes is dated March 22, 2021, and states simply that Plaintiff "brought his laptop in to get a clone copy, needs to be expedited."[42]

### 3. Officer Bower's first two search warrant applications

On May 18, 2021, Officer Bower applied for two search warrants in connection with his investigation. In the first application, Officer Bower sought authorization to search Precision's office for evidence of the suspected theft under Alaska Statute 11.46.100(a): namely, a "Dell Latitude 5440 serial #7JB5L32 and a black Orico external hard drive."[43] The second application was identical in all respects except for the location to be searched, which was listed as Plaintiff's residence.[44]

In an affidavit submitted in support of each search warrant application, Officer Bower set forth the following facts in explaining why he believed there was probable cause for the requested searches:

> On 04-26-21 at 1330 hours, Trident Engineering & Inspection Vice President, Russell Pack stopped by the department to report an intellectual theft by former employee, Martin Anderson, to Officer Swangel. Pack reported Anderson took a company owned computer to Computer Renaissance, located in Soldotna, and had the company information transferred to his personal computer before returning the company computer that had been wiped clean.
>
> On 04-27-21 Officer Bower took over the investigation and contacted staff at Computer Renaissance. Officer Bower was provided the work order and notes for Martin Anderson which was initiated on **09-05-21** at 1237 hours. **Computer**

[39] Docket 34-7 at 5.
[40] Docket 34-7 at 5.
[41] Docket 34-7 at 5.
[42] Docket 34-7 at 5.
[43] Docket 34-14 (Search Warrant No. 3KN-21-76SW).
[44] Docket 34-15 (Search Warrant No. 3KN-21-77SW).

**Renaissance transferred the hard drive from a Dell Latitude E5470 onto an Orico external hard drive. On 03-22-21 Anderson brought in a silver Dell Latitude E5440 and requested a clone copy be put on the E5440 and requested the process to be expedited. Anderson later picked up both laptops and external hard drive.**

On 04-28-21 at 1103 hours, Officer Bower contacted Russell Pack and requested an estimate of the value of the lost data to provide computer logs from their I.T. department.

On 04-30-21 at 1204 hours, Trident Engineering & Inspection President James Hall contacted Officer Bower and provided him with a Final Purchase & Sale Agreement, which was documentation that showed Trident Engineering & Inspection had purchased the company from Southern Services, Inc. on 01-22-21 for $280,000, which included the following:

a. the equipment and other tangible assets;
b. all client lists and associated client data of the Business;
c. Lease of office space in Soldotna, Alaska from date of execution of Purchase.
d. trade names used in connection with the Business, including "Alaska Technical Training" and "Alaska Technical"; and
e. The goodwill of the Business.

On 05-03-21 James Hall contacted Officer Bower and advised Anderson had set up an office for a competitor in the area, Precision NDT.

On 05-04-21, James Hall provided Officer Bower with documentation from the business I.T. department which used Trident software to link the business laptops to the company server. The software communicates with the server every time it is connected to the Internet. The logs showed the company lap top, Dell Latitude E5470 serial # F5XPGC2, last connected to their server on 03-26-21 at 0814 hours. Anderson turned in the company computer on 03-25-21, which had a new Windows installed on it and did not have any of the company files. The logs further showed that after the computer was turned in, on 3-29-21 at 1111 hours, a new computer connected to their server, a Dell Latitude #5440 serial #7JB5L32. This was made possible due to the cloned drive transferring the Trident software to the new computer.

On 05-06-21 James Hall provided Officer Bower with a list detailing the data that was taken and the reported value, which totaled $31,290. Officer Bower researched Precision NDT and learned it was established in Alaska on 04-27-21 with an address of 47801 Funny River Road, Soldotna, AK and Martin Anderson

was listed as the agent.[45]

On May 19, 2021, a state magistrate judge granted both search warrant applications.[46]

### 4. Officer Bower's execution of the Precision search warrant

On May 25, 2021, at about 12:30 p.m., Officer Bower and three other SPD officers went to the Precision office to execute the warrant to search that location for Plaintiff's Latitude E5440 and the "Orico external hard drive."[47] The Precision office was located inside a hangar at the Soldotna airport.[48] Although Plaintiff was employed by Precision at this time, he was not on the premises when Officer Bower arrived.[49] The only person there was Megan Tolliver, another Precision employee, who met the officers at the threshold of the hangar.[50]

Tolliver asked Officer Bower how she could help.[51] Officer Bower asked if Plaintiff was present, to which Tolliver said no.[52] Officer Bower then told Tolliver that he had a search warrant for Plaintiff's laptop, and showed her the front page of the warrant.[53] Tolliver asked if she could contact Plaintiff, which Officer Bower allowed her to do.[54] Tolliver and Officer Bower entered the office, where Tolliver attempted to reach Plaintiff by phone.[55] As she was calling Plaintiff, one of the three unidentified SPD officers entered the office and began to look around.[56] The officer found a black laptop in a cabinet under Plaintiff's desk and asked if that

---

[45] Docket 34-14 at 6–7; Docket 34-15 at 6–7 (emphasis added). Officer Bower also stated that he had over 22 years of experience as a police officer and that he had received "specialized training for forensic analysis of digital media, to include computer hard drives and cellular phones." Docket 34-14 at 6; Docket 34-15 at 6.
[46] Docket 34-14 at 3; Docket 34-15 at 3.
[47] Docket 34-16 at 1, ¶¶ 6–7.
[48] Docket 34-17 at 2.
[49] Docket 34-17 at 8, 13–14.
[50] Docket 34-16 at 1, ¶¶ 6–8.
[51] Docket 34-16 at 1, ¶ 8.
[52] Docket 34-16 at 1, ¶¶ 8–9.
[53] Docket 34-16 at 1–2, ¶¶ 9, 11.
[54] Docket 34-16 at 2, ¶ 11.
[55] Docket 34-16 at 2, ¶¶ 12–13.
[56] Docket 34-16 at 2, ¶ 15.

laptop was the one in question.[57] Tolliver told the officer that it was not the right laptop.[58] The officer then returned the laptop to the cabinet.[59]

After Tolliver was unable to reach Plaintiff, Officer Bower told her that he also had a search warrant for Plaintiff's residence and asked her if she thought the Latitude E5440 could be there.[60] Tolliver responded that she did not because Plaintiff was out of state and likely had the laptop with him.[61] Officer Bower told Tolliver to inform Plaintiff that he needed to turn in the laptop to SPD once he returned to Alaska.[62] Officer Bower also gave Tolliver his contact information to pass on to Plaintiff.[63] The officers then left Precision.[64]

Neither Officer Bower nor any other SPD officer ever attempted to serve or execute the search warrant for Plaintiff's residence.[65]

### 5. Subsequent events, including Officer Bower's third search warrant application and resolution of legal proceedings

On May 26, 2021, Plaintiff left a voicemail for Officer Bower in which he mentioned the complaints about Trident he had lodged with OSHA and the FBI.[66] Officer Bower did not return Plaintiff's call.

On June 1, 2021, Plaintiff delivered the Latitude E5440 laptop to SPD.[67] Later that day, after the laptop was logged and secured into evidence, Officer Bower applied for a warrant to search it for data owned by Trident: specifically, project files, client lists, and Alaska Technical Training course materials.[68] In his supporting affidavit, Officer Bower repeated the facts described in the affidavits he had submitted in support of the previous two search warrant

---

[57] Docket 34-16 at 2, ¶ 16.
[58] Docket 34 at 2, ¶ 17.
[59] Docket 34-16 at 2, ¶ 18.
[60] Docket 34-16 at 2, ¶ 19.
[61] Docket 34-16 at 2, ¶ 19.
[62] Docket 34-16 at 2, ¶ 20.
[63] Docket 34-16 at 2, ¶ 21.
[64] Docket 34-16 at 2–3, ¶¶ 19–22.
[65] Docket 34-14 at 4.
[66] Docket 34-1 at 6; Docket 42 at 4, ¶ 8.
[67] Docket 34-3 at 5.
[68] Docket 34-24 (Search Warrant No. 3KN-21-82SW).

applications, and added the additional statement: "On 06-01-21 at about 1300 hours, Martin Anderson met Officer Bower at the Soldotna Police Department and turned in a Dell Latitude E5440 serial #7JB5L32."[69] A state magistrate judge granted this third search warrant application that same day.[70]

Also on June 1, 2021, Plaintiff filed a "Motion to Suppress Two Search Warrants" in the Alaska Superior Court.[71] In this motion, Plaintiff sought to suppress "any evidence gathered based on the two search warrants" Officer Bower had obtained for Precision and Plaintiff's residence, on the basis that the warrants relied on "false and misleading evidence" and, without that evidence, were not supported by probable cause.[72] Specifically, Plaintiff suggested, Trident had "tricked" SPD into believing that Plaintiff had stolen Trident's data.[73] Plaintiff theorized that Trident had "falsely portrayed itself as a victim" in order to "harm and punish" Plaintiff for making a whistleblower complaint to OSHA and for reporting Trident's alleged hacking of his online accounts to the FBI.[74] Plaintiff's counsel notified the local district attorney's office of the filing of the motion and agreed to ask the court to hold the motion in abeyance pending further discussions between Plaintiff and law enforcement.[75]

On June 2, 2021, upon executing the warrant to search the contents of the Latitude E5440, Officer Bower found numerous files containing presentations, training materials, and documents that belonged to Trident.[76] Officer Bower also received a message from Plaintiff's counsel, stating that Plaintiff was willing to be interviewed as part of the investigation.[77] Later that day, and without attempting to arrange an interview with Plaintiff, Officer Bower referred the matter to the district attorney's office for a decision whether to charge Plaintiff with a

---

[69] Docket 34-24 at 6–7.
[70] Docket 34-24 at 3.
[71] Docket 34-22; Docket 34-21 at 2–3.
[72] Docket 34-22 at 1.
[73] Docket 34-22 at 2.
[74] Docket 34-22 at 2–3.
[75] Docket 34-21 at 1–3.
[76] Docket 34-3 at 5.
[77] Docket 34-3 at 5.

criminal offense.[78] On June 14, 2021, Assistant District Attorney ("ADA") Justin Works was assigned to Plaintiff's criminal matter.[79]

On June 16, 2021, Plaintiff's counsel notified the district attorney's office and Officer Bower that Trident and Plaintiff had each recently filed a civil lawsuit against the other based on circumstances related to the criminal matter.[80] Plaintiff's counsel and counsel for Trident informed ADA Works that the parties would be going to mediation.[81] ADA Works agreed to put the criminal matter on hold until after the mediation.[82] The parties ultimately settled, and as part of the agreement Trident notified ADA Works that it no longer wished to pursue its theft complaint against Plaintiff.[83] After receiving this information, ADA Works decided not to pursue charges against Plaintiff.[84] On October 28, 2021, the district attorney's office formally closed the criminal matter.[85]

**B. Procedural History**

In May 2023, Plaintiff commenced this action by filing a Complaint against Defendants pursuant to 42 U.S.C. § 1983.[86] Plaintiff's Complaint contains three claims: (1) a claim against Officer Bower in his personal capacity for violating Plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures; (2) a claim against Officer Bower in his personal capacity for violating Plaintiff's First Amendment right to pursue administrative complaints against Trident or to use the courts to seek civil redress; and (3) a claim against the City for having a policy, practice, or custom or for failing to train its police officers "regarding the police department's constitutional obligation to not intervene in civil disputes and to obtain search

---

[78] Docket 34-25; Docket 34-3 at 5; *see also* Docket 34-26 at 3 (ADA Works testifying that when cases are sent to the district attorney's office via referral, "no charging decision has been made at that time[,] [a]nd it is for [the district attorney's office] to review the available documentation and to make a determination of whether or not charges will be filed").
[79] Docket 34-26 at 5.
[80] Docket 34-27. Trident brought its suit in the Alaska Superior Court, while Plaintiff brought his suit in the U.S. District Court for the District of Maine. Docket 34-17 at 7.
[81] Docket 34-8 at 3.
[82] Docket 34-8 at 3.
[83] Docket 34-8 at 3; Docket 34-28 at 1–2.
[84] Docket 34-26 at 6–7.
[85] Docket 34-29.
[86] Docket 1.

warrants only with probable cause, and to refrain from entering an individual's home or place of business for the purpose or search and seizure, without probable cause, consent of the resident, or exigent circumstances[.]"[87]

Defendants now move for summary judgment on each of Plaintiff's claims.

## II. LEGAL STANDARDS

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the case under the governing law.[88] A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable fact-finder to decide in favor of the nonmoving party.[89] When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[90]

The party moving for summary judgment bears the ultimate burden of persuasion and the initial burden of producing evidence that shows the absence of a genuine issue of material fact.[91] Where the moving party would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."[92] If the moving party successfully carries its burden of production, the nonmoving party "must produce evidence to support its claim or defense."[93] It is not the task of the court to "scour the record in search of a genuine

---

[87] Docket 1 at 12–15, ¶¶ 41–61.
[88] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").
[89] *Id.* at 248.
[90] *Id.* at 255.
[91] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[92] *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).
[93] *Id.* at 1103.

issue of triable fact."[94] Rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment."[95] "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."[96]

**B. 42 U.S.C. § 1983 and Qualified Immunity**

42 U.S.C. § 1983 provides that

> [e]very person who, under color of [State law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To prevail on a § 1983 claim, a plaintiff must establish two "essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."[97]

A government official sued under § 1983 may raise the affirmative defense of qualified immunity.[98] Qualified immunity shields government officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[99] To determine whether an official is entitled to qualified immunity, a court considers two questions: "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the

---

[94] *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins.*, 55 F.3d 247, 251 (7th Cir. 1995)).
[95] *Id.* (quoting *Richards*, 55 F.3d at 251).
[96] *Nissan Fire & Marine Ins.*, 210 F.3d at 1102.
[97] *West v. Atkins*, 487 U.S 42, 48 (1988).
[98] *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) ("Qualified immunity is an affirmative defense that the government has the burden of pleading and proving." (internal quotation marks omitted) (quoting *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017))).
[99] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

officer's alleged misconduct."[100] Qualified immunity applies unless both prongs of the inquiry are satisfied.[101] A court may analyze the two prongs in any order, though it "is often beneficial" to begin with the first prong because this process "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable."[102]

## III. DISCUSSION

### A. Officer Bower Is Entitled to Summary Judgment on Plaintiff's Fourth Amendment Claim.

Plaintiff alleges in his Complaint that Officer Bower deprived him of his Fourth Amendment rights by unlawfully "procuring a search warrant in a non-criminal civil dispute" and "entering Plaintiff's business without permission" pursuant to the allegedly invalid warrant.[103]

Defendants contend that Officer Bower is entitled to summary judgment on this claim on qualified immunity grounds.[104] Defendants maintain that there is no dispute of material fact that Officer Bower did not violate Plaintiff's Fourth Amendment rights, whether in obtaining the disputed search warrants or in attempting to execute the search warrant for Plaintiff's laptop at the Precision office.[105] Defendants maintain that the search warrants were supported by probable cause, and that Plaintiff cannot show that Officer Bower's affidavits contained deliberately or recklessly false or misleading statements or omissions that were material to the issuing magistrate judge's probable cause determination.[106] Defendants further assert that Officer Bower's conduct in connection with his visit to Precision could not have violated Plaintiff's Fourth Amendment rights, as Plaintiff was not present during that visit and

---

[100] *Est. of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014)).
[101] *See Pearson*, 555 U.S. at 232.
[102] *Id.* at 236.
[103] Docket 1 at 13, ¶¶ 44–45.
[104] Docket 34 at 34–40.
[105] Docket 34 at 26–34.
[106] Docket 34 at 30–31.

Plaintiff later voluntarily delivered his laptop to SPD.[107]

In response, Plaintiff argues that the evidence demonstrates that Officer Bower made multiple "deliberately false statements and material omissions in his supporting affidavits that were essential to the finding of probable cause" for the requested searches.[108] Plaintiff also appears to suggest that Officer Bower violated Plaintiff's Fourth Amendment rights by failing to interview Plaintiff after Plaintiff left him a voicemail indicating that there was a possibility that Trident's complaint was an attempt to retaliate against him.[109]

The Court first considers the parties' arguments with respect to Plaintiff's judicial deception claim, before turning to their remaining arguments.

**1. Plaintiff has not met his burden to survive summary judgment on his claim that Officer Bower procured the search warrants through judicial deception.**

The Fourth Amendment prohibits unreasonable searches and seizures by the government.[110] Where a search warrant is required to comply with the Fourth Amendment, the warrant "must be supported by an affidavit establishing probable cause."[111] Probable cause to issue a search warrant exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances."[112] "Neither certainty nor a preponderance of the evidence is required."[113] "[T]he issuing judge 'need only conclude that it would be reasonable to seek the evidence in the place indicated in the

---

[107] Docket 34 at 32–34.
[108] Docket 44 at 10.
[109] Docket 44 at 14.
[110] U.S. Const. amend. IV; *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" (quoting *Riley v. California*, 573 U.S. 373, 381 (2014))).
[111] *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013) (internal quotation marks omitted).
[112] *United States v. Kvashuk*, 29 F.4th 1077, 1085 (9th Cir. 2022) (internal quotation marks omitted) (quoting *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (explaining that probable cause decision is based on "all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information").
[113] *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal citations and quotations omitted).

affidavit.'"[114] In determining whether probable cause exists, the issuing magistrate judge "may rely on the training and experience of affiant police officers."[115]

Under § 1983, a police officer may be liable for violating the Fourth Amendment when they "submit false and material information in a warrant affidavit."[116] "A judicial deception claim is different from a garden-variety claim that a warrant lacked probable cause on its face[,]" which ordinarily will not give rise to liability.[117] To survive summary judgment on a claim of judicial deception, a § 1983 plaintiff must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth."[118] Materiality is a purely legal question, while state of mind is an issue of fact.[119] In assessing materiality, the key inquiry is whether the affidavit, once corrected of any false statements and supplemented with any challenged omissions, would have "provided a magistrate judge with a substantial basis for finding probable cause."[120] To prevail on this element, a plaintiff must show that the search warrant would not have issued had the affidavit contained the truthful or omitted information.[121]

Here, Plaintiff takes issue with three aspects of Officer Bower's affidavits.[122] First,

---

[114] *United States v. Elmore*, 917 F.3d 1068, 1074 (9th Cir. 2019) (quoting *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005)).

[115] *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002); *see also United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) (stating that issuing magistrate judge may rely on conclusions of experienced officers regarding where evidence of a crime is likely to be found).

[116] *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).

[117] *Chism v. Washington State*, 661 F.3d 380, 386 n.9 (9th Cir. 2011) (explaining that officers enjoy qualified immunity for such garden-variety claims "unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existing unreasonable" (quoting *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011))); *see also Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) ("[N]o reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant.").

[118] *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) (citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1223–24 (9th Cir. 2009)).

[119] *Butler*, 281 F.3d at 1024 (citing *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995)); *Chism*, 661 F.3d at 389.

[120] *Chism*, 661 F.3d at 389 (quoting *Stanert*, 762 F.2d at 782).

[121] *See Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997).

[122] The Court notes that Plaintiff also challenges Officer Bower's provision of a factually impossible

Plaintiff contends that Officer Bower recklessly omitted the fact that Plaintiff had reported Trident to OSHA and the FBI before Trident filed its complaint with SPD, which Plaintiff contends was material because it provided a "potential motive" for Trident to retaliate against Plaintiff.[123] Second, Plaintiff asserts that Officer Bower recklessly misrepresented the work that Computer Renaissance performed for Plaintiff as "clon[ing] a company laptop onto [Plaintiff's] personal laptop," even though this fact was allegedly "contradicted by Computer Renaissance's records and invoices."[124] And third, Plaintiff insists that Officer Bower recklessly omitted the fact that Plaintiff had "legitimate prior ownership of the [allegedly stolen] materials."[125]

The Court finds that Plaintiff has not met his burden to show that Officer Bower intentionally or recklessly misrepresented or omitted information that was material to the finding of probable cause. First, it is undisputed that Officer Bower did not become aware of Plaintiff's complaints about Trident to OSHA and the FBI until after he obtained the warrants to search Precision's office and Plaintiff's residence for the Latitude E5440 laptop.[126] Without knowing (or having any reason to know) this underlying fact, Officer Bower could not have consciously omitted it from his supporting affidavits. Moreover, even if Officer Bower's affidavits had included the fact that Plaintiff had reported Trident to OSHA and the FBI prior to Trident making its theft complaint to SPD, that fact was not material. Although that fact could have suggested that there was more to the story beyond what Trident had told Officer Bowers, it would not have cast significant doubt on—let alone negated—Trident's credible

---

date on which Computer Renaissance transferred data on Plaintiff's behalf, and his "contradictory" description of Plaintiff's address as located in both Sterling and Soldotna. Docket 44 at 12. However, Plaintiff has made no attempt to show how these statements were material to the probable cause determination. In the Court's assessment, these statements appear to be inconsequential scrivener's errors. *Cf. Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (stating that "[m]ere carelessness" in investigative report is insufficient to give rise to a § 1983 claim based on deliberate fabrication of evidence (alterations and internal quotation marks omitted) (quoting *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003))).

[123] Docket 44 at 10.

[124] Docket 44 at 10–12.

[125] Docket 44 at 15.

[126] *See* Docket 55 at 4.


Case 3:23-cv-00119-KFR Document 61 Filed 09/30/26 Page 17 of 25

version of events as recounted in Officer Bower's affidavits and as generally corroborated by the information Officer Bower had obtained from Computer Renaissance.[127]

Second, Officer Bower's description of the information he had gleaned from Computer Renaissance's work order and work notes simply reflects how he interpreted that documentation, which was not a model of clarity and did not include all relevant context. The key entry in the work notes stated only that on March 22, 2021, Plaintiff "brought his laptop in to get a clone copy, needs to be expedited."[128] Particularly in conjunction with the information Officer Bower received from Trident in the course of his investigation, it was not unreasonable for him to read this entry as indicating that Plaintiff had asked Computer Renaissance to clone a copy of the Trident-owned laptop's hard drive onto his personal laptop. Any "erroneous assumptions" that Officer Bower may have made about the information contained in Computer Renaissance's work order and work notes were at most the result of negligence, which cannot sustain a claim of judicial deception.[129]

Furthermore, even if Officer Bower's affidavits included verbatim all the information in Computer Renaissance's work order and work notes, as well as the fact that Plaintiff had personally paid for the work on March 22, 2021, the probable cause calculus would not have changed. Officer Bower's affidavits would still have set forth the following critical facts: (1) Plaintiff possessed a personal laptop that began remotely accessing Trident's server after Plaintiff was no longer employed by Trident; (2) Plaintiff had taken both laptops to Computer

---

[127] *See Ewing*, 588 F.3d at 1224–25 (holding that citizen witnesses who identify themselves, unlike unidentified informants, are "generally presumed reliable" (first citing *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976); then citing *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997); and then citing 2 Wayne R. LaFave, *Search and Seizure* § 3.4(a) (4th ed. 2004))); *Gates*, 462 U.S. at 233–34 (observing that when an "honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability—[the U.S. Supreme Court] ha[s] found rigorous scrutiny of the basis of his knowledge unnecessary"); *see also District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) (explaining that law enforcement "does not need to rule out a suspect's innocent explanation for suspicious facts" to obtain probable cause for a search warrant).

[128] Docket 34-7 at 5.

[129] *Ewing*, 588 F.3d at 1224; *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (explaining that the Fourth Amendment requires "truthful" and factual showing of probable cause "in the sense that the information put forth is believed or appropriately accepted by the affiant as true"); *see also* Docket 34-8 at 5–6.

Renaissance for service and Computer Renaissance had made a clone copy of the Trident-owned laptop in the days before Plaintiff returned the laptop; (3) Plaintiff had returned his Trident-owned laptop wiped clean, such that it was missing files owned by Trident pursuant to its agreement with SSI; and (4) Plaintiff had recently set up a local office for a business competitor.[130] These facts provided a substantial basis to support the issuing magistrate judge's probable cause determination.

And third, even if the Court were to assume that Officer Bower recklessly omitted the fact that Plaintiff used to own the files missing from the Trident-owned laptop, that fact was not material to the probable cause determination.[131] In light of the other information set forth in the affidavits, that fact would not have significantly undermined the likelihood that Plaintiff had intentionally taken files that belonged to Trident at the time of the alleged theft, and that these files were likely to be found on Plaintiff's personal laptop.

The Court therefore concludes that Plaintiff has failed to demonstrate both that Officer Bower's affidavits contained material misrepresentations or omissions and make a substantial showing that any such misrepresentations or omissions were made intentionally or with reckless disregard for the truth.

**2. Officer Bower's execution of the valid search warrant for Precision's office did not violate Plaintiff's Fourth Amendment rights.**

The Court's determination that the search warrant for Precision's office was valid necessarily defeats the only theory of liability pleaded in Plaintiff's Complaint: that Officer Bower unlawfully searched Precision's office pursuant to the purportedly invalid warrant.[132] Put simply, Officer Bower did not violate Plaintiff's Fourth Amendment rights by entering the office—where Plaintiff was not present and where no evidence was seized—under the authority of the valid search warrant.

The Court agrees with Defendants that Plaintiff's remaining Fourth Amendment

---

[130] Docket 34-15 at 6–7.

[131] Plaintiff has identified no evidence suggesting that Officer Bower was aware when he applied for the search warrants that Plaintiff had previously owned Alaska Technical Training.

[132] *See* Docket 1 at 13, ¶¶ 44–45.

arguments appear to be premised on wholly new legal theories that Plaintiff did not plead in his Complaint. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." At summary judgment, a party generally may not raise a new legal theory not previously pleaded.[133] Nevertheless, the Court will briefly address the remaining arguments that Plaintiff raises in his response brief in support of his Fourth Amendment claim.

To the extent that Plaintiff contends Officer Bower may be liable on the ground that he should have interviewed Plaintiff as part of his investigation, whether before or after obtaining the search warrants, this argument is plainly foreclosed by Ninth Circuit precedent.[134] In *Cameron v. Craig*, the Ninth Circuit rejected the plaintiff's argument that a search was unconstitutional because the investigating officer "had a duty to investigate [the plaintiff's] version of events before obtaining the search warrant."[135] As the court explained, "[t]he fact that a suspect denies an essential element of a crime does not automatically negate probable cause. While best practices may dictate that the police obtain both sides of a story where practicable, the law simply does not mandate such diligence."[136] Rather, the court stated, "[o]nce probable cause is established, 'an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.'"[137]

Here, likewise, Officer Bower was not obligated to seek out Plaintiff's story before he applied for or executed the search warrants. In a similar vein, with respect to the warrant that Officer Bower obtained on June 1, 2021, Officer Bower cannot be liable for merely failing to contact Plaintiff after Plaintiff left him a voicemail referencing Plaintiff's complaints about Trident to OSHA and the FBI.[138] Plaintiff's suspicion of retaliation alone did not defeat probable cause, and it did not trigger a constitutional obligation for Officer Bower to inquire

---

[133] *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000); *Smith v. City & County of Honolulu*, 887 F.3d 944, 951–52 (9th Cir. 2018).
[134] *See* Docket 44 at 13.
[135] 713 F.3d 1012, 1019 (9th Cir. 2019).
[136] *Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013)
[137] *Id.* (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)).
[138] Docket 34-1 at 6; Docket 42 at 4, ¶ 8.

further.

Plaintiff also submits that because Officer Bower's investigation was an "[i]ntellectual property investigation[] involving digital evidence," Officer Bower was required to "exercise heightened diligence" by "independently verify[ing] Trident's technical claims of 'cloning' before seeking a warrant."[139] This argument is meritless. In support of this contention, Plaintiff provides a general citation to *United States v. Comprehensive Drug Testing, Inc.*[140] However, as Defendants correctly point out, *Comprehensive Drug Testing* is entirely inapposite and offers no support for Plaintiff's apparently novel argument.[141] The demands of the Fourth Amendment are identical in any case: a search or seizure must be reasonable under the facts and circumstances of that case.[142] To obtain a search warrant, an investigating officer need only establish a fair probability that evidence is located in a particular place.[143] Here, while Officer Bower's investigative efforts bear on whether his affidavits furnished probable cause to support the requested searches, the totality of the circumstances that Officer Bower described in his affidavits were sufficient to uphold the warrants.[144]

In sum, construing the evidence and inferences in the light most favorable to Plaintiff, Defendants have shown there is no genuine dispute of material fact that Officer Bower did not violate Plaintiff's Fourth Amendment rights. Because Plaintiff's Fourth Amendment claim lacks an underlying constitutional violation, Officer Bower is entitled to summary judgment with respect to this claim.[145]

---

[139] Docket 44 at 13.

[140] 621 F.3d 1162 (9th Cir. 2010) (en banc), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam).

[141] Docket 55 at 10–11 (explaining that case involved "procedures and safeguards that federal courts must observe in issuing and administering search warrants," particularly Federal Rule of Criminal Procedure 41, which does not apply to state search warrants (quoting *Comprehensive Drug Testing*, 621 F.3d at 1166) (emphasis omitted)).

[142] *Cf. Lange v. California*, 594 U.S. 295, 301 (2021) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" (citation omitted)).

[143] *Kvashuk*, 29 F.4th at 1085.

[144] *See supra* part III.A.1.

[145] Because the Court concludes that Plaintiff's Fourth Amendment rights were not deprived because of Officer Bower's conduct, the Court need not address the second prong of the qualified immunity analysis.

**B. Officer Bower Is Entitled to Summary Judgment on Plaintiff's First Amendment Claim.**

Plaintiff next alleges in his Complaint that Officer Bower deprived him of his First Amendment right to freedom of speech by "obtain[ing] and execut[ing] the search warrants" to chill Plaintiff from pursuing his OSHA and FBI complaints against Trident.[146] To prove a First Amendment retaliation claim under § 1983, a plaintiff must show that: (1) they were "engaged in constitutionally protected activity"; (2) they were "subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) there was a "substantial causal relationship between the constitutionally protected activity and the adverse action."[147]

Defendants assert that Officer Bower is entitled to summary judgment on Plaintiff's First Amendment claim on qualified immunity grounds.[148] Defendants argue that this claim fails as a matter of law because the undisputed evidence shows that Plaintiff "did not speak out as a private citizen on matters of public concern."[149] In addition, Defendants, maintain, there is no evidence that establishes a "substantial causal relationship between Officer Bower undertaking a criminal investigation of felony theft against Plaintiff because Plaintiff purportedly filed an OSHA and [FBI] complaint against Trident, a private business."[150]

In response, Plaintiff contends that there is a genuine dispute as to whether Officer Bower retaliated against him for engaging in protected "whistleblower activities" against Trident.[151] Plaintiff suggests that a jury could reasonably infer retaliation from the fact that Trident filed a theft complaint on the same day that OSHA conducted an inspection at Trident's Soldotna facility,[152] as well as from Officer Bower's purported judicial deception in

---

[146] Docket 1 at 14, ¶ 51.

[147] *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010); *see also Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (describing the third element as whether "there was a nexus between the defendant's actions and an intent to chill speech").

[148] Docket 34 at 40–45.

[149] Docket 34 at 41.

[150] Docket 34 at 41.

[151] Docket 44 at 26–27.

[152] Although the Court will assume for the sake of argument that Plaintiff's characterization is accurate, the record does not appear to contain evidence that indicates when this OSHA inspection occurred.

seeking search warrants.[153]

The Court need not decide whether Plaintiff's OSHA and FBI complaints were constitutionally protected speech because it is clear that Plaintiff lacks sufficient evidence from which a jury could find that Officer Bower retaliated against him due to those complaints.[154] At his deposition, Plaintiff testified that he did not know and had no information indicating that Officer Bower was aware of the complaints when he applied for the two initial search warrants.[155] Plaintiff also denied knowledge of a conspiracy between Officer Bower and Trident to retaliate against him for making the OSHA and FBI complaints.[156] Aside from the fact that Trident filed its theft complaint soon after an OSHA inspection, Plaintiff has identified no material evidence that supports the causation element of his First Amendment claim.

On its own, and especially without any evidence that Officer Bower was aware of the OSHA and FBI complaints, the potentially suspect timing of Trident's theft complaint cannot sustain Plaintiff's claim that Officer Bower "acted in concert with Trident to retaliate against him with the express intent of chilling Plaintiff's speech as a result of his whistleblowing activities."[157] Furthermore, and as the Court has already explained, Officer Bower did not engage in judicial deception in seeking the search warrants. The record otherwise does not permit a reasonable inference that Officer Bower's pursuit of those warrants was motivated by retaliatory animus.

In sum, construing the evidence and inferences in the light most favorable to Plaintiff, Defendants have shown there is no genuine dispute of material fact that Officer Bower did not violate Plaintiff's First Amendment rights. Because Plaintiff's First Amendment claim lacks an

---

[153] Docket 44 at 26–27.

[154] Plaintiff's OSHA and FBI complaints are not a part of the record. In his declaration, Plaintiff states that he "report[ed] unsafe working conditions and regulatory violations [he] had witnessed while contracting with Trident[,]" as well as "Trident's unauthorized access to [his] private email accounts." Docket 42 at 4, ¶ 7.

[155] Docket 34-17 at 11.

[156] Docket 34-17 at 11–12; *see also Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (holding that timing "can properly be considered as circumstantial evidence of retaliatory intent," but timing alone is insufficient to prove retaliatory motive where there is "little else to support the inference").

[157] Docket 55 at 20.

underlying constitutional violation, Officer Bower is entitled to summary judgment with respect to this claim.[158]

### C. The City of Soldotna Is Entitled to Summary Judgment on Plaintiff's Municipal Liability Claim.

Finally, Plaintiff alleges in his Complaint that the City is liable for damages that he suffered as a result of its policies, practices, and customs "under which unconstitutional practices occurred."[159] Specifically, Plaintiff alleges, the City failed to adequately train its police officers, including Officer Bower, regarding the constitutional inappropriateness of "interven[ing] in civil disputes," obtaining search warrants without probable cause, and entering an individual's home or place of business without adequate justification.[160] Plaintiff further alleges that the City's "deliberate indifference to SPD's use of searches without probable cause . . . caused the violation of Plaintiff's constitutional rights in this case and in others."[161]

In *Monell v. New York City Department of Social Services*,[162] the U.S. Supreme Court held that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."[163] To establish municipal liability under *Monell*, a plaintiff must prove that (1) they were deprived of a constitutional right; (2) the municipality had a policy, practice, or custom; (3) the policy, practice, or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy, practice, or custom was the moving force behind the constitutional violation.[164] "Accordingly, while *Monell* claims cannot predicate municipal liability for constitutional violations of its officers under the theory of respondeat superior, such claims are still 'contingent on a violation of constitutional

---

[158] Because the Court concludes that Plaintiff's First Amendment rights were not deprived because of Officer Bower's conduct, the Court need not address the second prong of the qualified immunity analysis.
[159] Docket 1 at 15, ¶ 58.
[160] Docket 1 at 14–15, ¶ 56.
[161] Docket 1 at 15, ¶ 59.
[162] 436 U.S. 658 (1978).
[163] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).
[164] *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

rights.'"[165] "*Monell* claims thus require a plaintiff to show an underlying constitutional violation."[166]

Defendants seek summary judgment on Plaintiff's municipal liability claim on the ground that Plaintiff did not suffer any underlying deprivation of his constitutional rights.[167] Because the Court has granted summary judgment to Officer Bower on Plaintiff's underlying First and Fourth Amendment claims, Plaintiff's *Monell* claim cannot proceed. The City is therefore entitled to summary judgment as to this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment at Docket 34 is **GRANTED**. All of Plaintiff's claims in his Complaint are **DISMISSED**.[168] The Clerk of Court is directed to enter final judgment accordingly.

DATED this 30th day of September, 2026, at Anchorage, Alaska.

*s/ Kyle F. Reardon*
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

[165] *Id.* (first citing *Monell*, 436 U.S. at 691; and then quoting *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994)).
[166] *Id.*
[167] Docket 34 at 45.
[168] As Defendants are entitled to summary judgment as to each of Plaintiff's § 1983 claims, Plaintiff's separately enumerated claim for punitive damages likewise cannot be maintained and must be dismissed.